**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DISTRICT**

| | |
|---|---|
| **XIMENA MIRANDA**<br>**166 Stanhope Street**<br>**Brooklyn, NY 11237**<br><br>***On behalf of herself and those similarly***<br>***situated,***<br>                              **Plaintiff,**<br><br>       vs.<br><br>**XAVIER UNIVERSITY**<br>**3800 Victory Parkway**<br>**Cincinnati, OH 45207**<br><br>                   **Defendant.** | **Case No.  1:20-CV-539**<br><br><br>**Judge Timothy S. Black**<br><br><br><br><br>**<u>FIRST AMENDED</u>**<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>**<u>JURY DEMANDED</u>** |

Plaintiff Ximena Miranda ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Xavier University ("Xavier" or "Defendant") for breach of contract, unjust enrichment, promissory estoppel, and violations of the Ohio Consumer Sales Practices Act ("CSPA").

## <u>INTRODUCTION</u>

1.      Plaintiff is a student at Xavier where she is enrolled in Xavier's College of Nursing Accelerated Bachelor of Science in Nursing ("ABSN") program.

2.      The ABSN program is intended to "follow[] a comprehensive, fast-paced sequence of online and onsite curriculum over four, full-time semesters."[1]

3.      The ABSN curriculum contains three key parallel learning components: online classes, lab simulation, and actual clinical training. These parallel components are set up to complement each other as each goes from basic to more advanced.[2] Put another way, a student completing only one or two of the parallel components misses crucial nursing education. In line with this approach, Xavier's handbook states: "If a student withdraws from either a theory or a clinical course, the student must withdraw from the co-requisite course."[3]

4.      For such comprehensive training, Plaintiff and the Class Members paid at least $880 per credit hour, or at least $13,500 per semester, in addition to a variety of fees, including but not limited to student activity fees, professional liability insurance for the onsite curriculum, scrubs, uniforms, stethoscopes, nurse badges, and other supplies. Despite the fact that the students are no longer engaging in clinical training, upon information and belief, Xavier is still requiring Plaintiff and the Class Members to purchase scrubs with Xavier's logo from Xavier-associated stores.

5.      Xavier falsely represented that the online portion of the curriculum would be taught by Xavier faculty members during live lectures or recorded lectures with original content. Instead, the majority of the online curriculum is taught online by non-Xavier faculty who are not trained in pedagogy, but are instead practitioners who moonlight as teachers, and are otherwise generally

---

[1] https://acceleratednursing.xavier.edu/accelerated-nursing-program/, last accessed 6/24/2020.
[2] "The BSN program (four year BSN and ABSN curriculum is designed to progress the students from foundation courses to those with more advanced concepts and principles. Therefore, the faculty believes that courses should be taken and successfully completed in the sequence established in the curriculum." Xavier University Combined Undergraduate Nursing Handbook, p. 54 (available at https://www.xavier.edu/college-of-nursing/current-students/combined-undergrad-nurs-2019---2020-updated3.pdf), last accessed June 29, 2020.
[3] *Id*.

2

unavailable for communication, consultation, or discussion with the students. Many of the Class Members have stated in no uncertain terms–including by reference in graduation speeches–that they rely more on other websites like Khan Academy, rather than online lectures by non-Xavier faculty,  to learn the didactic portions of their studies.

6.      In March of 2020, Xavier stopped providing its onsite curriculum and switched to a fully remote learning experience that involves no hands-on training, either through simulation labs or clinical training. While students enrolled and paid Xavier for a comprehensive academic experience including substantial in-person simulation labs and clinical training, Xavier instead provided Plaintiff and the Class Members a limited online experience presented by Google, YouTube, or Zoom, devoid of face-to-face faculty and peer interaction, separated from program resources, and barred from facilities vital to study. Plaintiff and the Class Members did not bargain for such virtual experience absent the promised in-person and hands on training.

7.      Despite no longer providing the important "onsite curriculum" that students are promised, Xavier did not reduce its tuition. In fact, starting in May 2020, Xavier increased tuition for ABSN students to $900 per credit hour, or on average $14,175 in tuition alone per semester.

8.      In addition to tuition, ABSN students have not been refunded for annual "student activity fees" and "professional liability insurance fees" that no longer provide a cognizable benefit to ABSN students.

9.      Furthermore, Xavier represented that its ABSN students would be able to practice nursing in any state across the United States and in many other countries following graduation. However, regardless of the curriculum changes made because of COVID-19, Xavier's ABSN program does not meet the requirements for licensure in several U.S. states.

3

10.     After the filing of this lawsuit, Xavier informed its students that graduates of the ABSN program will be able to practice *in only 22 states without additional training or curriculum*.

### *Orbis Education*

11.     The education provided in Xavier's ABSN program is vastly different from its traditional BSN program because Xavier does not actually provide the programming, curriculum, teaching, advertising, recruiting, marketing, faculty, or even the physical space for the ABSN program.

12.     Instead, in 2017, Xavier paired with Orbis Education Services, LLC ("Orbis"), which was bought by the publicly traded corporation Grand Canyon Education in 2019 for $361.2 million. Grand Canyon Education had over $220 million in revenue for the first quarter of 2020, with a net income of over $94 million that same quarter.

13.     Orbis is primarily focused on pre-licensure healthcare programs. It contracts with educational institutions, such as Xavier, and acts as their agent to provide unoriginal cookie cutter educational services to students in exchange for large fees.

14.     Orbis has a unique sales pitch: Orbis provides the upfront capital, the academic platforms, the marketing, the enrollment, the course development, and the "student support," and the universities provide their otherwise good names. And once that is all established, Orbis and the university "share the revenue." As of March 31, 2020, Orbis had such relationships with 24 universities. The "pitch" is shown on these two excerpts from its website.

