IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| XIMENA MIRANDA, *et al.*, | : | CASE NO. 1:20-CV-00539-TSB |
| | : | |
| Plaintiff | : | JUDGE TIMOTHY S. BLACK |
| | : | |
| v. | : | |
| | : | XAVIER UNIVERSITY'S MOTION TO |
| XAVIER UNIVERSITY, | : | DISMISS PLAINTIFF'S AMENDED |
| | : | CLASS ACTION COMPLAINT |
| Defendant. | : | |

Defendant Xavier University ("Xavier" or the "University") moves the Court under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Ximena Miranda's ("Ms. Miranda") First Amended Class Action Complaint (the "Amended Complaint") (Doc. 11) with prejudice.

The Amended Complaint fails to correct any of the deficiencies that doomed Ms. Miranda's original claim that she was entitled to a tuition refund because Xavier transitioned to remote instruction in order to protect its staff, students, and clinical partners from the lethal effects of COVID-19. The Amended Complaint instead tacks on a new theory of relief, attacking the quality of her Accelerated Bachelor of Science in Nursing ("ABSN") program more generally and seeking relief under a statute that regulates consumers and suppliers.

Ms. Miranda's Amended Complaint should be dismissed because:

1.     Ms. Miranda received a substantively comparable education during the pandemic and was able to continue earning credits toward her degree without interruption;

2.     Xavier is expressly authorized by its contract to make changes to its curriculum;

3.     Ms. Miranda ratified any alleged breach by continuing to take classes at Xavier after it implemented distance learning;

4.      Ms. Miranda agreed that some of the fees she paid were non-refundable and, in any event, she received the benefit of these mandatory fees and therefore is not entitled to a refund;

5.      Ms. Miranda many not proceed on either of her quasi-contractual theories because a contract indisputably governs the parties' relationship;

6.      Ms. Miranda is not entitled to relief under the Ohio Consumer Sales Practices Act because Xavier's education of Ms. Miranda is not a consumer transaction subject to the Act, and the University did not have the requisite notice that its supposed conduct was an alleged violation of the Act; and

7.      Ms. Miranda's claims are "educational malpractice" claims, which are not actionable.

A memorandum in support of this motion follows.

<div style="margin-left: 50%;">

Respectfully submitted,

*/s/ Aaron M. Herzig*
Aaron M. Herzig (0079371)
   Trial Attorney
Russell S. Sayre (0047125)
Medora M. Akers (096419)
Courtney Lynch (0098210)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio  45202-3957
Phone: (513) 381-2838
Fax: (513) 381-0205
aherzig@taftlaw.com
sayre@taftlaw.com
makers@taftlaw.com
clynch@taftlaw.com

*Attorneys for Defendant Xavier University*

</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| XIMENA MIRANDA, *et al.*, | : | CASE NO. 1:20-CV-00539-TSB |
| | : | |
| Plaintiff | : | JUDGE TIMOTHY S. BLACK |
| | : | |
| v. | : | |
| | : | XAVIER UNIVERSITY'S |
| XAVIER UNIVERSITY, | : | MEMORANDUM IN SUPPORT OF ITS |
| | : | MOTION TO DISMISS PLAINTIFF'S |
| Defendant. | : | AMENDED CLASS ACTION COMPLAINT |

**COMBINED TABLE OF CONTENTS AND SUMMARY
PURSUANT TO S.D. OHIO CIV. R. 7.2(A)(3)**

INTRODUCTION.................................................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 4

I.      The Accelerated Bachelor of Science in Nursing program. ................................. 4

II.     Xavier transitions to online curriculum in response to COVID-19.................................. 6

LEGAL STANDARD ........................................................................................................... 7

LAW AND ARGUMENT...................................................................................................... 7

I.      Ms. Miranda cannot plausibly plead a breach of contract case against Xavier............ 7

     A.     Ms. Miranda has failed to demonstrate that she is entitled to any refund of tuition based on breach of contract. .......................................................................... 9

          1.     There is no breach of contract because Xavier's remote curriculum provided a substantively comparable, high-quality education............... 9

There has been no breach because Ms. Miranda received the same substantive education and instruction after the switch to remote learning, even though the mode of delivery was different in light of necessary changes made to respond to the global health crisis.

          2.     There is no breach of contract because Xavier was entitled to make such necessary changes to the curriculum. ................................................ 10

The contract between Ms. Miranda and Xavier expressly permits the University to make changes to the curriculum, so the adjustments that Xavier made to protect the health and safety of its academic community do not constitute a breach.

          3.     Ms. Miranda's breach of contract claim also fails because she cannot establish damages.............................................................................................. 11

Ms. Miranda cannot establish damages because she has continued to receive high-quality instruction from the University and earn credits toward her degree. *Stenger v. Ferris State Univ. & Bd. of Trs. of Ferris State Univ.*, 2020 Mich. Ct. Cl. LEXIS 5, *9 n.4 (Mich. Ct. Cl. Oct. 1, 2020).

          4.     Had there been a breach, Ms. Miranda ratified it by continuing to take classes....................................................................................................... 13

Even if there had been a breach in the necessary switch from in-person instruction, Ms. Miranda ratified it by continuing with her classes in the new format. Ratification of a contract may occur by acceptance and retention of the benefits, acquiescence in the contract, or failing to repudiate the contract within a reasonable time. *Campbell v. Hospitality Motor Inns, Inc.*, 493 N.E.2d 239, 241 (Ohio 1986).

     **B.**    **Ms. Miranda is not entitled to a refund of her non-refundable liability insurance based on breach of contract**...................................................................14

Ms. Miranda paid a non-refundable liability insurance fee at the beginning of the semester understanding that it would not be returned under any circumstances. While she may not have anticipated at the time that one of those circumstances might be a global pandemic, that does not change the fact that she agreed to the non-recoverability of this fee.

     **C.**    **Xavier never contracted to provide specific student activities and therefore there has been no breach of contract with respect to the Student Activity Fee.**...................................................................................................................15

The Student Activity Fee is a mandatory fee that is due as a prerequisite to matriculation that each student must pay regardless of whether she intends to (or does) receive any benefit from it, and the Handbook does not obligate Xavier to provide any particular quantity or type of activities. Ms. Miranda therefore paid it without an expectation of receiving any specific benefit.

**II.**    **Ms. Miranda fails to state a claim for unjust enrichment.**.................................16

There is unquestionably a contract between Xavier and Ms. Miranda, and her unjust enrichment claim is factually indistinguishable from her breach of contract claim. Therefore, under Ohio law, Ms. Miranda's breach of contract claim forecloses the duplicative unjust enrichment claim.

**III.**    **Ms. Miranda's promissory estoppel claim fails.**.................................................18

Ms. Miranda's promissory estoppel claim is unsustainable because "Ohio law bars a promissory estoppel claim when there is an express contract between the parties," *Doe v. Coll. of Wooster*, 243 F. Supp. 3d 875, 895 (N.D. Ohio 2017), and there is no dispute that a contract exists between the parties.

**IV.**    **Ms. Miranda cannot recover under the Ohio Consumer Sales Practices Act.**............19

     **A.**    **Moving to remote learning in response to a pandemic is not a deceptive or unconscionable act.**.....................................................................................20

It is not deceptive or unconscionable to take steps to preserve human life or to follow government directives. No case or statute supports such a claim.

     **B.**    **The OCSPA does not apply to Xavier's nursing program.**.................................20

The OCSPA applies only to consumer transactions, which are performed for purposes that are *primarily personal, family, or household*, or solicitation to supply any of these things." Ohio Rev. Code § 1345.01(A) (emphasis added). It does not apply to a transaction entered into for business purposes. Since Ms. Miranda and the class's purchase of a nursing education was for business purposes—to improve their professional opportunities—not for a primarily personal, family or household purpose, it does not fall within the ambit of the OCSPA, and this claim fails.

     **C.**    **Ms. Miranda's class claim fails because Xavier did not have the requisite notice that its conduct allegedly violated the OCSPA.**.........................................21

          **1.**    **None of the cases cited by Ms. Miranda was a final determination.**....22

Notice under the OCSPA can only be provided by a court's "final determination." However, the cases Ms. Miranda claims put Xavier on notice were all dismissed prior to trial and presumably resolved outside of court. Thus, at no point in any of those cases did a court consider the alleged conduct and make a "final determination" that it violated the OCSPA. Therefore, none of those cases is sufficient to put Xavier on notice that it might be violating the Act.

  **2.**   **Ms. Miranda identifies only inapposite cases that do not constitute sufficient prior notice under Ohio Rev. Code § 1345.09(B).** ................ 23

"To constitute sufficient notice, the defendant's alleged violation must be substantially similar to an act or practice previously declared to be deceptive." *See Marrone v. Philip Morris USA, Inc.*, 850 N.E.2d 31, 33 (Ohio 2006). The cases Ms. Miranda cites are nothing like her case and therefore they could not have provided sufficient notice to Xavier as required under the OCSPA.

  **3.**   **The rules relied upon by Ms. Miranda are too generic to constitute sufficient prior notice under Ohio Rev. Code § 1345.09(B).** ................ 27

A general rule is not sufficient to put a reasonable person on notice of the prohibition of a specific act or practice because it would allow "*any* previous determination of a deceptive act or practice to qualify as prior notice for any subsequent alleged deceptive act or practice." *Marrone v. Philip Morris USA, Inc.*, 850 N.E.2d 31 (Ohio 2006).

**V.**   **Ms. Miranda's claims are really just educational malpractice claims.** ......................... 28

 **A.**   **Ms. Miranda's breach of contract claim is just an educational malpractice claim in disguise** ................................................................................. 29

Ms. Miranda tries to manufacture a breach by contending that she was promised an education in a certain "format," but that it was not delivered that way. But that contention mischaracterizes the academic relationship between the University and its students. While Xavier may have described the typical components of its ABSN program, what it promised to deliver was an accelerated nursing education, not a particular format. The fundamental agreement between Ms. Miranda and Xavier was that she would pay tuition and fees in exchange for instruction and credits and, if successful, a degree. Xavier delivered that. To the extent Ms. Miranda is dissatisfied with the academic experience of her remote instruction, that is nothing but an uncognizable educational malpractice claim.

 **B.**   **Ms. Miranda's OCSPA claim is an educational malpractice claim.** ................ 31

Like her breach of contract claim, Ms. Miranda's OCSPA claim is actually an impermissible educational malpractice claim because she complains about aspects of her academic experience like the quality of the professors and the nature of the curriculum, both of which are prototypical educational malpractice claims.