4



**Learn about our solution for healthcare.**

15. A review of Orbis's website shows the basics of Xavier and Orbis's relationship. Orbis promises to its partners that it will "provide all of the capital upfront for our partners. Instead of charging a fee, we share the revenue, *so our partners profit, without paying a dime*." (emphasis added). Orbis promises that it will help grow partners' enrollments to classes of more than 70 students, with enrollment happening three times a year. As part of that program, "Orbis education

recruits and manages the student acquisition process," and then "provide[s] the support needed for students to live up to their potential."

16.     While Xavier and Orbis collectively make tens of millions of dollars annually from the ABSN program, Plaintiff and the Class Members pay significant sums of money and/or incur substantial debt for hands-on training never received.

17.     The promise of hands-on training to ABSN students was incorporated into the contract between them and Xavier. Plaintiff does not bring this action suggesting that a difference of opinion related to pedagogy is at stake. Rather, Plaintiff brings this action because Xavier failed to provide what was promised, and what it continues to promise on its website.[4] There is no difference of opinion, only a failure to provide a specific type of educational services in a specific format that was promised by Xavier and paid for by Plaintiff and the Class Members.

18.     Xavier's actions have financially damaged Plaintiff and the Class Members. Plaintiff brings this action because Plaintiff and the Class Members did not receive the full value of the services paid for. Moreover, Xavier is being unjustly enriched by students who have paid Xavier money that equity demands should rightfully belong to Plaintiff and the Class Members. Plaintiff and the Class Members have lost the benefit of their bargain and/or suffered out-of-pocket loss.

19.     In addition, Xavier by its past and continued actions violates the CSPA with regard to Plaintiff and the Class Members. Accordingly, Plaintiff seeks reimbursement of tuition and fees on behalf of herself and the Class Members, as well as damages permitted under the CSPA, and injunctive relief prohibiting Xavier from continuing to misrepresent the nature of the program and

---

[4] About two months after the filing of this lawsuit and several weeks into the Fall Semester, Xavier added a disclaimer to the landing page of the ABSN program website, stating, "Please note that changes in the delivery of skills and simulations labs as well as clinicals may occur due to COVID-19 protocols."

the eligibility to begin the practice of nursing anywhere in the United States without additional coursework or practical hours.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), because at least one member of the Class is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

21.     This Court has personal jurisdiction over Xavier because Xavier's principal place of business is in the State of Ohio and it is incorporated in the State of Ohio as a non-profit corporation.

22.     Venue is appropriate because Xavier's principal place of business is in Cincinnati, Hamilton County, Ohio.

## THE PARTIES

23.     Defendant Xavier University is a private university incorporated as a non-profit corporation in the State of Ohio. Its headquarters and principal place of business are in Cincinnati, Ohio. Xavier's ABSN program is offered to students in Cincinnati, Columbus, and Cleveland, Ohio.

24.     Plaintiff is domiciled in the State of New York. She currently lives and is enrolled as a student at Xavier University in Cincinnati, Ohio within Xavier's College of Nursing ABSN Program.

25.     Plaintiff enrolled in Xavier's ABSN program in January of 2020 and her anticipated graduation date is May of 2021. She incurred substantial federal student loans to pay for this education.

26.     Following graduation, Plaintiff would like to work as an emergency room nurse in the State of Florida.

27.     When Plaintiff started looking for ABSN programs, Xavier was one of the first schools to reach out. Plaintiff spoke with Xavier's admissions coach and was advised to review Xavier's website. Plaintiff noticed that the website emphasized Xavier's hands-on learning approach and included videos of previous nursing students highlighting the clinical and lab experience provided by Xavier.

28.     Based on Xavier's representations, Plaintiff understood that the ABSN program would provide the prerequisites for licensing in all 50 states and the District of Columbia, as well as certain other countries. The mobility afforded by Xavier's ABSN degree was material to Plaintiff's decision to enroll in Xavier's ABSN program.

29.     When she enrolled as a Xavier ABSN student, Plaintiff did not understand that Xavier's college of nursing had not developed the curriculum and was not providing the didactic instruction or the educational materials.

30.     When Plaintiff enrolled in Xavier's ABSN program, she did not know that she was enrolling in a for-profit program run by Orbis with Xavier's name slapped on the literature and using Xavier as primarily an enrollment portal.

31.     Plaintiff understood that Xavier nursing faculty would teach the ABSN program based on representations on Xavier's website and literature that referred to the ABSN personnel as "Xavier faculty." She relied on such representations in selecting Xavier for her education.

32.     Plaintiff also chose to enroll in the ABSN program at Xavier, in part, because Xavier's classes are typically smaller than classes at similar institutions, thus allowing professors to teach skills one-on-one with no rush. Furthermore, she relied on Xavier's representations related

8

to Xavier's simulation lab and skilled labs that offered the ability to learn important hands-on practice in state-of-the-art facilities before practicing on real patients. Lastly, Xavier promised clinical placements in prestigious hospitals throughout Cincinnati, which Plaintiff relied in selecting Xavier

33.     But for the hands-on lab and clinical learning experience promised by Xavier, Plaintiff would not have enrolled in Xavier's ABSN program. In addition, but for the promise of a Xavier education with Xavier faculty, Plaintiff would not have enrolled in Xavier's ABSN program.

34.     Despite paying full tuition and not receiving a refund, in Plaintiff's first semester alone, she estimates that she missed out on over 300 hours of hands-on learning experience.

35.     Moreover, Plaintiff was required to purchase supplies for clinicals, including but not limited to Xavier scrubs, nurse badge, and stethoscope.