**CONCLUSION** ....................................................................................................... 32

**CERTIFICATE OF SERVICE** ................................................................................ 33

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                              **Page(s)**

*A.G. by & through N.G. v. Cmty. Ins. Co.*,
   363 F. Supp. 3d 834 (S.D. Ohio 2019) ..................................................................5

*AFCO Credit Corp. v. Brandywine Ski Ctr., Inc.*,
   610 N.E.2d 1032 (Ohio Ct. App. 1992)..............................................................13

*Ajibola v. Ohio Medical Career College, Ltd.*,
   122 N.E.3d 660 (Ohio Ct. App. 2018).........................................................22, 24

*Al–Dabagh v. Case W. Reserve Univ.*,
   777 F.3d 355 (6th Cir. 2015) ...............................................................................8

*Amato v. Gen. Motors Corp.*,
   463 N.E.2d 625 (Ohio 1982)..............................................................................22

*Andre v. Pace Univ.*,
   655 N.Y.S.2d 777 (App. Div. 1996) ..................................................................31

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009).........................................................................................7

*Atria v. Vanderbilt Univ.*,
   142 F. App'x 246 (6th Cir. 2005) .....................................................................28

*Baker v. Oregon City Sch. Bd. of Educ.*,
   No. L-11-1109, 2012 WL 762482 (Ohio Ct. App. Mar. 9, 2012) ................29, 30

*Baker v. Oregon City Schs.*,
   No. G-4801-CI-200908917-000, 2011 WL 13383584 (Ohio C.P. Apr. 13,
   2011) ..............................................................................................................29, 30

*Behrend v. State*,
   379 N.E.2d 617, (Ohio Ct. App. 1977) ...............................................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................7

*Beukas v. Bd. of Tr. of Fairleigh Dickinson Univ.*,
   605 A.2d 776 (N.J. Super. Ct. Law. Div. 1991), *aff'd*, 605 A.2d 708 (N.J.
   Super. Ct. App. Div. 1992) ................................................................................11

*Borden v. Antonelli Coll.*,
   304 F. Supp. 3d 678 (S.D. Ohio 2018) .......................................................16, 28

*Bower v. Int'l Bus. Machines, Inc.*,
    495 F. Supp. 2d 837 (S.D. Ohio 2007) ................................................................22

*Bradshaw v. Pa. State Univ.*,
    No. 10-4839, 2011 WL 1288681 (E.D. Pa. Apr. 5, 2011) ......................................17

*Brown v. Spears*,
    No. 8897, 1979 WL 52451 (Ohio Mun. Ct. Aug. 20, 1979)....................................26

*Buescher v. Baldwin Wallace Univ.*,
    86 F. Supp. 3d 789 (N.D. Ohio 2015)......................................................................8

*Campbell v. Hospitality Motor Inns, Inc.*,
    493 N.E.2d 239 (Ohio 1986)...................................................................................13

*State ex rel. Celebrezze v. Chimento*,
    80 CV 1520, 1984 WL 264715 (Ohio C.P. Sept. 21, 1984) .............................26, 27

*State ex rel. Celebrezze v. Ferraro*,
    578 N.E.2d 492 (Ohio Ct. App. 1989) ....................................................................26

*State ex rel. Celebrezze v. Venture Out Resorts, Inc.*,
    No. 43-14146, 1998 WL 877630 (Ohio C.P. Feb. 24, 1998)..................................26

*Chong v. Ne. Univ.*,
    No. CV 20-10844-RGS, 2020 WL 5847626 (D. Mass. Oct. 1, 2020)....................16

*Daniels v. True*,
    547 N.E.2d 425 (Ohio Mun. Ct. 1988) ...................................................................26

*David v. Neumann Univ.*,
    177 F. Supp. 3d 920 (E.D. Pa. 2016) .....................................................................17

*Davis & Tatera, Inc. v. Gray-Syracuse, Inc.*,
    796 F. Supp. 1078 (S.D. Ohio 1992) .....................................................................16

*Doe v. Adkins*,
    674 N.E.2d 731 (Ohio Ct. App. 1996).....................................................................18

*Doe v. Coll. of Wooster*,
    243 F. Supp. 3d 875 (N.D. Ohio 2017).................................................................8, 18

*Doe v. Univ. of Dayton*,
    766 F. App'x 275 (6th Cir. 2019) ........................................................................8, 18

*Doherty v. S. Coll. of Optometry*,
    862 F.2d 570 (6th Cir. 1988) .............................................................8, 10, 11, 31

*Donohue v. Copiague Union Free Sch. Dist.*,
  407 N.Y.S.2d 874 (N.Y. App. Div. 1978) ............................................................12

*Father Flanagan's Boys Home v. Donlon*,
  449 F. Supp. 3d 739 (S.D. Ohio 2020) ..................................................................5

*State ex rel. Fisher v. Renters' Assistance Found., Inc.*,
  No.92AP-1590, 1993 WL 360277 (Ohio Ct. App. Sept. 14, 1993)........................26

*State ex rel. Fisher v. Warren Star Theatre*,
  616 N.E.2d 1192 (Ohio Ct. App. 1992).................................................................26

*Flex Homes, Inc. v. Ritz-Craft Corp of Michigan, Inc.*,
  491 F. App'x. 628 (6th Cir. 2012) ........................................................................20

*Gascho v. Glob. Fitness Holdings, LLC*,
  918 F. Supp. 2d 708 (S.D. Ohio 2013) .................................................................22

*Gerboc v. ContextLogic, Inc.*,
  867 F.3d 675 (6th Cir. 2017) ....................................................................21, 22, 28

*Gourdine v. Felician Coll.*,
  No. A-5248-04T3, 2006 WL 2346278 (N.J. Super. Ct. App. Div. Aug. 15,
  2006) ....................................................................................................................11

*Hacker v. Nat'l Coll. of Bus. & Tech.*,
  927 N.E.2d 38 (Ohio Ct. App. 2010).............................................................22, 25

*Hammond v. Auburn Univ.*,
  669 F. Supp. 1555 (M.D. Ala. 1987) ....................................................................10

*Hensley Mfg. v. ProPride, Inc.*,
  579 F.3d 603 (6th Cir. 2009) ..................................................................................7

*Horrigan v. E. Mich. Univ.*,
  No. 20-000075-MK, 2020 WL 6050534 (Mich. Ct. Cl. Sept. 24, 2020)................29

*Houston v. Mile High Adventist Acad.*,
  846 F. Supp. 1449 (D. Colo. 1994).......................................................................31

*Jamieson v. Vatterott Educ. Ctrs., Inc.*,
  259 F.R.D. 520 (D. Kan. 2009)........................................................................11, 30

*Jefferson v. Univ. of Toledo*,
  No. 12AP-236, 2012 WL 4883203 (Ohio Ct. App. Oct. 16, 2012) .........................8

*Krebs v. Charlotte Sch. of Law, LLC*,
  No. 3:17-CV-00190-GCM, 2017 WL 3880667 (W.D.N.C. Sept. 5, 2017)........8, 17

*Krueck v. Youngstown State University*,
    131 N.E.3d 1030 (Ohio Ct. App. 2018)......................................................................22, 23, 24

*Lawrence v. Lorain Cty. Cmty. Coll.*,
    713 N.E.2d 478 (Ohio Ct. App. 1998) ...................................................................................28

*Layne v. McGowen*,
    No. 14676, 1995 WL 316233 (Ohio Ct. App. May 24, 1995)...............................................26

*Leiby v. Univ. of Akron*,
    No. 05AP-1281, 2006 WL 1530152 (Ohio Ct. App. June 6, 2006) ..................................8, 11

*Lemmon v. Univ. of Cincinnati*,
    112 Ohio Misc. 2d 23, 29, 750 N.E.2d 668, 672 (Ct. Cl. 2001) ...........................................31

*Lewis v. ACB Bus. Servs., Inc.*,
    135 F.3d 389 (6th Cir. 1998) .................................................................................................23

*Loadman Grp., L.L.C. v. Banco Popular N. Am.*,
    No. 4:10cv1759, 2013 WL 1150125 (N.D. Ohio Mar. 19, 2013) .........................................18

*Lotfi-Fard v. First Fed. of Lakewood*,
    No. 87207, 2006 WL 2036466 (Ohio Ct. App. July 20, 2006) .............................................17

*MacDonald v. Thomas M. Cooley Law Sch.*,
    724 F.3d 654 (6th Cir. 2013) ...........................................................................................20, 21

*Malone v. Academy of Court Reporting*,
    88 N.E.2d 54 (Ohio Ct. App. 1990)...................................................................................22, 25

*Marrone v. Philip Morris USA, Inc.*,
    850 N.E.2d 31 (Ohio 2006)..............................................................................................23, 27

*Martin v. United Airlines, Inc.*,
    727 F. App'x 459 (10th Cir. 2018) ........................................................................................14

*Master Consol. Corp. v. BancOhio Nat'l Bank*,
    No. 11778, 1990 WL 65666 (Ohio Ct. App. May 17, 1990).................................................13

*Master Consol. Corp. v. BancOhio Nat'l Bank*,
    575 N.E.2d 817 (Ohio 1991) .................................................................................................13

*Mayer v. Mylod*,
    988 F.2d 635 (6th Cir. 1993) ...................................................................................................7

*Moore v. Vanderloo*,
    386 N.W.2d 108 (Iowa 1986) ...........................................................................................31, 32

*Moss v. Wayne State Univ.*,
   No. 286034, 2009 WL 4344193 (Mich. Ct. App. Dec. 1, 2009) ............................................18

*NetJets, Inc. v. Binning*,
   No. 04AP-1257, 2005 WL 1806460 (Ohio Ct. App. Aug. 2, 2005) ................................13, 14

*Nicols v. R.J. Reynolds Tobacco Co.*,
   No. CV 99-11-4539 (Ohio C.P. Aug. 9, 2000) ........................................................................27

*O'Kentucky Rose B. Ltd. P'ship v. Burns*,
   147 F. App'x 451 (6th Cir. 2005) .............................................................................................15

*Paladino v. Adelphi Univ.*,
   454 N.Y.S.2d 868 (N.Y. App. Div. 1982) ................................................................................12

*Papaspiridakos v. Educ. Affiliates, Inc.*,
   No. 10 CV 5628(RJD)(JO), 2013 WL 4899136 (E.D.N.Y. Sept. 11, 2013) ..........................30

*Paterson v. Equity Tr. Co.*,
   No. 11CA009993, 2012 WL 690642 (Ohio Ct. App. Mar. 5, 2012) .......................................13

*Pattie v. Coach, Inc.*,
   29 F. Supp. 3d 1051 (N.D. Ohio 2014) ..............................................................................22, 23

*Poe v. Hamilton*,
   565 N.E.2d 887 (Ohio Ct. App. 1990) .....................................................................................29

*Rockwood v. Shoen*,
   145 F. Supp. 3d 718 (S.D. Ohio 2015) ...............................................................................28, 29