36.     Plaintiff was also required to pay an annual "student activity fee" to Xavier that has not been refunded even though there are currently no student activities.

37.     Finally, Plaintiff was required to pay a professional liability insurance fee to Xavier in January of 2020 and May of 2020. The insurance fee is intended to provide her with insurance coverage during her clinical learning experiences. This has not been refunded even though Xavier no longer offers clinical learning experiences.

## FACTUAL ALLEGATIONS

38.     Xavier's ABSN program is an accelerated program comprised of 63 credit hours over four, full-time semesters. This means that the entire program is completed in 16 months. Once the program is completed, ABSN students receive a bachelor's degree in nursing (BSN), something that typically takes four years to achieve.

9

39.     Each year, Xavier admits roughly 360 new students to the ABSN program in Cincinnati (i.e., 120 new students each January, May, and August). More are admitted in Xavier's Cleveland and Columbus ABSN programs during the same enrollment periods, but Plaintiff will not know the exact amount before discovery. Upon information and belief, because the ABSN program takes 16 months to complete, there are at least 480 students in the ABSN program at any given time.

40.     The accelerated timeline for earning the degree is possible because Xavier's ABSN program is reserved for students who previously earned a non-nursing bachelor's degree. This allows Xavier to offer ABSN students an accelerated learning experience focused solely on nursing. The accelerated timeline is what attracts many students to the program. It is also what keeps many students in the program who might otherwise depart; the rapid pace of the studies and the amount of money committed through just one or two semesters is so substantial that students are not able to simply stop their studies in the ABSN program and transfer to another post-graduate nursing licensure program.

41.     Xavier divides its ABSN coursework into three components: online classes, onsite labs, and clinical placements.

42.     Xavier leads ABSN students to believe that its curriculum is taught by Xavier faculty. For example, Xavier posts a purported review in a prominent area of its ABSN webpage that states, *"Xavier faculty wants you to be successful, they want you to be where you want to be in life*." However, much or all of the ABSN students' instruction comes from Orbis employees or agents that are not members of Xavier's faculty.

43.     The online course work is designed to teach "the fundamentals and theories of the profession" to help "set the foundation for your nursing education."

10

44.     Xavier leads ABSN students to believe that the online portion of its curriculum will be taught through live lectures or recorded lectures with original content. Instead, the majority of the online curriculum is taught through YouTube videos recorded by non-Xavier faculty.

45.     Xavier is clear to state that "it's important to note that **it is impossible to earn a BSN 100% online.** As an ABSN student, you'll regularly attend hands-on skills labs at the ABSN Learning Center associated with your program of enrollment. During nursing skills and simulation labs, our clinical instructors will teach you how to put the core concepts you learned online into practice."[5]

46.     Xavier bills its "onsite curriculum" as vital to the success of its ABSN program. Offered in carefully planned conjunction with academic coursework, the onsite curriculum is promised to provide students experiences that would otherwise be taught only through textbooks and lectures. Without it, regardless of the quality of education actually received, nursing students would be forced to enter real medical practice without any prior real experience or patient interaction. Students without such hands-on practical training are much less competitive in the market for professional employment.

47.     ABSN students take different classes in each of their four semesters. However, each semester includes in-person, hands-on learning through simulation labs and/or clinical experience.

48.     Xavier repeatedly emphasizes the importance of its "onsite curriculum" in its online representations. This onsite curriculum is two-thirds of the three key components to Xavier's ABSN program.

---

[5] https://acceleratednursing.xavier.edu/accelerated-nursing-program/online-coursework/, last accessed June 26, 2020 (emphasis added).

49. The first of these two key components is the onsite skills and simulation labs. This hands-on coursework "serv[es] as a bridge between online coursework and clinical practice," and is where Xavier's "top-notch clinical instructors teach you how to put nursing theory into practice."[6] Among the skills practiced: Monitoring blood pressure, giving shots, dressing puncture wounds, caring for tracheotomies, inserting feeding tubes, administering intravenous therapy, and setting up oxygen delivery.

50. Videos created by Xavier promote Xavier's skills lab program as using advanced computerized manikin simulations so that students can "actively engage in patient assessment and treatment." The simulations are recorded, and the professors then walk through the students' actions afterwards. "Simulation debriefings are invaluable because they allow you to learn from and correct your mistakes under the guidance of faculty."

51. Xavier's skills lab is touted as doing "a great job in preparing you for clinical practice." Moreover, "[t]hese experiences can also expose you to high-pressure critical care situations that are not available through clinicals." Because the labs are only simulations, they allow the students to practice in a "risk-free learning environment."

52. The importance of in-person attendance is shown through the grading rubric for these courses. For example, for Nursing 301 – Nursing Concepts in Mental Health I Practicum, Clinical Performance Evaluations count for 35%, while Virtual Labs counts for 5% of the grade. As another example, for Nursing 203 – Foundations of Nursing Practice II Practicum, Final Lab Practicum Evaluation is 25%, Clinical Performance Evaluation is 15%, and Lab Guides and Attendance is 10% of the grade.

---

[6] https://acceleratednursing.xavier.edu/accelerated-nursing-program/nursing-simulation-labs/, last accessed June 29, 2020.

53.     Such representations, copied in part below, formed the basis for Plaintiff and other

Class Members' understanding of what Xavier offered for nursing skills laboratories:[7]

# NURSING SKILLS LAB

Replicating a hospital room environment, our nursing skills lab lets you practice the application of nursing theory across the patient lifespan. Under the guidance of faculty, you and a small group of peers will perform fundamental nursing skills on full-body medical manikins and various clinical task trainers.