*Ross v. Creighton Univ.*,
   957 F.2d 410 (7th Cir. 1992) ...................................................................................................28

*Savett v. Whirlpool Corp.*,
   No. 12 CV 310, 2012 WL 3780451 (N.D. Ohio Aug. 31, 2012)..............................................22

*Slobin v. Henry Ford Health Care*,
   666 N.W.2d 632 (Mich. 2003)..................................................................................................21

*Somasundaram v. Kent State Univ.*,
   No. 13AP-785, 2014 WL 1347201 (Ohio Ct. App. Mar. 18, 2014) .......................................17

*Stenger v. Ferris State Univ. & Bd. of Trs. of Ferris State Univ.*,
   2020 Mich. Ct. Cl. LEXIS 5 (Mich. Ct. Cl. Oct. 1, 2020)..........................................9, 10, 12

*Stevens Transp. TL, Inc. v. Great Am. Ins. Co.*,
   No. 1:11-CV-00236, 2012 WL 1564207 (S.D. Ohio May 2, 2012)..........................................5

*Suhail v. Univ. of the Cumberlands*,
   107 F. Supp. 3d 748 (E.D. Ky. 2015) ................................................................8

*Swidryk v. Saint Michael's Med. Ctr.*,
   493 A.2d 641 (N.J. Super. Ct. Law. Div. 1985) ..........................................12, 13

*Tedder, Tr. of Roudebush Childrens Tr. v. Kotar*,
   No. 1:18-cv-48, 2019 WL 315097 (S.D. Ohio Jan. 24, 2019)...............................7

*Teeters Constr. v. Dort*,
   869 N.E.2d 765 (Ohio Mun. Ct. 2006) ..............................................................26

*Total Benefits Planning Agency Inc. v. Anthem Blue Cross & Blue Shield*,
   630 F. Supp. 2d 842 (S.D. Ohio 2007) ................................................................6

*V & M Star Steel v. Centimark Corp.*,
   678 F.3d 459 (6th Cir. 2012) ...........................................................................7, 8

*Volbers-Klarich v. Middletown Mgt., Inc.*,
   929 N.E.2d 434 (Ohio 2010)...............................................................................22

*Waugh v. Morgan Stanley & Co.*,
   966 N.E.2d 540 (Ill. Ct. App. 2012) ..................................................................31

*Yo-Can, Inc. v. The Yogurt Exchange, Inc.*,
   778 N.E.2d 80 (Ohio Ct. App. 2002) .................................................................20

**Statutes**

Ohio Rev. Code § 1345.01(A) .................................................................................20

Ohio Rev. Code § 1345.09(B) ...........................................................21, 22, 23, 27

**Other Authorities**

17 Ohio Jur. 3d Consumer and Borrower Protection § 10........................................20

Fed. R. Civ. P. 12(b)(6)...........................................................................................7

Ohio Admin. Code § 109:4-3...........................................................................27, 28

Ohio Admin. Code § 109:4-3-02 .............................................................................27

Ohio Admin. Code § 109:4-3-10 .............................................................................27

## INTRODUCTION

Xavier's priority has always been the quality of its academic programs and the advancement of its students. For over two decades, Xavier has provided a first-class nursing education to students from across the country and around the world, including Ms. Miranda, a student in Xavier's ABSN program since January of this year. Xavier has provided a high-quality education to Ms. Miranda during the entire time that she has been a student in the ABSN program, including following the move to remote instruction necessitated by the COVID-19 pandemic.

In March 2020, as the pandemic descended upon Ohio, in compliance with government directives and in order to protect the health of its students, faculty, and clinical partners (including hospitals preparing to deal with the potential crush of COVID-19 patients), Xavier transitioned portions of its ABSN curriculum from in-person classes to live classes held by video conference. Xavier's faculty worked creatively and diligently to ensure that the remote instruction would provide the students with the same robust education that they received before the pandemic. As a result, Xavier's nursing students were able to keep up their progress toward obtaining their nursing degrees.

However, Ms. Miranda claims that the transition to live, remote learning is a breach of contract[1] and she filed a Complaint in June, alleging that Xavier retained her tuition, Student Activity Fee, and malpractice insurance fee, but did not give her the education for which she contracted (Doc. 1).

---

[1] Alternative claims for unjust enrichment and promissory estoppel should be dismissed too. *See infra* at Law and Argument, Sections II and III. The contract between Ms. Miranda and Xavier is found primarily in the College of Nursing, Undergraduate Student Handbook. *See infra* at Law and Argument Section I.

Xavier moved to dismiss because her Complaint failed to state a claim for relief. (Doc. 10.) Rather than oppose this motion, Ms. Miranda filed an Amended Complaint. (Doc. 11.)

The Amended Complaint failed to correct the deficiencies of the original Complaint. Instead, it appended a new claim, complaining that Xavier violated the Ohio Consumer Sales Practices Act (the "OCSPA" or the "Act") because the education that it promised allegedly did not live up to the instruction provided. In addition to being factually wrong, this argument is also legally unsustainable because Xavier's education of its students is not a "consumer transaction" covered by the Act, nor did Xavier have the requisite notice that its supposed conduct violated the Act, which is necessary to maintain an OCSPA class action.

Moreover, like her breach of contract claim, the essence of Ms. Miranda's OCSPA claim is that she is dissatisfied with the education provided by Xavier. But the Sixth Circuit and Ohio courts exercise great caution before wading into disputes between students and their universities about the nature and quality of the academic experience, recognizing that, even when framed as legal arguments, such matters are best resolved to the schools themselves.

To try to avoid this law, Ms. Miranda attempts to frame her claims in contractual and transactional terms, asserting that Xavier promised to provide education in a certain format. But this contention is an artificially narrow characterization of the academic promise Xavier made and it is unsupported by the contract. Xavier may have described the typical structure its ABSN program follows, but did not promise to deliver a particular format; it promised an accelerated nursing education. The fundamental agreement between Ms. Miranda and Xavier was that she would pay tuition and fees in exchange for instruction and credits and, if successful, a degree. Xavier has delivered on that promise.

Ms. Miranda's artful pleading does not relieve her case from dismissal. If the education she received is of the same quality as the education she was supposedly promised, then she has not been harmed. The only way she can assert an injury is by arguing that the education actually delivered was inadequate. But that argument is the prototypical claim for educational malpractice, which the court will not hear because it would require a comparison between the education she claims she was promised and the one she claims she received and a determination regarding the relative didactic values of each and their impact on the value of Ms. Miranda's academic experience.[2] Thus, there is no viable way for Ms. Miranda to plead her case.

And her claims are untenable for a number of other reasons:

1.      Ms. Miranda received safe and appropriate alternative instruction after the pandemic hit, thanks to the innovation and hard work of Xavier's faculty in developing the distance-learning curriculum and the investments by Xavier to facilitate remote education.

2.      Ms. Miranda and Xavier agreed that Xavier has the right to make changes to the curriculum, so there can be no breach of contract based on the transition to remote instruction.

3.      Even if there had been a breach, Ms. Miranda ratified it by continuing to take classes.

4.      Ms. Miranda and Xavier agreed that the liability insurance fee is non-refundable.

5.      Ms. Miranda received the benefit of her liability insurance fee and her Student Activity Fee, which are mandatory fees charged regardless of use.

6.      Ohio law provides that Ms. Miranda's unjust enrichment and promissory estoppel claims are not viable because a contract covers the matter in dispute.

---

[2] Notably, the original Complaint alleged more explicitly that the education provided was inferior to the education promised. (*See* Doc. 1 ¶ 5.) In its motion to dismiss, Xavier pointed out that such an allegation is simply an educational malpractice claim, which Ms. Miranda seemingly acknowledges because she removed such allegations from her Amended Complaint.

7.      And Ms. Miranda is not entitled to relief under the OCSPA because Xavier's education of Ms. Miranda is not a consumer transaction subject to the Act, and the University did not have the requisite notice for a class action that its supposed conduct was an alleged violation of the Act.

Xavier is proud of the robust and comprehensive education that it provided before the pandemic, and the flexibility, ingenuity, and perseverance of its students, faculty, and staff that allowed that first-rate education to continue even after the transition to remote learning. While Ms. Miranda may be dissatisfied with her educational experience, her disappointment is not actionable. Because her claims are fundamentally flawed as a matter of law under the facts as pleaded, this Court should dismiss the Amended Complaint with prejudice.

## STATEMENT OF FACTS

I.      **The Accelerated Bachelor of Science in Nursing program.**

Xavier's ABSN program allows students with a non-nursing bachelor's degree to earn a bachelor of science in nursing on a compressed, 16-month schedule. (Am. Compl. ¶ 38.) Even before the pandemic, part of the instruction for this program was provided online. (*Id.* ¶ 41.) This remote instruction was supplemented by lab simulation and clinical components. (*Id.*)

Ms. Miranda matriculated in the ABSN program in January 2020. (*Id.* ¶ 25.) She remains enrolled today and is on target to graduate in May 2021, at which point she intends to work as an emergency room nurse. (*Id.* ¶¶ 25-26.)

The ABSN students' relationship with Xavier is governed by an 80-page, comprehensive Nursing Student Handbook (the "Handbook"). A copy of this Handbook is attached as Exhibit

4

A.[3] The Handbook requires each student to acknowledge that he or she has read, and is bound by, the terms of the Handbook. (*See* Ex. A, at p. 2.)

The Handbook also delineates Xavier's Curriculum Policies. It expressly states that the "[f]aculty reserves the right to change the curriculum if deemed necessary for the progressive development of the program." (*See id.* at p. 54.) Certain fees that are prerequisites for matriculation are also identified in the Handbook. The Handbook specifies that "Xavier University maintains a blanket liability insurance policy on all nursing students[,] … [and a] fee of approximately $18.00 per semester will be charged to the student's Bursar bill to cover this expense." (*Id.* at p. 37.) The Handbook expressly states that this fee is non-refundable. (*Id.* at p. 45.)

ABSN students are required to pay a $115 Student Activity Fee. (Am. Compl. ¶ 63.) This fee is "charged to every full-time and part-time undergraduate or graduate student whether or not they are on campus or studying abroad." It is a mandatory fee charged regardless of use to support[4]:

> ... all organizations under the [Student Government Association]. This includes the Student Activities Council which organizes over 100 on- and off-campus opportunities for students annually, over 120 clubs, and 6 subordinate bodies (including Club Sports Council, the National Pan-Hellenic Council and Resident Student Association). Other initiatives sponsored by the SGA include the free Legal Counsel for all enrolled students, a Campus Readership Program that provides free *USA Today* and *New York Times*, the Commuter Council, the Commuter Lounge in the Gallagher Student Center (GSC), and a computer kiosk for quick printing in the GSC.