Through the lab, you will learn a variety of nursing interventions, including how to:

- Monitor blood pressure
- Give intramuscular injections
- Dress a puncture wound
- Provide tracheotomy care
- Insert a nasogastric tube
- Administer intravenous therapy
- Setup oxygen delivery

During the 16-month Accelerated BSN program, you can expect to attend labs two and three days a week. You can also use the lab outside of course-related activities to practice and hone your nursing skills.

## NURSING SIMULATION LAB

Getting you as close as possible to real-life clinical situations, our nursing simulation lab takes your nursing competency to the next level by way of a computerized medical manikin. Able to simulate a variety of symptoms, from blood loss to breathing difficulty, the manikin lets you actively engage in patient assessment and treatment. Under faculty control, the manikin can also ask questions and replicate bodily responses to procedures, such as intubation and catheterization.



We record these simulations so that you and your instructor can debrief on your clinical performance. Simulation debriefings are invaluable because they allow you to learn from and correct your mistakes under the guidance of faculty. As you progress in the ABSN program, the intent will be for you to lead these debriefings, explaining the rationale behind your approach prior to receiving feedback.

Because they require you to think on your feet and act on instinct, nursing simulations do a great job in preparing you for clinical practice. These experiences can also expose you to high-pressure critical care situations that are not available through clinicals.

Contact us to learn more about the nursing skills and simulation labs inside our ABSN Learning

---

[7] *Id.*

13

54.     The final component—clinical rotations—"play a significant role in your education, and we provide some of the best placements of any nursing school in Ohio."[8] Key to this is the promise that "[e]very accelerated BSN clinical supports a specific learning objective. As the online courses and nursing labs advance, so does the complexity of your clinicals. By and large, clinicals are active learning environments where you get to perform the tasks a nurse would typically do in a given situation."

55.     These clinicals "begin the first semester" and have the students working in small groups "alongside experienced nurses to gain a real-world understanding of how nursing theory applies to the care of individuals, families, and communities." As part of these clinicals, Xavier "**guarantee[s] your placement in a quality clinical environment**." (emphasis added).

56.     Separately, Xavier states that it "**ensure[s] placement in a quality clinical setting**…."[9]

57.     Such representations, copied in part below, formed the basis for Plaintiff and other Class Members' understanding of what Xavier offered for clinical skills courses:[10]



ACCELERATED BSN CLINICALS AT LOCAL HEALTH CARE FACILITIES

Clinical rotations play a significant role in your education, and we provide some of the best placements of any nursing school in Ohio. Whether you're a student in our Cincinnati, Cleveland, or Columbus ABSN program, you can expect to complete your accelerated BSN clinicals in top local health care facilities.

Every accelerated BSN clinical supports a specific learning objective. As the online courses and nursing labs advance, so does the complexity of your clinicals. By and large, clinicals are active learning environments where you get to perform the tasks a nurse would typically do in a given situation.

---

[8] https://acceleratednursing.xavier.edu/accelerated-nursing-program/hospital-clinicals/, last accessed 6/29/2020.
[9] https://acceleratednursing.xavier.edu/about-xavier/partnership-with-hospital-network/, last accessed 7/24/2020 (emphasis added).
[10] https://acceleratednursing.xavier.edu/accelerated-nursing-program/hospital-clinicals/, last accessed 6/29/2020.

## CLINICAL PLACEMENTS

Like most nursing schools, we can't guarantee placement in a specific facility. We can, however, guarantee your placement in a quality clinical environment that promotes your personal and professional development. After all, all of our health care partners have a reputation for delivering exceptional patient care.

While there's never a promise of employment, you should go into every accelerated BSN clinical with your best foot forward. Because as a Xavier ABSN student, you'll be able to network with some of the best health care providers in Ohio—individuals who can serve as a professional reference or future employer.

Contact us to learn more about our accelerated BSN clinicals.





58.     YouTube videos posted to Xavier's website also stress the importance of the hands-on learning experience promised to ABSN students. Examples of Xavier's statements include:

15

   a. "The purpose of skills lab is to give you an introduction to nursing procedures that you will do on patients.";[11]

   b. "The first clinical you're really working on vitals, head-to-toe assessments. They try to assign you a patient that is specific to what you are learning that week.";[12] and,

   c. "Skills labs are incredibly helpful for the learning process…Graduating as a Xavier nurse I'll feel prepared. I'll feel like hospitals will fight over me." [13]

59.    Xavier represents that, "After graduating from our ABSN program, you'll be prepared to sit for the NCLEX-RN exam with confidence and enter the profession as a *practice-ready nurse*."[14] Of course, it is not possible to become a "practice-ready nurse" without ever practicing, let alone seeing in-person, the physical procedures nurses are regularly expected to perform.

60.    Although COVID-19 has impacted the teaching methods and facilities available to nursing programs, Xavier was **not** required to suspend clinical placements for its ABSN students. In fact, the Ohio Board of Nursing has encouraged "academic-practice partnerships between health care facilities and pre-license RN and PN nursing education programs during the COVID-19 emergency in order to meet academic and workforce needs…."[15]

61.    Because the clinical practice involves learning and practicing vital nursing skills in real life medical settings with real patients, ABSN students are required to pay Xavier a fee for

---

[11] https://www.youtube.com/watch?v=ki-PDG96FEQ&feature=youtu.be, posted to
https://acceleratednursing.xavier.edu/accelerated-nursing-program/nursing-simulation-labs/, last accessed 6/24/2020.
[12] https://www.youtube.com/watch?v=G8FYVjKf41g&feature=youtu.be, posted to
https://acceleratednursing.xavier.edu/accelerated-nursing-program/hospital-clinicals/, last accessed 6/24/2020.
[13] https://www.youtube.com/watch?v=5A_BvYRuB84&feature=youtu.be, posted to
https://acceleratednursing.xavier.edu/accelerated-nursing-program/, last accessed 6/24/2020.
[14] *Id.*, last accessed 6/25/2020 (emphasis added).
[15] https://nursing.ohio.gov/wp-content/uploads/2020/04/Practice-Academic-Partnerships.pdf, last accessed
6/25/2020.