---

[3] On a motion to dismiss, a court may consider documents attached to the defendant's brief that are referenced in the plaintiff's complaint. *Father Flanagan's Boys Home v. Donlon*, 449 F. Supp. 3d 739, 746 (S.D. Ohio 2020). In particular, where a complaint references a contract, that document may be considered on a motion to dismiss without converting the motion to a motion for summary judgment, even if the document is not attached to the complaint. *See, e.g.*, *Stevens Transp. TL, Inc. v. Great Am. Ins. Co.*, No. 1:11-CV-00236, 2012 WL 1564207, *3 n.2 (S.D. Ohio May 2, 2012). Ms. Miranda references the Handbook in her Complaint. (Am. Compl. ¶ 3, n.2.)
[4] *See Frequently Asked Questions*, Xavier University, https://www.xavier.edu/bursar/xavierpay/xavier-pay-frequently-asked-questions. The Court may consider statements made on the website because the Complaint relies on it. *See, e.g.*, *A.G. by & through N.G. v. Cmty. Ins. Co.*, 363 F. Supp. 3d 834, 839 n.2 (S.D. Ohio 2019).

## II.     Xavier transitions to online curriculum in response to COVID-19.

Like many other schools across Ohio (and the country), in March 2020, Xavier was

forced to suspend in-person instruction in an effort to curb the spread of COVID-19. (Am.

Compl. ¶ 6.) For the ABSN program, that required transitioning the in-person components of the

ABSN curriculum (lab simulation and clinical training) to a distance-learning format. It was

particularly critical that the clinical portion be conducted off-site because the hospitals at which

that training typically occurs anticipated massive influxes of patients with novel and life-

threatening health problems. Hospitals were concerned that they would run out of space to treat

patients, were facing dangerous shortages of personal protective equipment ("PPE"), and were

also attempting to limit the health risk to staff and patients by aggressively restricting access to

the facilities. Moreover, state and local governments were directing non-essential personnel to

stay home, and the Ohio Department of Health ordered that all non-essential personnel should be

excluded from surgery and procedure rooms.[5]

---

[5] *See, e.g.*, *Personal Protective Equipment Needed; New COVID-19 Data Dashboard Unveiled*, Ohio Department of Health (Mar. 26, 2020), https://governor.ohio.gov/wps/portal/gov/governor/media/news-and-media/personal-protective-equipment-needed-new-covid19-data-dashboard-unveiled (describing expected shortage of PPE); *Director's Order for the Management of Non-essential Surgeries and Procedures throughout Ohio*, Ohio Department of Health (Mar. 17, 2020), https://coronavirus.ohio.gov/wps/wcm/connect/gov/e7cee147-0f86-438b-ae1f-c5922f46c47c/Director%27s+Order+non-essential+surgery+3-17-020.pdf?MOD=AJPERES&CONVERT_TO=url&CACHEID=ROOTWORKSPACE.Z18_M1HGGIK0N0JO00QO9DDDDM3000-e7cee147-0f86-438b-ae1f-c5922f46c47c-n6XVhxL (directing postponement of all non-essential and elective surgeries and exclusion of all non-essential individuals from surgery/procedure rooms to preserve PPE); *Elective Surgeries Postponed in Ohio Hospitals*, Ohio Department of Health (Mar. 17, 2020), https://governor.ohio.gov/wps/portal/gov/governor/media/news-and-media/elective%20surgeries-postponed-in-ohio-hospitals (same); *Letter from Mike DeWine, Ohio Governor, to Donald J. Trump, President of the United States and Mike Pence, Vice President of the United States* (Mar. 13, 2020), https://ohiohospitals.org/OHA/media/OHA-Media/Documents/News%20and%20Publications/Newsletters/20200313-Letter-to-President-Trump.pdf (Governor DeWine describes request to federal government for additional PPE and notes that "medical experts have advised that Ohio take immediate and aggressive steps to limit person-to-person contact to avoid community spread"); *Letter from Mark Hurst, Medical Director, Ohio Department of Health, and Amy Andres, Senior Vice President of Quality and Data, Ohio Hospital Association to all healthcare facilities in the state of Ohio* (Mar. 12, 2020), https://ohiohospitals.org/OHA/media/OHA-Media/Documents/Patient%20Safety%20and%20Quality/COVID19/ODH-OHA-Conservation-of-PPE-Letter_unsigned.pdf (providing guidance to facilities for the preservation of PPE). The Court may take judicial notice of public records, including "government documents available from reliable sources on the Internet." *Total Benefits Planning Agency Inc. v. Anthem Blue Cross & Blue Shield*, 630 F. Supp. 2d 842, 849 (S.D. Ohio 2007).

As soon as the shift to distance learning was announced, Xavier's faculty worked quickly and assiduously to fully transition the in-person portions of the curriculum to an online format. Xavier was able to provide a quality education to its students for the final three months of the semester that were administered remotely, as evidenced, in part, by the fact that the nursing students in their final term of the program were still able to graduate as planned, obtain nursing licenses, and enter the workforce.

## LEGAL STANDARD

A complaint must be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Tedder, Tr. of Roudebush Childrens Tr. v. Kotar*, No. 1:18-cv-48, 2019 WL 315097, at *2 (S.D. Ohio Jan. 24, 2019). The purpose of a Rule 12(b)(6) motion "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). A mere "formulaic recitation of the elements," however, is insufficient to survive a motion to dismiss under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the plaintiff must plausibly plead facts to establish beyond a mere possibility that she is entitled to relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1957-58 (2009); *see also Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) ("[T]o survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level' and to 'state a claim to relief that is plausible on its face.'" (quoting *Twombly*, 550 U.S. at 555, 570)).

## LAW AND ARGUMENT

## I.     Ms. Miranda cannot plausibly plead a breach of contract case against Xavier.

"Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to

the plaintiff as a result of the breach." *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012).

"Ohio treats the relationship between a university and its students as 'contractual in nature.'" *Al–Dabagh v. Case W. Reserve Univ.*, 777 F.3d 355 (6th Cir. 2015) (quoting *Behrend v. State*, 379 N.E.2d 617, 620 (Ohio Ct. App. 1977)). "The terms of such contract are found in the college catalog and handbook supplied to students."[6] *Buescher v. Baldwin Wallace Univ.*, 86 F. Supp. 3d 789, 797-98 (N.D. Ohio 2015) (quoting *Jefferson v. Univ. of Toledo*, No. 12AP-236, 2012 WL 4883203 (Ohio Ct. App. Oct. 16, 2012) (internal quotation marks omitted)). As noted, Xavier publishes a comprehensive student Handbook (Ex. A) that establishes and delineates the relationship between the student and the school. (*See id.*)

"Notwithstanding the existence of a contract, Courts are generally hesitant to intervene in the affairs of academic institutions." *Suhail v. Univ. of the Cumberlands*, 107 F. Supp. 3d 748, 755 (E.D. Ky. 2015). Indeed, the Sixth Circuit warns that judicial intervention in the academic context "should be undertaken only with the greatest reluctance." *Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 576 (6th Cir. 1988). This is true even in matters of "contractual theories under state law." *Id.* The Sixth Circuit holds that "[t]he federal judiciary is ill equipped to evaluate the proper emphasis and content of a school's curriculum," especially "when the

---

[6] Ms. Miranda relies mostly on statements advertising the program on the Xavier website. These statements are not part of the contract between Ms. Miranda and Xavier. (In her original Complaint, she conceded that they were "marketing material," (Doc. 1 ¶ 27), though she now characterizes them as "online representations," (Am. Compl. ¶ 48). Under Ohio law, the terms of the "contract" between a student and her university are established based on school handbooks, bulletins, and guidelines (like Xavier's Handbook). *See, e.g.*, *Doe v. Univ. of Dayton*, 766 F. App'x 275, 284 (6th Cir. 2019) (the student handbook lays out the contract terms with the school); *Doe v. Coll. of Wooster*, 243 F. Supp. 3d 875, 888 (N.D. Ohio 2017) ("The terms for such a contract are usually found in the college catalogue and handbook supplied to students."); *Leiby v. Univ. of Akron*, No. 05AP-1281, 2006 WL 1530152 (Ohio Ct. App. June 6, 2006) (same). Thus, the marketing statements made on the Xavier website are irrelevant to the breach of contract claim. *See, e.g.*, *Krebs v. Charlotte Sch. of Law, LLC*, No. 3:17-CV-00190-GCM, 2017 WL 3880667, at *5 (W.D.N.C. Sept. 5, 2017) (courts "repeatedly reject[]" contract claims against schools based on website statements, which are "wholly ineffectual" to state breach of contract claims).

conferral of a degree places the school's imprimatur upon the student as qualified to pursue his chosen profession." *Id.*

Notwithstanding these admonitions, Ms. Miranda's Complaint forces this Court to undertake exactly such an inquiry by making claims that require an evaluation of the sufficiency of the remote learning curriculum.

> **A.    Ms. Miranda has failed to demonstrate that she is entitled to any refund of tuition based on breach of contract.**

> **1.    There is no breach of contract because Xavier's remote curriculum provided a substantively comparable, high-quality education.**

When it became clear that it would no longer be safe or permissible to hold classes in person, Xavier quickly converted its curriculum to be delivered remotely through live videoconferences. Indeed, the College of Nursing went to great lengths to ensure that students would continue to receive high quality instruction from the safety of their homes. Thus, there has been no breach because Ms. Miranda received the same substantive education and instruction, even though the mode of delivery was different. *See, e.g.*, *Stenger v. Ferris State Univ. & Bd. of Trs. of Ferris State Univ.*, 2020 Mich. Ct. Cl. LEXIS 5, *9 n.4 (Mich. Ct. Cl. Oct. 1, 2020) (holding that plaintiff could not establish that university had breached agreement with student by pivoting to online instruction following onset of COVID-19 because the school still provided instruction and credits toward her degree).

It is also worth noting that under Xavier's refund policy, students are not entitled to a refund of any tuition following the 35th calendar day of the semester. *See Tuition and Fees Policies*, Xavier University, https://www.xavier.edu/tuition-fees/policies/ (last accessed Oct. 30, 2020). Therefore, had Ms. Miranda voluntarily withdrawn from the ABSN program on March 15 (the day before the University switched to distance learning), she would not have been eligible for a refund of any tuition, even though she would no longer be receiving any instruction at all.

She cannot plausibly or credibly allege that she is entitled to complete the whole semester, and then demand on May 15 a refund for which she would have been ineligible on March 15, especially where she received instruction and course credits the whole time.

### 2. There is no breach of contract because Xavier was entitled to make such necessary changes to the curriculum.

Nevertheless, Ms. Miranda argues that this transition to remote learning breached a promise for "onsite, in-person education." (Am. Compl. ¶ 79.) The Handbook does not include those words, much less make a promise to provide "the educational services in the format agreed to by the parties," (*Id.* ¶ 82), indefinitely and under any circumstances.[7] *See, e.g.*, *Stenger*, 2020 Mich. Ct. Cl. LEXIS 5, *8–9 (rejecting breach of contract claim based on transition to remote learning because none of the school's supposed contract materials included a promise that the school would provide in-person education no matter the circumstance).