16

professional liability insurance. Because clinical practice for ABSN students has been discontinued, ABSN students receive no benefit from the professional liability insurance fee paid to Xavier. However, Xavier has not reimbursed any portion of the professional liability insurance fees paid by ABSN students in January. Xavier also charged ABSN students for professional liability insurance in May of 2020.

62.    Despite no longer providing important hands-on learning experiences, Xavier continues to charge full tuition to ABSN students. In fact, starting in May of 2020, Xavier increased the cost of each credit hour from $880 to $900.

63.    Xavier also has not refunded students for the annual $115 "student activity fee" despite the fact that there are currently no "student activities" that ABSN students are able to take part in.

64.    Moreover, despite no longer providing the promised hands-on learning programs, Xavier charged the full amount for these programs, in effect taking Plaintiff and the Class Members' money without providing any real benefit for that money.

65.    Without the hands-on learning experience promised through Xavier's ABSN program, the remote learning provided to students loses value because students cannot conceptualize what they have learned through real life practice. As clearly set out by Xavier, each of the three components to the ABSN education—online theory, onsite practice, and onsite clinicals—are taught from basic to advanced in conjunction with the other two. Advanced theory provides little education without advanced hands-on experience. But that incrementally advancing hands-on experience is exactly where Xavier is failing. As a result, Plaintiff and the Class Members, unable to engage in the hands-on learning at the core of Xavier's ABSN program, have lost at least a semester of their studies, in both time and in the money they paid for tuition and

17

other fees. Furthermore, the monetary value of a Xavier ABSN degree is diminished in light of the fact that ABSN graduates are not qualified to sit for state licensing exams in over half of the United States.

## CLASS ALLEGATIONS

66.     Under Rule 23(a), (b)(2), (b)(1)(A), and (b)(3), Plaintiff brings this action on behalf of herself and the Class, initially defined as follows:

> **All individuals enrolled as a student in Xavier University's College of Nursing Accelerated Bachelor of Science in Nursing Program in any city in Ohio who paid tuition and fees to Xavier.**

67.     The "Relevant Time Period" is the largest period allowed by law.

68.     Plaintiff reserves the right to amend and modify the definition of the Class to create greater specificity, further divide into subclasses, or limit to particular issues as the case progresses.

69.     Excluded from the Class are Defendant, its employees, officers, directors, legal representatives, heirs, successors, and wholly or partially owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

70.     The definition of the Class is unambiguous, and Plaintiff is a member of the Class she seeks to represent.

71.     While the exact number of Class Members is unknown to Plaintiff at this time, on information and belief, Defendant Xavier has at least 480 students enrolled in its ABSN program at any given time.

72.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other Class Members paid full tuition to Xavier after bargaining for an educational experience that emphasized in-person, hands-on learning. Yet, Plaintiff and the Class Members

18

received only online education. Furthermore, Plaintiff and each of the Class Members paid Xavier a "student activity fee" and fee for professional liability insurance that provides no cognizable benefit as a result of the fact that Plaintiff and the Class Members no longer receive access to clinical education settings or on-campus student activities.

73.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action litigation.

74.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making it appropriate for the Court to render final injunctive relief regarding the Class as a whole. Specifically, Defendant continued to collect and/or failed to refund tuition and fees from Class Members even though it is aware that the retention of such funds is unlawful and/or inequitable.

75.    Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual members thereof. Among the common questions of law and fact are the following:

    a.    Did Xavier engage in the conduct alleged?

    b.    Does Xavier have a policy and/or procedure of denying refunds, in whole or in part, to Plaintiff and the Class Members?

    c.    Did Xavier breach identical contracts with Plaintiff and the Class Members?

    d.    Did Xavier fail to honor identical promises to Plaintiff and the Class Members?

    e.    Did Xavier retain funds that justice and equity demand be returned to Plaintiff and the Class Members?

    f.    Did Xavier and is Xavier continuing to publish misstatements and/or misrepresentations on its website and in its marketing and advertising?

19

g.     Did Xavier and/or Orbis commit unfair, deceptive, and/or unconscionable acts or practices in its transactions with Plaintiff and the Class Members?

h.     What is the nature and extent of damages and other remedies to which the conduct of Xavier entitles Plaintiff and the Class Members?

76.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class Members is impracticable. The prosecution of separate actions by individual Class Members would impose heavy burdens upon courts, Class Members, and Defendant, and would create the risk of inconsistent adjudications of questions of law and fact common to the Class. Defendant has acted on grounds generally applicable to the class such that the final injunctive relief sought is appropriate respecting the Class as a whole. In addition, the allegations contain herein show that common questions of law and fact predominate over any questions affecting individual Class members and a class action is therefore superior to other available methods for fairly and efficiently adjudicating the controversy. A class action would achieve substantial economies of time, effort, and expense, and would assure uniformity as to persons similarly situated without sacrificing procedural fairness. Plaintiff and the proposed Class satisfy the requirements of Rule 23(b)(1)(A), (b)(2), and/or (b)(3).

## **CAUSES OF ACTION**

### **COUNT I – BREACH OF CONTRACT**

77.    All other paragraphs are fully re-alleged and incorporated herein.

78.    Plaintiff and the Class Members entered into identical, binding contracts with Xavier.

79.    Under their contracts with Xavier, Plaintiff and the Class Members paid Xavier tuition and fees for Xavier to provide onsite, in-person education through simulated and/or clinical

20

settings. The contracts also entitled Plaintiff and the Class Members to access on campus facilities and take part in student activities.