In contrast, and significantly, the Handbook unequivocally and expressly reserves Xavier's right to make changes to the curriculum. It states that the "[f]aculty reserves the right to change the curriculum if deemed necessary for the progressive development of the program." (Ex. A, at p. 54.) Thus, Xavier acted consistently with its contract when it transitioned the curriculum to remote learning in order to provide for the safety of its students, educators, and clinical partners, and there has been no breach. *See, e.g.*, *Doherty*, 862 F.2d at 570, 578 (concluding the plaintiff failed to prove a breach of contract claim arising from changes school made to curriculum because college had reserved the right to make such modifications); *Hammond v. Auburn Univ.*, 669 F. Supp. 1555, 1562 (M.D. Ala. 1987) (because bulletin

---

[7] To accept Plaintiff's argument that she was allegedly promised a specific format of instruction means that if Xavier were to deviate at all, even for one class period, from her perception of the promised "format," then the school would be subject to a claim for breach. For instance, if the instructor arranged for a remote guest lecture by a world-renowned speaker, that would be different than the "format" supposedly promised, thereby exposing Xavier to a lawsuit for making a unique and enriching educational experience available.

reserved the right to modify graduation requirements, plaintiff could not prevail on breach of contract action arising from changes to requirements); *see also Jamieson v. Vatterott Educ. Ctrs., Inc.*, 259 F.R.D. 520, 541 (D. Kan. 2009) (asserted failure to keep class in session during full 90-minute period was not actionable because bulletin reserved the right to make changes to class schedule).[8]

### 3. Ms. Miranda's breach of contract claim also fails because she cannot establish damages.

In addition to those insurmountable obstacles, Ms. Miranda's claim also fails because she cannot establish that any damages arose from the fact that the last few weeks of her term were completed at home. *Leiby v. University of Akron* illustrates the flaw in Ms. Miranda's claim. No. 05AP-1281, 2006 WL 1530152 (Ohio Ct. App. June 6, 2006). Mr. Leiby complained that the school had breached its contract with him by allowing professors to reuse exams and not preventing students from accessing prior versions of the tests. *Id.* at *1. He sought a refund of his tuition, claiming that his degrees were devalued because of the other students' access to the reused exams. *Id.* at *7. The court concluded that he had suffered no damages because he indisputably received his degrees from Akron, which he was able to use in his job search and to apply for positions in his chosen field. *Id.* In short, he had no damages because he presented no evidence that "his degrees are different from those to which he was contractually entitled." *Id.*

---

[8] Indeed, even where universities have eliminated entire colleges or programs, courts have found that such modifications do not amount to a breach where schools have reserved the right to make such changes. *See, e.g.*, *Gourdine v. Felician Coll.*, No. A-5248-04T3, 2006 WL 2346278, at *4-5 (N.J. Super. Ct. App. Div. Aug. 15, 2006) (no breach of contract arising from termination of plaintiff's program because college had reserved right to eliminate program in which plaintiffs were enrolled); *Beukas v. Bd. of Tr. of Fairleigh Dickinson Univ.*, 605 A.2d 776, 782-83 (N.J. Super. Ct. Law. Div. 1991) (decision to close dental college did not amount to a breach of contract as school's bulletin had expressly reserved the right to make this change), *aff'd*, 605 A.2d 708 (N.J. Super. Ct. App. Div. 1992). Xavier was allowed to change how it delivered Ms. Miranda's education under the terms of the contract between them; adapting the program to distance learning was not a breach.

The same is unquestionably true for Ms. Miranda. Whatever complaints she has about this semester, if she satisfactorily completes her remaining coursework, she will receive a nursing degree from Xavier. And that degree will be identical to the one that she would have received if there had been no pandemic and no distance learning. Therefore, she simply cannot show damages arising from the remote instruction thoughtfully designed and delivered by Xavier's skilled educators. *See, e.g.*, *Stenger*, 2020 Mich. Ct. Cl. LEXIS 5, *9 n.4 (observing that the plaintiff could not establish damages arising from the transition to remote instruction during COVID-19 pandemic because the school continued to provide instruction and the plaintiff received credits toward her degree).

Indeed, the Complaint is basically silent on the nature of her damages except to allege that she did not receive the "full value of the services paid for." (Am. Compl. ¶ 18.) But this argument is unsustainable because the service she paid for is an accelerated nursing education, and she is indisputably receiving that service. To the extent that she argues that the accelerated nursing education Xavier is providing is less valuable than the format in which she allegedly believed her instruction would be delivered,[9] she cannot prove this theory of damages except by requiring this Court to undertake a detailed examination comparing the different academic tradeoffs guiding the traditional and remote approaches, and it is widely recognized that "courts are an inappropriate forum to test the efficacy of educational programs and pedagogical methods." *Paladino v. Adelphi Univ.*, 454 N.Y.S.2d 868, 872 (N.Y. App. Div. 1982) (quoting *Donohue v. Copiague Union Free Sch. Dist.*, 407 N.Y.S.2d 874 (N.Y. App. Div. 1978)); *see also Swidryk v. Saint Michael's Med. Ctr.*, 493 A.2d 641, 642 (N.J. Super. Ct. Law Div. 1985)

---

[9] It is worth noting that Ms. Miranda's implication that online instruction is inherently less valuable is inconsistent with her decision to continue taking classes during the spring semester and to re-enroll for the summer and fall terms, all of which were or are being conducted remotely.

(noting that courts "have unalteringly eschewed" such requests to evaluate the day-to-day running of the school).

### 4. Had there been a breach, Ms. Miranda ratified it by continuing to take classes.

Ms. Miranda cannot complain about the adequacy of her instruction while simultaneously accepting the benefits of that instruction. Ratification of a contract may occur by acceptance and retention of the benefits, acquiescence in the contract, or failing to repudiate the contract within a reasonable time. *Campbell v. Hospitality Motor Inns, Inc.*, 493 N.E.2d 239, 241 (Ohio 1986) (ratification may be implied through conduct in the absence of an express ratification); *AFCO Credit Corp. v. Brandywine Ski Ctr., Inc.*, 610 N.E.2d 1032, 1035 (Ohio Ct. App. 1992) (ratification has been defined as the approval by act, word, or conduct of that which was improperly done); *Paterson v. Equity Tr. Co.*, No. 11CA009993, 2012 WL 690642, at *6 (Ohio Ct. App. Mar. 5, 2012). Failure to timely repudiate the alleged unauthorized action after gaining knowledge is tantamount to ratification. *See Master Consol. Corp. v. BancOhio Nat'l Bank*, No. 11778, 1990 WL 65666, at *11 (Ohio Ct. App. May 17, 1990), *aff'd sub nom. Master Consol. Corp. v. BancOhio Nat'l Bank*, 575 N.E.2d 817 (Ohio 1991).

In *NetJets, Inc. v. Binning*, a breach of contract action between an airline and former pilot, the pilot argued that certain duties, specifically baggage handling, fell outside of his employment agreement with the airline. No. 04AP-1257, 2005 WL 1806460, at *2 (Ohio Ct. App. Aug. 2, 2005). The Court found that while the pilot claimed to have been unaware of his baggage handling duties at the beginning of his employment, he ratified that portion of the agreement by accepting the baggage handling duties for over eight months. *Id*. at *3.

Here, Plaintiff admits that the transition to distance learning occurred in March 2020, but she made no objection at that time, and instead has continued with her studies remotely. Thus,

like the *NetJets* plaintiff, even if there had been a breach in the necessary switch from in-person instruction, Ms. Miranda ratified it by continuing with her classes in the new format. Ms. Miranda's ratification forecloses her breach of contract claim.

Relatedly, Ms. Miranda has not limited her demand to only those payments charged during the Spring 2020 semester. Nor does she limit her proposed class to only those students enrolled during the spring semester. But, Ms. Miranda and her peers who enrolled or re-enrolled after the spring have no basis to state a claim. Whatever shortcomings Ms. Miranda and the putative class members perceive in attending school remotely, those were fully apparent at the time that they committed to the summer and fall terms. Plaintiffs cannot argue that they were promised one thing and delivered something else because they knew what they would get when they paid for it.

### B. Ms. Miranda is not entitled to a refund of her non-refundable liability insurance based on breach of contract.

Ms. Miranda has demanded that Xavier return the $18 fee it charged to provide her professional liability insurance. (Am. Compl. ¶ 37; *see* Ex. A, at p. 37 (explaining that the University charges $18 per semester to contribute to the blanket liability insurance maintained by Xavier for its nursing students).) Critically, however, the Handbook expressly provides that this fee is non-refundable. (*See* Ex. A, at p. 45.) Thus, Ms. Miranda paid this fee prior to the start of the semester understanding that it would not be returned under any circumstances. While she may not have anticipated at the time that one of those circumstances might be a global pandemic, that does not change the fact that she agreed to the non-recoverability of this fee. *See O'Kentucky Rose B. Ltd. P'ship v. Burns*, 147 F. App'x 451, 456 n.1 (6th Cir. 2005) (recognizing that plaintiff was not entitled to return of non-refundable fee, even if defendant had breached the agreement); *Martin v. United Airlines, Inc.*, 727 F. App'x 459, 462-63 (10th Cir. 2018)

(observing that "[n]o one buying a nonrefundable ticket could have any illusions that he or she could miss the flight and get a full refund" and ruling that plaintiffs had no breach of contract claim for refund of airline ticket payments where contract specified that the payments were nonrefundable).

Moreover, the Handbook states that in exchange for this fee, Xavier will provide the student with liability insurance. (*See* Ex. A, at p. 37.) Ms. Miranda never alleges that Xavier did not provide such coverage. Nor does she dispute that she was, in fact, covered by this insurance during the clinical work she performed during the term in question. There can be no breach where Xavier performed and Ms. Miranda received the coverage for which she paid.

### C. Xavier never contracted to provide specific student activities and therefore there has been no breach of contract with respect to the Student Activity Fee.

Ms. Miranda asserts that she should be repaid her $115 Student Activity Fee because "there are currently no 'student activities.'" (Am. Compl. ¶ 63.) But the Handbook does not obligate Xavier to provide any particular quantity or type of activities. The Student Activity Fee is a mandatory fee that is due as a prerequisite to matriculation that each student must pay regardless of whether she intends to (or does) receive any benefit from it. Ms. Miranda therefore paid it without an expectation of receiving any specific benefit. For instance, Ms. Miranda could not ask for a refund if only one event was held all year, if all the events were held during a time when she had class, or if she did not take advantage of any of the benefits provided for by the Student Activity Fee. In short, she paid the Fee because it was a requirement for enrollment, not because she thought she was specifically contracting for in-person events. Furthermore, she had the opportunity to participate in in-person events during the first part of the semester and cannot claim she is owed anything else because there is no set amount or type of activities to which she is entitled.