80.    For example, Xavier explicitly "guarantee[d]" placement in a quality clinical environment.[16]

81.    Plaintiff and the Class Members have fulfilled all obligations, having paid Xavier tuition and fees for at least one semester of the ABSN program.

82.    However, Xavier has breached such contracts, failed to provide the educational services in the format agreed to by the parties, and/or has not otherwise performed as required by the contract between Plaintiff and the Class Members and Xavier. Xavier has moved all classes to online classes and has restricted or eliminated Plaintiff and the Class Members' ability to access university facilities and/or take part in student activities, and fully eliminated simulated lab and clinical studies. In doing so, Xavier has and continues to deprive Plaintiff and the Class Members from the benefit of their bargains with Xavier

83.    As evidenced by the allegations herein, Xavier's breaches of contract and subsequent failure to remedy such breaches were committed in bad faith.

84.    Plaintiff and other Class Members have suffered damages as a direct and proximate result of Xavier's breaches of contract, in an amount to be determined at trial.

## COUNT II – UNJUST ENRICHMENT

85.    All other paragraphs are fully re-alleged and incorporated herein, except for paragraphs 77-84.

---

[16] https://acceleratednursing.xavier.edu/accelerated-nursing-program/hospital-clinicals/, last accessed 6/24/2020.

86.     At all times relevant hereto, Plaintiff and the Class Members directly conferred non-gratuitous benefits on Xavier, *i.e.*, monetary payments for tuition and fees, including in part on a credit-hour-by-credit-hour basis, so that Plaintiff and the Class Members could avail themselves of in-person and hands-on educational training, student activities, and campus facilities.

87.     Xavier knew of the benefits conferred on it by Plaintiff and the Class Members and accepted or retained the payments premised upon the existence of services it no longer provided or has refused to provide. In effect, Xavier charged Plaintiff and the Class Members for certain benefits and then unilaterally provided benefits worth substantially less, but kept the difference in value.

88.     Xavier knows that it does not have any lawful right to retain such tuition and fees paid by Plaintiff and Class Members.

89.     Xavier's retention of tuition and fees is unjust under the circumstances of this case because the acceptance of such payments was premised upon the existence of services that Xavier no longer provides, making it wholly inequitable for Xavier to improperly retain the benefits of Plaintiff and the other Class Members' payments and entitling Plaintiff and the other Class Members who made such payment to full restitution, including interest, in an amount to be determined at trial.

90.     Allowing Xavier to retain the aforementioned payments violates fundamental principles of fairness and equity.

## COUNT III – PROMISSORY ESTOPPEL

91.     All other paragraphs are fully re-alleged and incorporated herein, except for paragraphs 77-84.

92.     As detailed throughout this Complaint, Xavier made clear, unambiguous, and uniform promises to Plaintiff and the Class Members that it would provide onsite, in-person education and learning experiences through simulated and/or clinical settings.

93.     Xavier also promised that Plaintiff and the Class Members would have the ability to take part in student activities and have access to campus facilities.

94.     Xavier knew or should have reasonably expected Plaintiff and the Class Members would rely on these promises due to the emphasis Xavier placed on onsite and/or in person experiences in its marketing, recruitment, and informational material (as detailed throughout this Complaint).

95.     Xavier broke its promises to Plaintiff and the Class Members when it discontinued student activities.

96.     Xavier broke its promises to Plaintiff and the Class Members when it discontinued or failed to provide in-person, hands-on learning experiences in simulated and/or clinical settings.

97.     Plaintiff and the Class Members relied on these promises to their detriment when they paid tuition and fees.

98.     Injustice can only be avoided by enforcement of Xavier's promises and/or payment in the form of restitution and/or damages in an amount to be determined at trial.

**COUNT IV – OHIO CONSUMER SALES PRACTICES ACT,**

**R.C. 1345.01 *et seq.***

99.     All other paragraphs are fully re-alleged and incorporated herein.

100.     Defendant is a supplier as defined under R.C. 1345.01 because it supplied educational services to Plaintiff and the Class Members.

101. Plaintiff and the Class Members are consumers as defined under R.C. 1345.01 because they received educational services in their personal capacity from Defendant.

102. Plaintiff and the Class Members' agreements to receive a specific form of educational services in exchange for monetary remuneration were consumer transactions under R.C. 1345.01.

103. Defendant's acts as described throughout the Complaint constitute unfair, deceptive, and/or unconscionable acts in violation of the CSPA, R.C. 1345.02 and R.C. 1345.03.

104. For example, Defendant violated R.C. 1345.02(B), which notes that it is deceptive for Defendant to state that the services it provides "ha[ve] sponsorship, approval, performance characteristics, accessories, uses, or benefits that [they] do not have," are "of a particular standard, quality, grade, style prescription, or model, if [they are] not," have "been supplied in accordance with a previous representation, if [they have] not," have "a sponsorship, approval, or affiliation that [they] do[] not have," or that a transaction "involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false." *See* R.C. 1345.02(B)(1), (2), (5), (9), and (10).

105. Examples of unconscionable acts by Defendant include, but are not limited to, knowingly making misleading statements of opinion on which Plaintiff and the Class Members were likely to rely on to their detriment, knowingly providing services at a price substantially in excess of the price at which similar services were readily obtainable in similar consumer transactions by Plaintiff and Class Members, supplying services that it knew Plaintiff and Class Members would not receive a substantial benefit from, and/or requiring Plaintiff and Class Members to enter into consumer transactions on terms it knew were substantially one-sided in its favor. *See* R.C. 1345.03(B)(2), (3), (5), and (6).