15

While Xavier disagrees that the website is part of the contract (*see supra* note 6), to the extent that Plaintiff relies on representations made there, the only commitment the website makes concerning the Student Activity Fee is that it "will be used to fund all organizations under the [Student Government Association]." Ms. Miranda does not allege that this funding did not occur, so there likewise is no breach based on the language on the website. *See, e.g.*, *Chong v. Ne. Univ.*, No. CV 20-10844-RGS, 2020 WL 5847626, at *4 (D. Mass. Oct. 1, 2020) (ruling that student activity fee that was used to support various campus organizations and facilities, rather than gain access to campus facilities, was not refundable after campus closed in response to COVID-19 pandemic). Moreover, the website actually reveals that the Student Activity Fee covers a number of resources from which a student could still benefit remotely; for instance, over 100 student clubs and access to national newspaper subscriptions.

Finally, while there is quite plainly no contract to provide in-person activities and no breach, even if there were, there would be no way to quantify damages other than through engaging in unbounded speculation since there is no way to know all the in-person events that might have been offered, the relative value of those events, and whether a student would actually have attended given the opportunity (and therefore what purported loss was suffered by not being able to attend). Ms. Miranda's breach of contract claim fails as a matter of law.

## II.    Ms. Miranda fails to state a claim for unjust enrichment.

"In Ohio, claims for unjust enrichment cannot be brought where the subject matter of the claim[] is governed by a contract between the parties." *Borden*, 304 F. Supp. 3d at 692 (quoting *Davis & Tatera, Inc. v. Gray-Syracuse, Inc.*, 796 F. Supp. 1078, 1086 (S.D. Ohio 1992) (alteration in original) (internal quotation marks omitted)). There is unquestionably a contract between Xavier and Ms. Miranda, and her unjust enrichment claim is factually indistinguishable from her breach of contract claim. (*Compare* Am. Compl. ¶ 82 (alleging breach of contract claim

based on Xavier's supposed failure to provide in-person instruction), *with* ¶¶ 86-87, 89 (alleging unjust enrichment claim based on retention of tuition without provision of in-person classes).) Therefore, under Ohio law, Ms. Miranda's breach of contract claim forecloses the duplicative unjust enrichment claim.

Furthermore, to succeed on her unjust enrichment claim, Ms. Miranda must establish that it would be unconscionable for Xavier to retain the benefit conferred. *Lotfi-Fard v. First Fed. of Lakewood*, No. 87207, 2006 WL 2036466, at *6 (Ohio Ct. App. July 20, 2006). She cannot show that it is unfair for Xavier to retain the tuition and fees when she does not dispute that in the face of a global pandemic and national disaster, the school continued to provide a quality education and the ability to earn uninterrupted credits towards her degree. *See, e.g.*, *Somasundaram v. Kent State Univ.*, No. 13AP-785, 2014 WL 1347201, at *4 (Ohio Ct. App. Mar. 18, 2014) (no unjust enrichment where the school performed the job it was paid to do); *Krebs v. Charlotte Sch. of Law, LLC*, No. 3:17-CV-00190-GCM, 2017 WL 3880667 at *6 (W.D.N.C. Sept. 5, 2017) ("Payment of tuition and fees cannot be unjust if the students received the benefit for which they paid."); *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 927 (E.D. Pa. 2016) (dismissing quasi-contractual remedy because "Plaintiff fails to allege how it would be unconscionable for the University to retain the tuition paid for classes that she attended"); *Bradshaw v. Pa. State Univ.*, No. 10-4839, 2011 WL 1288681, at *2 (E.D. Pa. Apr. 5, 2011) (dismissing unjust enrichment claim because there were no allegations that "defendant failed to hold the classes for which she paid her tuition or that she was prevented from attending such classes"). This is especially true here, where the Handbook specifically alerted her to the possibility that the school could make changes to the curriculum.

Moreover, at no point does Ms. Miranda allege that Xavier has saved any money (or even profited) by moving the coursework online, and she does not dispute that the transition to remote learning was undertaken out of a public health necessity, not because of any effort by Xavier to improperly enrich itself. Nor does she suggest that Xavier collected the tuition and fee payments for any purpose other than the benefit of the students. *See, e.g.*, *Moss v. Wayne State Univ.*, No. 286034, 2009 WL 4344193, at *2 (Mich. Ct. App. Dec. 1, 2009) (holding that when "plaintiff and other students gained a general benefit from the university's expenditures, which included spending in areas that would directly benefit students," an unjust enrichment claim does not lie). Therefore, she has not sufficiently pled that Xavier has been unjustly enriched.

## III.     Ms. Miranda's promissory estoppel claim fails.

Ms. Miranda's promissory estoppel claim is also unsustainable because "Ohio law bars a promissory estoppel claim when there is an express contract between the parties." *Doe v. Coll. of Wooster*, 243 F. Supp. 3d 875, 895 (N.D. Ohio 2017) (quoting *Loadman Grp., L.L.C. v. Banco Popular N. Am.*, No. 4:10cv1759, 2013 WL 1150125, at *9 (N.D. Ohio Mar. 19, 2013) (internal quotation marks omitted)). Again, there is no dispute that a contract exists between the parties, and therefore Ms. Miranda's promissory estoppel claim should be dismissed. *See id.* (dismissing promissory estoppel claim where contract existed between the parties and the promissory estoppel claim was "premised on the same allegations that support plaintiff's breach of contract claim"); *see also Doe v. Univ. of Dayton*, 766 F. App'x 275, 289 (6th Cir. 2019) (affirming dismissal of alternatively-pled promissory estoppel claim because breach of contract was the proper claim to analyze violations of the school handbook).

Separately, one of the hallmarks of a promissory estoppel claim is *reasonable* reliance. *See, e.g.*, *Doe v. Adkins*, 674 N.E.2d 731, 737 (Ohio Ct. App. 1996) (noting that promissory estoppel requires reasonable and foreseeable reliance by the plaintiff). As noted above, Xavier

never made specific promises to provide in-person education or student activities. But even if it had, and even assuming Ms. Miranda relied on them, it would have been unreasonable for her to rely on these representations to the extent that she thought they would be satisfied under all possible conditions. In other words, it would have been unreasonable for her to assume that all aspects of the curriculum would be provided in exactly the same format during a global pandemic and a nationwide shutdown. Especially where the Handbook specifically reserved the right to make changes to the curriculum.

Finally, Ms. Miranda cannot establish the injury element because she has been able to continue to receive instruction and earn credits toward her degree.

## IV.    Ms. Miranda cannot recover under the Ohio Consumer Sales Practices Act.

With no viable contractual theories, Ms. Miranda's Amended Complaint adds an OCSPA claim. Ms. Miranda alleges that Xavier violated the OCSPA by misleading her to believe that she would receive hands-on instruction on a Xavier-developed curriculum from Xavier faculty and that she would be able to sit for licensure in all fifty states following graduation, when that has supposedly not been her experience.

This claim fails for several reasons. First, moving to remote learning due to a pandemic is not a deceptive or unconscionable act. Second, Xavier's education of its nursing students is not a "consumer transaction" subject to the OCSPA. Third, Ms. Miranda cannot establish that Xavier had notice that its conduct violated the OCSPA, as is required to maintain a class action under the Act. And finally, at its core, this claim is just another way Ms. Miranda has tried to argue what is nothing but an impermissible educational malpractice claim.

**A.      Moving to remote learning in response to a pandemic is not a deceptive or unconscionable act.**

To the extent that Ms. Miranda is pleading that the transition to remote learning due to a pandemic is a violation of the OCSPA, she is wrong. It is not deceptive or unconscionable to take steps to preserve human life or to follow government directives. No case or statute supports such a claim.

**B.      The OCSPA does not apply to Xavier's nursing program.**

The OCSPA applies only to consumer transactions, which are defined as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are *primarily personal, family, or household*, or solicitation to supply any of these things." Ohio Rev. Code § 1345.01(A) (emphasis added). A transaction entered into for business purposes is not considered a consumer transaction under the OCSPA. *Flex Homes, Inc. v. Ritz-Craft Corp. of Mich., Inc.*, 491 F. App'x 628, 635 (6th Cir. 2012); 17 Ohio Jur. 3d Consumer and Borrower Protection § 10 ("The OCSPA is inapplicable to a suit alleging OCSPA violations, where the sale or transfer involved is not for purposes which are 'primarily personal, family, or household.'"); *Yo-Can, Inc. v. The Yogurt Exchange, Inc.*, 778 N.E.2d 80, 85 (Ohio Ct. App. 2002) ("Most specifically, the CSPA is inapplicable because the transaction herein does not have the required characteristic of being primarily for purposes that are personal, family, or household.").

Enrolling at Xavier to obtain a nursing education for business purposes falls outside of the OCSPA. *See, e.g.*, *MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 660 (6th Cir. 2013) (law school students purchased legal education from private school for business purpose). In *MacDonald*, the Court found that the students enrolled in law school "to prospectively better themselves and their personal circumstances through the attainment of full-

time employment in the legal sector" *not* for "personal purposes" or "so that they could leisurely read and understand Supreme Court Reports." *Id.* at 661. The *MacDonald* Court stated clearly that "if a consumer—whether a business or a natural person—buys a good, property, or service for a business purpose—that is, not 'primarily for [a] personal, family, or household purpose[]'—then the [Consumer Protection Act] does not apply." *Id.* at 660-61; *Slobin v. Henry Ford Health Care*, 666 N.W.2d 632, 634 (Mich. 2003). Ms. Miranda enrolled at Xavier specifically to train for employment as a nurse. (Am. Compl. ¶ 26 ("Following graduation, Plaintiff would like to work as an emergency room nurse….").) Ms. Miranda maintains that Xavier's current curriculum will impact her professional prospects. (*Id.* ¶ 65 (complaining that changes to the University curriculum made students "less competitive in the market for professional employment").) Since Ms. Miranda and the class's purchase of a nursing education was for business purposes—to improve their professional opportunities—not for a primarily personal, family or household purpose, it does not fall within the ambit of the OCSPA, and this claim fails.[10]

C.  **Ms. Miranda's class claim fails because Xavier did not have the requisite notice that its conduct allegedly violated the OCSPA.**

In order to maintain a class action claim under the Act, a plaintiff must first prove that the defendant had notice that the conduct at issue violates the OCSPA. *See Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 680 (6th Cir. 2017). The plaintiff must show that either the Ohio Attorney General had previously declared the challenged practice as "deceptive or unconscionable" or that an Ohio court has "determined" that the specific practice violates the OCSPA. *Id.*; Ohio Rev.