24

106.    Defendant violated the CSPA when it intentionally breached contracts with Plaintiff and the Class Members.

107.    Defendant violated the CSPA when it failed to provide Plaintiff and the Class Members with in-person nursing simulation labs, clinical experiences, and/or student activities and then failed to provide a refund.

108.    To the extent Defendant argues that the agreements did not require it to provide refunds for the failure to provide in-person nursing simulation labs, clinical experiences, and/or student activities, Defendant knowingly committed CSPA violations by requiring Plaintiff and the Class Members to enter into consumer transactions on terms Defendant knew were substantially one-sided in its favor.

109.    To the extent Defendant argues that the agreements did not require it to provide refunds for the failure to provide in-person nursing simulation labs, clinical experiences, and/or student activities, Defendant knowingly violated the CSPA by requiring that Plaintiff and Class Members waive their rights under the CSPA.

110.    To the extent Defendant argues that the agreements did not require it to provide refunds for the failure to provide in-person clinical experiences, Defendant violated the CSPA when it represented that Plaintiff and the Class Members were "guarantee[d]" placement in a quality clinical environment.

111.    Defendant violated the CSPA when it gave Plaintiff and the Class Members the reasonable expectation that, following graduation, they would be qualified to sit for a state licensing exam and practice nursing in any state across the United States, as well as certain other countries. Examples of representations providing these reasonable expectations include, but are not limited to:

25

a. "Practice in any state across the U.S. and in many countries."[17]

b. "Graduates practice nursing throughout the tri-state area and throughout the United States."[18]

c. "Graduates practice nursing throughout the tri-state area and throughout the United States."[19]

d. "They're in hospitals, clinics and offices in greater Cincinnati and places like Indianapolis, Chicago and Boston."[20]

e. "With nurses in high demand all over the country and our ABSN program providing a 16-month transition into the profession, there's never been a better time to apply to our School of Nursing."[21]

112. Xavier continues to publish these and other misleading representations concerning licensing on its website to Plaintiff and the Class, in violation of the CSPA.

113. Defendant committed violations of the CSPA when it misled Plaintiff and the Class Members as to Orbis's role in the educational services provided.

114. Defendant committed violations of the CSPA when it gave Plaintiff and the Class Members the reasonable expectation through its representations that the online portion of the curriculum would be taught by Xavier faculty members.

115. Defendant violated the CSPA by continually stalling its legal obligations to Plaintiff and the Class Members, including but not limited to the obligation to provide in-person clinicals and simulation labs or provide refunds for the failure to provide these services.

---

[17] https://www.xavier.edu/college-of-nursing/careers-in-nursing, last accessed 7/17/2020.
[18] https://www.xavier.edu/college-of-nursing/about-nursing/index, last accessed 7/17/2020.
[19] https://www.xavier.edu/college-of-nursing/, last accessed 7/17/2020.
[20] https://www.xavier.edu/nursing/, last accessed 7/17/2020.
[21] https://acceleratednursing.xavier.edu/why-become-a-nurse/nursing-bsn-degree-benefits/, last accessed 7/17/2020.

116.    Defendant committed violations of the CSPA when it represented that ABSN students would receive hands-on training in simulated and clinical environments, despite knowing that no such learning would take place at any point in the near future. For example, on May 18, 2020, Xavier posted to Facebook a link to a Xavier blog post. The text of the Facebook post stated: "See what a well-rounded accelerated nursing education looks like." The blog post that the Facebook post linked to stated ABSN students would receive "HANDS-ON PRACTICE" and "CLINICAL EXPERIENCE."[22]

117.    Defendant's acts and practices are immoral, unethical, unjust, oppressive, and unscrupulous.

118.    Defendant was on notice before the filing of this suit that its conduct violated the CSPA:

   a.    *Krueck v. Youngstown State Univ.*, 2019-Ohio-3219, 131 N.E.3d 1030, ¶¶ 16-21 (9th Dist.) (allegations concerning statements made to student giving her reasonable belief she would be able to sit for licensing exam without additional work following graduation sufficient to state claim under CSPA);

   b.    *Ajibola v. Ohio Med. Career College, Ltd.*, 2018-Ohio-4449, 122 N.E.3d 660, ¶¶ 36-37 (2d Dist.) (allegations of misrepresentations about nursing program to nursing students prior to their enrollment sufficient to state claim under CSPA);

   c.    *Hacker v. Natl. College of Bus. & Tech.*, 186 Ohio App.3d 203, 2010-Ohio-380, 927 N.E.2d 38, ¶¶ 22-24 (2d Dist.) (misrepresentations to students concerning

---

[22] https://www.facebook.com/pages/category/Nursing-School/Xavier-University-ABSN-2185503458363111/, posting link to https://acceleratednursing.xavier.edu/blog/benefits-of-blended-learning-nursing-school/, last accessed 7/24/2020 (emphasis in original).