---

[10] Xavier recognizes that some Ohio courts have allowed students to bring OCSPA claims against their schools. However, Xavier believes these cases are distinguishable and/or wrongly decided. In particular, no Ohio decision has analyzed the specific argument that Xavier makes here: that the OCSPA does not apply because Ms. Miranda enrolled in the ABSN program for professional—not personal, family, or household—purposes, taking the claim outside the scope of the OCSPA.

Code § 1345.09(B); *Amato v. Gen. Motors Corp.*, 463 N.E.2d 625, 632 (Ohio 1982) (recognizing

that a consumer class action is viable only when the alleged act or practice was declared to be

deceptive or unconscionable prior to the transaction on which the claim is based); *Pattie v.

Coach, Inc.*, 29 F. Supp. 3d 1051, 1055 (N.D. Ohio 2014); *Volbers-Klarich v. Middletown Mgt.,

Inc.*, 929 N.E.2d 434, 441 (Ohio 2010). Where, as here, the "notice" is based on court decisions,

the prior decision has to have been a "final determination" on facts that are substantially similar

to the allegations at issue. *See, e.g.*, *Gerboc*, 867 F.3d at 680. Lack of prior notice requires

dismissal of an OCSPA class action claim. *Bower v. Int'l Bus. Machines, Inc.*, 495 F. Supp. 2d

837, 841 (S.D. Ohio 2007) ("The Plaintiffs have failed to identify in their complaint a rule

or judgment that would place the Defendant on notice that the conduct alleged by the Plaintiffs

violated the [O]CSPA; consequently pursuit of this claim as a class action is improper.").

### 1. None of the cases cited by Ms. Miranda was a final determination.

To provide sufficient notice under Section 1345.09(B), the Ohio state court case finding

the specific practice at issue unconscionable or deceptive must be a "final determination" of the

issue by that court.[11] *See Gascho v. Global Fitness Holdings, LLC*, 918 F. Supp. 2d 708, 715

(S.D. Ohio 2013); *Savett v. Whirlpool Corp.*, No. 12 CV 310, 2012 WL 3780451, at *4 (N.D.

Ohio Aug. 31, 2012).

The Amended Complaint identifies four cases involving disputes between students and

educational institutions that she claims provide Xavier notice. However, none of the courts in

those cases made a final determination. Each case was dismissed prior to trial and presumably

resolved outside of court.[12] Thus, at no point in any of those cases did a court consider the

---

[11] The fact that a particular decision is available on the Attorney General's website does not make it a "final determination." *See Gascho*, 918 F. Supp. 2d at 715.

[12] *See Krueck*, 131 N.E.3d 1030 (voluntarily dismissed with prejudice prior to trial); *Ajibola*, 122 N.E.3d 660 (dismissed by joint stipulation prior to trial); *Hacker*, 927 N.E.2d 38 (dismissed prior to trial); *Malone*, 588 N.E.2d 54 (jointly dismissed prior to trial).

alleged conduct and make a "final determination" that it violated the OCSPA. Therefore, none of those cases is sufficient to put Xavier on notice that it might be violating the Act.

> **2.      Ms. Miranda identifies only inapposite cases that do not constitute sufficient prior notice under Ohio Rev. Code § 1345.09(B).**

Setting aside the absence of a final determination, the cases cited are not substantially similar to this case. "To constitute sufficient notice, the defendant's alleged violation must be substantially similar to an act or practice previously declared to be deceptive." *See Marrone v. Philip Morris USA, Inc.*, 850 N.E.2d 31, 33 (Ohio 2006). "'Substantial similarity' means a similarity not in every detail, but in essential circumstances or conditions." *Id.* at 36. "Cases that involve industries and conduct very different from the defendant's do not provide meaningful notice of specific acts or practices that violate the CSPA." *Id.* The severity of the conduct is also relevant to whether a prior decision may provide notice. *See, e.g.*, *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (distinguishing prior decisions relied on by the plaintiff to show notice because they involved behavior far more egregious than that committed by the defendant). In *Pattie v. Coach, Inc.*, the Court dismissed the class OCSPA claim because the plaintiff cited to cases involving out-of-store advertisements, while the plaintiff's concerned the distribution of in-store coupons. 29 F. Supp. 3d at 1057.

Ms. Miranda lists thirteen cases and four rules that she claims satisfy the notice requirement. Only four of her cases involve higher education, and each of them is very different from this case.

In *Krueck v. Youngstown State University*, 131 N.E.3d 1030 (Ohio Ct. App. 2018), a public university was alleged to have misrepresented that the school's graduation requirements were in line with the nursing home administrator regulatory body, the Ohio Board of Executives of Long-Term Services and Supports (BELTSS). After graduation, students could apply to

BELTSS for approval to sit for state and national licensing exams without additional coursework or internships. The plaintiff was ultimately rejected by BELTSS for failing to fulfill the program requirements and was unable to sit for *any* state or national licensing exams. *Id.* at 1031. Ms. Miranda's complaint does not allege that Xavier ABSN graduates are unable to sit for the national nursing exam. Further, unlike the case at hand, the misrepresentation in *Krueck* foreclosed the student from practicing in her preferred field, while Ms. Miranda concedes that, at minimum, she and her fellow graduates can practice nursing in more than 20 states. (Am. Compl. ¶ 10.)

In *Ajibola v. Ohio Medical Career College, Ltd.*, 122 N.E.3d 660 (Ohio Ct. App. 2018), a for-profit college owned and operated by a married couple allegedly failed to disclose its "conditional" accreditation status with the Ohio Department of Nursing, and misrepresented that the program would include clinical experience in a hospital setting and culminate with the award of an associate degree in nursing. The plaintiff alleged that the school did not accurately convey that students would have to pass a standardized exam to be licensed as a nurse. *Id.* at 664. Ms. Miranda makes no allegation that Xavier has failed to accurately communicate the ABSN graduation requirements or indicate that she or any member of the putative class is at risk of not graduating from the ABSN program. Further, unlike the case at hand, there was no indication that the *Ajibola* defendant was prevented from offering clinical placement opportunities due to a global health pandemic; rather, the allegation is simply that the school orally promised to provide something it knew it could not. In contrast, Xavier is still providing Ms. Miranda reformulated clinical instruction, and Ms. Miranda does not allege that, absent the global health pandemic, Xavier would not have afforded students traditional clinical opportunities.

Similarly, in *Hacker v. National College of Business & Technology*, 927 N.E.2d 38 (Ohio Ct. App. 2010), a for-profit college was alleged to have made false representations to students that mandatory externship programs would be available during the students' final term of study. The students were not promptly placed into externships, which delayed their ability to timely complete the program. *Id.* at 40. The court specifically noted that the college never conducted a "specific assessment … to estimate whether enough externship sites would be available to incoming students" prior to making the representation. *Id.* at 43. The school's deliberate indifference to whether it could provide the externships it promised is different from Xavier's necessary reformulation of its curriculum in response to a global health crisis. Further, Ms. Miranda concedes that she remains on track to timely complete her ABSN degree by May 2021, and makes no allegation that others in the class are prevented from timely completing their studies due to the curriculum changes. (Am. Compl. ¶ 25.)

And finally, in *Malone v. Academy of Court Reporting*, 582 N.E.2d 54 (Ohio Ct. App. 1990), a for-profit paralegal program was alleged to have misrepresented its unaccredited status and student job placement potential. The plaintiffs, like many other students, were unable to find employment after enrolling in the program despite the school's representation that it offered job placement assistance and a high likelihood of professional success within the field. *Id.* at 560. Ms. Miranda does not allege that the Xavier program is unaccredited or that she will be unable to find employment upon graduation. In fact, Ms. Miranda makes no mention of job placement assistance programs and concedes that she and her fellow graduates can practice in more than 20 states. (Am. Compl. ¶ 10.)

These cases, which involved students not graduating from programs or being entirely unable to enter the professional field for which they studied, are different in both nature and degree from the allegations Ms. Miranda levies here:

- That Xavier modified is curriculum to account for a global health crisis;

- That some of Xavier's instructors are also practitioners, rather than exclusively full-time faculty members;

- That aspects of its curriculum are supposedly designed by a third-party, rather than Xavier, though she never alleges that this arrangement results in an inferior program; and

- That she perceived statements Xavier made about where she could practice as reflective of where she could sit for a licensing exam, though she is indisputably still eligible to take the test in many markets.

The remaining cases are from unrelated industries: *State ex rel. Fisher v. Warren Star Theatre*, 616 N.E.2d 1192 (Ohio Ct. App. 1992) concerned a nonprofit theatre that cancelled performances. *Daniels v. True*, 547 N.E.2d 425 (Ohio Mun. Ct. 1988) involved a contractor who was utilizing a false name and address on contracts. *Layne v. McGowen*, No. 14676, 1995 WL 316233 (Ohio Ct. App. May 24, 1995) involved a contractor hired to build a detached garage. *Brown v. Spears*, No. 8897, 1979 WL 52451 (Ohio Mun. Ct. Aug. 20, 1979), and *Teeters Constr. v. Dort*, 869 N.E.2d 765 (Ohio Mun. Ct. 2006) involved contractors and warranties related to the contractor's services. *State ex rel. Celebrezze v. Venture Out Resorts, Inc.*, No. 43-14146, 1998 WL 877630 (Ohio C.P. Feb. 24, 1998) concerned camping resort membership contract terms. *State ex rel. Fisher v. Renters' Assistance Foundation, Inc.*, No.92AP-1590, 1993 WL 360277 (Ohio Ct. App. Sept. 14, 1993) involved real estate contracts. *State ex rel. Celebrezze v. Ferraro*, 578 N.E.2d 492 (Ohio Ct. App. 1989) centered around a pest control company employing misleading warranty language when no such warranty existed. And finally, in *State ex rel. Celebrezze v. Chimento*, 80 CV 1520, 1984 WL 264715 (Ohio C.P. Sept. 21, 1984) a travel tour

operator was accused of violating the OCSPA by cancelling purchased flights and employing unconscionable contract terms.

These cases Ms. Miranda cites are nothing like her case and therefore they could not have provided sufficient notice to Xavier as required under the OCSPA.

### 3. The rules relied upon by Ms. Miranda are too generic to constitute sufficient prior notice under Ohio Rev. Code § 1345.09(B).