educational program through course materials sufficient for trier of fact to find violation of CSPA);

d.    *Malone v. Acad. of Ct. Reporting*, 64 Ohio App.3d 588, 593-594, 588 N.E.2d 54 (10th Dist.1990) (CSPA applies to untrue or misleading statements to students);

e.    *State ex rel. Fisher v. Warren Star Theatre*, 84 Ohio App.3d 435, 438, 616 N.E.2d 1192 (11th Dist.1992) (nonprofit corporation violated the CSPA by accepting money for specific services and then failing to make full refunds when those services were cancelled);

f.    *Daniels v. True*, 47 Ohio Misc.2d 8, 547 N.E.2d 425, 427 (M.C.1988) (misleading statements about supplier's identity and/or continually stalling and evading legal obligations to consumers constitute violations of CSPA);

g.    *Layne v. McGowen*, 2d Dist. Montgomery No. 14676, 1995 WL 316233, *5 (May 24, 1995) (concealment of supplier's true identity and/or continually stalling legal obligations to consumers constitute CSPA violations);

h.    *Brown v. Spears*, Franklin M.C. No. 8897, 1979 WL 52451, *3 (Aug. 20, 1979) (knowing breach of contract violates of CSPA);

i.    *Teeters Constr. v. Dort*, 2006-Ohio-7254, 869 N.E.2d 756, ¶ 42 (M.C.) (failure to include all material statements, representations, and promises in contract is a violation of the CSPA);

j.    *State ex rel. Celebrezze v. Venture Out Resorts, Inc.*, Ohio C.P. No. 43-14146, 1988 WL 877630, *3 (Feb. 24, 1988) (utilization of agreement allowing supplier to unilaterally alter terms of agreement violates CSPA);

k.      *State ex rel. Fisher v. Renters' Assistance Found., Inc.*, 10th Dist. Franklin No. 92AP-1590, 1993 WL 360277, *5-6 (Sept. 14, 1993) (upholding finding of one-sided contract in violation of CSPA based in part on contract that contained no guarantee defendants would perform contractual promises or definite time frame for performance);

l.      *State ex rel. Celebrezze v. Ferraro*, 63 Ohio App.3d 168, 172, 578 N.E.2d 492, 494 (2d Dist.1989) (representations that have the effect of lulling a consumer into believing that services offered by the supplier are somehow guaranteed when they are not is a violation of the CSPA); and

m.      *State ex rel. Celebrezze v. Chimento*, Mahoning C.P. No. 80 CV 1520, 1984 WL 264715, *2 (Sept. 21, 1984) (supplier of services violates CSPA by requiring consumers waive rights afforded by the CSPA).

119.    Defendant was on notice under Ohio Administrative Code § 109:4-3-10(A), which states:

> It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to:
>
> (A) Make any representations, claims, or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims, or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims, or assertions of fact;
> …

120.    Defendant was on notice under Ohio Administrative Code § 109:4-3-09(A)(2), which states:

29

(A) It shall be a deceptive act or practice in connection with a consumer transaction for a supplier:

(2) To accept money from a consumer for goods or services ordered by mail, telephone, the internet, or otherwise and then permit eight weeks to elapse without:

(a) Making shipment or delivery of the goods or services ordered;

(b) Making a full refund;

(c) Advising the consumer of the duration of an extended delay and offering to send the consumer a refund within two weeks if the consumer so requests; or

(d) Furnishing similar goods or services of equal or greater value as a good faith substitute if the consumer agrees.

121. Defendant was on notice under Ohio Administrative Code § 109:4-3-02(A)(1), which states:

It is a deceptive act or practice in connection with a consumer transaction for a supplier, in the sale or offering for sale of goods or services, to make any offer in written or printed advertising or promotional literature without stating clearly and conspicuously in close proximity to the words stating the offer any material exclusions, reservations, limitations, modifications, or conditions. Disclosure shall be easily legible to anyone reading the advertising or promotional literature and shall be sufficiently specific so as to leave no reasonable probability that the terms of the offer might be misunderstood.

122. Defendant was on notice under Ohio Administrative Code § 109:4-3-02(D), which states:

It is a deceptive act or practice in connection with an offer made through any online or digital medium, to make any offer without stating clearly and conspicuously, in close proximity to the words stating the offer, any material exclusions, reservations, limitations, modifications, or conditions. Disclosures should be as near to, and if possible on the same screen, as the triggering offer. If scrolling or a hyperlink is necessary to view the disclosure, the advertisement should guide consumers with obvious terms or instructions to scroll down or click on the hyperlink. Hyperlinked

disclosures should lead directly to the disclosed information and not require scrolling or clicking on any additional hyperlinks.

123.    Plaintiff and the Class Members are entitled to recover damages and other appropriate relief, as alleged herein.

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, prays for the following judgment,

a.    Certification of the action as a Class Action under Rule 23 of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and her counsel of record as Class Counsel;

b.    Injunctive relief requiring Xavier to provide truthful information on its websites, which are published in part for current students' benefit and use;

c.    Injunctive relief requiring Xavier to affirmatively ensure that the Class Members are provided an educational curriculum that permits them to begin practicing with no additional course or clinical work in any state in the United States or in any overseas territory or possession of the United States;

d.    Additional appropriate injunctive relief as permitted by law or equity, including an order enjoining Xavier from retaining and/or charging tuition and fees for services it does not provide or benefits that students do not receive;

e.    Awarding Plaintiff and Class Members damages in an amount to be determined at trial;

f.    Requiring Xavier to make full restitution to Plaintiff and the Class Members who paid tuition and fees for services they did not receive;

g.   Awarding pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law;

h.   The costs of bringing this suit, including reasonable attorneys' fees; and

i.   Awarding any such other and further legal and equitable relief as this Court may deem just and proper.

Respectfully submitted,

*/s/ W.B. Markovits*
W.B. Markovits (0018514)
Terence R. Coates (0085579)
Zachary C Schaengold (0090953)
MARKOVITS, STOCK & DEMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Phone: (513) 651-3700
Fax:  (513) 665-0219
*bmarkovits@msdlegal.com*
*tcoates@msdlegal.com*
*zschaengold@msdlegal.com*

and

Joseph M. Lyon (0076050)
THE LYON FIRM
2754 Erie Avenue
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 721-1178
*jlyon@thelyonfirm.com*

*Counsel for Plaintiff and the Class*

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all claims triable to a jury.

*/s/ W.B. Markovits*
W.B. Markovits (0018514)