The general rules Ms. Miranda cites fare no better in terms of the notice requirement. A general rule is not sufficient to put a reasonable person on notice of the prohibition of a specific act or practice because it would allow "*any* previous determination of a deceptive act or practice to qualify as prior notice for any subsequent alleged deceptive act or practice." *Marrone*, 850 N.E.2d at 36. In *Marrone v. Philip Morris USA, Inc.*, plaintiffs attempted to establish notice by relying upon the same code to which Ms. Miranda cites (Ohio Admin. Code § 109:4-3) to establish notice. *Id.* The Ohio Supreme Court held this rule was insufficient to provide prior notice because it was a "generic prohibition that d[id] not refer to *any specific act or practice*." *Id.* at 36 (emphasis added). Therefore, the Court found the plaintiffs "failed to identify any prior rule or court decision that would have put [the defendant] on notice that its conduct violated the CSPA." *Id.* at 36-37; *see also Nicols v. R.J. Reynolds Tobacco Co.*, No. CV 99-11-4539 (Ohio C.P. Aug. 9, 2000) (rejecting Ohio Admin. Code § 109:4-3-02 and § 109:4-3-10 as providing sufficient notice under Ohio Rev. Code § 1345.09(B) because neither code sets forth specific acts or conduct).

Ms. Miranda's citation to various sections in Ohio Admin. Code § 109:4-3 is unavailing as well. Ohio Admin. Code § 109:4-3 does not apply to a specific industry, act, or conduct, let alone specifically address higher education institutions, curriculum changes, or grounds for tuition refunds. Ohio courts have found that rules with significantly more specificity fail to

27

constitute notice. For example, in *Gerboc*, a plaintiff sued an online retailer for misrepresenting pricing discounts on items. 867 F.3d at 677. In an attempt to meet the notice requirement, the plaintiff cited to a general Ohio law prohibiting certain behavior by a supplier outside of its interior premises. *Id.* at 680. The court found that the plaintiff failed to present a case where the Ohio court applied the rule to online retailers like the defendant and dismissed the claim. *Id.* Similarly, Ms. Miranda fails to establish that Ohio Admin. Code §109:4-3 has been applied to the specific conduct alleged against Xavier.

Thus, Ms. Miranda has failed to show that Xavier was on notice that its specific alleged conduct has been found to violate the OCSPA by either the Ohio Attorney General or an Ohio court. Therefore, Ms. Miranda has failed to state a claim upon which relief can be granted and the OCSPA class action claim cannot stand.

**V.    Ms. Miranda's claims are really just educational malpractice claims.**

As this Court has held, Ohio does not recognize educational malpractice claims concerning the adequacy of educational services provided by a school. *Borden v. Antonelli Coll.*, 304 F. Supp. 3d 678, 688 (S.D. Ohio 2018).[13] *See also Atria v. Vanderbilt Univ.*, 142 F. App'x 246, 251 (6th Cir. 2005) (recognizing that "the overwhelming majority of courts" have held educational malpractice claims "to be not cognizable"); *Rockwood v. Shoen*, 145 F. Supp. 3d 718, 724 (S.D. Ohio 2015) (claim alleging "substandard educational services" was an unsustainable educational malpractice claim); *Lawrence v. Lorain Cty. Cmty. Coll.*, 713 N.E.2d 478, 480 (Ohio Ct. App. 1998) (dismissing breach of contract claim alleging that educational services were substandard because it was actually just a non-actionable claim for educational

---

[13] Courts have many sound reasons for staying out of academic matters, including: the absence of a satisfactory standard of care by which to evaluate an educator, inherent uncertainties about the cause and nature of damages, the fact that hearing such claims would open the floodgates against academic institutions, and finally the threat that doing so would "embroil the courts into overseeing the day-to-day operations of schools." *Ross v. Creighton Univ.*, 957 F.2d 410, 414-15 (7th Cir. 1992).

malpractice); *Poe v. Hamilton*, 565 N.E.2d 887, 889 (Ohio Ct. App. 1990) (collecting cases rejecting educational malpractice claims). That is true regardless of the label the plaintiff places on such a claim. *See Rockwood*, 145 F. Supp. 3d at 724.

### A. Ms. Miranda's breach of contract claim is just an educational malpractice claim in disguise.

To escape this law, Ms. Miranda tries to manufacture a breach of contract by contending that she was promised an education in a certain "format," but that it was not delivered that way. (Am. Compl. ¶ 17.) That contention mischaracterizes the academic relationship between the University and its students. While Xavier may have described the typical components of its ABSN program, what it promised to deliver was an accelerated nursing education, not a particular format. The fundamental agreement between Ms. Miranda and Xavier was that she would pay tuition and fees in exchange for instruction and credits and, if successful, a degree. *See, e.g.*, *Horrigan v. E. Mich. Univ.*, No. 20-000075-MK, 2020 WL 6050534, at *4 (Mich. Ct. Cl. Sept. 24, 2020) (where there was no explicit promise for in-person education, obligation to pay tuition was not predicated on the receipt of any particular method of instruction). There is no dispute that Xavier has upheld its end of the bargain. While Ms. Miranda may believe that the education she received was inadequate because it was not provided in-person, it is not for the courts to evaluate the pedagogical format in which the school elects to deliver the promised education.

The claims here are similar to those in *Baker v. Oregon City Schools*, No. G-4801-CI-200908917-000, 2011 WL 13383584 (Ohio C.P. Apr. 13, 2011). There, the plaintiffs asserted a breach of contract claim, alleging that a program offered by the defendant did not live up to its promises because of the lack of instruction on promised curriculum, the lack of hands-on training, the lack of promised job shadowing, and the poor facilities. *See Baker v. Oregon City*

29

*Sch. Bd. of Educ.*, No. L-11-1109, 2012 WL 762482, at *1 (Ohio Ct. App. Mar. 9, 2012). The court rejected the breach of contract claim, observing that there was no claim that the promised instruction was not provided, just that the format in which it was delivered was purportedly inadequate, and therefore, "at best," the plaintiffs' breach of contract claim was really just an educational malpractice claim. 2011 WL 13383584, at *6. The court explained:

> Plaintiffs identify no material breach of any term of the purported contract. Instead, all Plaintiffs' claims relate to the perceived inadequacy of the educational experience. For example, Plaintiffs allege the change of class location as a breach, but don't allege the classes were never scheduled, or that Plaintiffs were denied a seat in class. Additionally, Plaintiffs allege that the "purpose of the parties' contract was to provide instruction to Plaintiffs." Plaintiffs provide no evidence, however, that there was no instruction, pointing only to perceived deficiencies in instruction.

*Id.*

Similarly, Ms. Miranda does not claim that Xavier stopped teaching once the pandemic struck. On the contrary, she recognizes that Xavier completely reformatted its traditional, in-person curriculum so that students could continue to learn from home without jeopardizing their health or the safety of others in the community. Rather, her claim, at bottom, is just that the remote curriculum is inferior to the traditional model. But, like in *Baker*, that argument is an impermissible claim for educational malpractice. *See also Jamieson*, 259 F.R.D. at 541 (while school's failure to provide any instructors *at all* might constitute breach of contract, a claim that school provided substitute teachers that were inadequate was an educational malpractice claim and therefore not actionable); *Papaspiridakos v. Educ. Affiliates, Inc.*, No. 10 CV 5628(RJD)(JO), 2013 WL 4899136, at *4 (E.D.N.Y. Sept. 11, 2013) (allegation that defendant failed to provide adequate classroom facilities and lab instruction delivered in equipped laboratories based on the fact that there were only four microscopes per class and one skeleton

was an educational malpractice claim because it would "entail[] an evaluation of the adequacy and quality of the laboratory facility itself," which the court was "ill-equipped to carry out").

> **B.** **Ms. Miranda's OCSPA claim is an educational malpractice claim.**

Like her breach of contract claim, Ms. Miranda's OCSPA claim is actually an impermissible educational malpractice claim. For instance, she complains that her classes were supposedly taught by practitioners, rather than Xavier faculty, who were "not trained in pedagogy." (Am. Compl. ¶ 5.) Setting aside the fact that many schools and students value instruction from those practicing in the field, what she is basically challenging is the quality of the instructors and the University's hiring practices. Obviously, neither of these is a subject on which a court should weigh in. *See, e.g.*, *Lemmon v. Univ. of Cincinnati*, 112 Ohio Misc. 2d 23, 29, 750 N.E.2d 668, 672 (Ct. Cl. 2001) (claims about the manner in which the professor instructed the course were educational malpractice claims); *see also Houston v. Mile High Adventist Acad.*, 846 F. Supp. 1449, 1455–56 (D. Colo. 1994) (claims that teachers were "not properly trained," and that "school failed to provide adequate instruction" were construed as educational malpractice claims and properly dismissed); *Waugh v. Morgan Stanley & Co.*, 966 N.E.2d 540, 550 (Ill. Ct. App. 2012) (allegations of ineffective training against flight school "clearly" sounded in educational malpractice); *Andre v. Pace Univ.*, 655 N.Y.S.2d 777, 779–80 (App. Div. 1996) (concluding that deceptive business practices claim challenging professor's pedagogical approach was really just a claim for educational malpractice).

Her complaint that she received an "unoriginal cookie cutter" curriculum not prepared by Xavier, (Am. Compl. ¶¶ 13, 29), is similarly defective (and also false). The whole purpose of foreclosing claims for educational malpractice is that a school should not be forced to litigate its selection of curriculum. *See, e.g.*, *Doherty*, 862 F.2d at 576 ("The federal judiciary is ill equipped to evaluate the proper emphasis and content of a school's curriculum."); *Moore v. Vanderloo*,

31

386 N.W.2d 108, 115 (Iowa 1986) (observing that courts should not pass judgment on school curricula).

<div align="center">*　　　*　　　*</div>

Ms. Miranda is careful not to explicitly state that the education Xavier provided was inadequate. By doing so, she paints herself into a corner. Even accepting her contention that she was promised one thing and provided something else, if the latter is just as good as the former, then she has not been harmed. But, if she tries to argue that what she was provided was inferior, then her claim likewise fails because Ohio state and federal courts will not entertain educational malpractice claims that challenge the adequacy of the school's education.

<div align="center">

**CONCLUSION**

</div>

For the foregoing reasons, Xavier asks the Court to dismiss the Amended Complaint with prejudice.

> Respectfully submitted,
>
> */s/ Aaron M. Herzig*
> Aaron M. Herzig (0079371)
>    Trial Attorney
> Russell S. Sayre (0047125)
> Medora M. Akers (096419)
> Courtney Lynch (0098210)
> Taft Stettinius & Hollister LLP
> 425 Walnut Street, Suite 1800
> Cincinnati, Ohio  45202-3957
> Phone: (513) 381-2838
> Fax: (513) 381-0205
> aherzig@taftlaw.com
> sayre@taftlaw.com
> makers@taftlaw.com
> clynch@taftlaw.com
> *Attorneys for Defendant Xavier University*

<div align="center">32</div>

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed on October 30, 2020, using the Court's ECF system, which will serve the filing on all counsel of record.

*/s/ Aaron M. Herzig*