**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **XIMENA MIRANDA** | **Case No. 1:20-cv-00539** |
| *On behalf of herself and those similarly situated*; | |
| **Plaintiff,** | **Judge Timothy S. Black** |
| vs. | **Magistrate Judge Stephanie K. Bowman** |
| **XAVIER UNIVERSITY** | |
| **Defendant.** | |

## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS AND SUMMARY OF ARGUMENT</u>

TABLE OF AUTHORITIES .......................................................................... viii

I.   INTRODUCTION .............................................................................. 1

II.  FACTS AND BACKGROUND ............................................................ 2

III. STANDARD OF REVIEW .................................................................. 3

IV.  LAW AND ARGUMENT .................................................................... 3

Across the nation, courts (including those in Ohio) addressing Covid-19 tuition and student fee cases have widely rejected the same breach of contract, unjust enrichment, and educational malpractice arguments Xavier makes here.

*Cross v. Univ. of Toledo*, Ct. of Cl. No. 2020-00274JD, 2020 WL 4726814 (July 8, 2020); *Smith v. The Ohio State Univ.*, Ct. of Cl. No. 2020-0321JD, 2020 WL 5694224 (Sept. 9, 2020); *McDermott v. The Ohio State Univ.*, Ct. of Cl. No. 2020-00286JD, 2020 WL 5239892 (Aug. 24, 2020); *Waitt v. Kent State Univ.*, Ct. of Cl. No. 2020-00392JD, 2020 WL 5894543 (Sept. 28, 2020); *Zahn v. Ohio Univ.*, Ct. of Cl. No. 2020-00371JD, 2020 WL 6163919 (Oct. 19, 2020)

A.   **Plaintiff Sufficiently Pled Xavier Breached its Contract with Plaintiff**. ......................... 4

Ohio recognizes contracts are formed between students and universities. Plaintiff has sufficiently pled allegations to show both express and implied contracts formed between her and Xavier University.

*Al–Dabagh v. Case W. Reserve Univ.*, 777 F.3d 355 (6th Cir. 2015); *Behrend v. State*, 379 N.E.2d 617 (Ohio Ct. App. 1977); *Zahn v. Ohio Univ.*, Ct. of Cl. No. 2020-00371JD, 2020 WL 6163919 (Oct. 19, 2020); *Kashmiri v. Regents of the Univ. of Calif.*, 156 Cal. App.4th 809, 67 Cal.Rptr.3d 635 (Cal. Ct. App. 2007); *Smith v. The Ohio State Univ.*, Ct. of Cl. No. 2020-0321JD, 2020 WL 5694224 (Sept. 9, 2020); *Waitt v. Kent State Univ.*, Ct. of Cl. No. 2020-00392JD, 2020 WL 5894543 (Sept. 28, 2020)

1.   **Xavier's argument admitting that it breached the contracts, but suggesting it offered a comparable substitute, is both inaccurate and premature.** ......................... 8

At this stage in the pleadings, courts do not consider alternative sets of facts or narratives presented by defendants. The facts as alleged in the Amended Complaint demonstrate that Xavier breached its contracts with Plaintiff

*Anderson v. One Three Five, Inc.*, No. 2:17-cv-1492, 2018 WL 3388408, (W.D. Pa. July 12, 2018); *Milanov v. Univ. of Mich.*, No. 20-000056. 2020 WL 7135331 (Mich. Ct. Cl. July 27, 2020)

**2. Xavier's argument regarding its authority to change its curriculum is unpersuasive.** ...........................................................................................10

Xavier does not have plenary authority to make sweeping cuts and significant changes to its curriculum.

**3. Plaintiff alleges Xavier's breach caused damages.** ......................................................12

Plaintiff sufficiently pled damages in her breach of contract claims against Xavier, including listing what she paid, what she bargained for, and what was not provided to her subject to the agreements.

**4. Plaintiff did not ratify a contract by attending on-line courses.** ................................13

Plaintiff's continued attendance in the ABSN program is not a ratification of any contract; rather, it is more akin to mitigation.

*AFCO Credit Corp. v. Brandywine Ski Ctr., Inc.*, 81 Ohio App. 3d 217, 221, 610 N.E.2d 1032, 1035 (9th Dist. 1992); *Am. Greetings, Corp. v. Cookie Jar Entm't, Inc.*, No. 1:09-CV-1056, 2009 WL 3713686, (N.D. Ohio Nov. 3, 2009); *Rosado v. Barry Univ. Inc.*, No. 1:20-cv-21813, 2020 WL 6438684 (S.D. Fla. Oct. 30, 2020); *Gibson v. Lynn Univ, Inc.*, No. 20-cv-81173, 2020 WL 7024463 (S.D. Fla. Nov. 29, 2020)

**5. Plaintiff pled a breach of contract releated to her insurance fee.** ..............................16

The "non-refundable" provision related to Plaintiff's insurance fee relates to insurance paid "when enrolled in practicum courses." Because of Xavier's actions, Plaintiff is not enrolled in practicum portions and this fee should be refunded.

*Westfield Ins. v Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256

**6. Plaintiff sufficiently pled a breach of contract with respect to her student activity fees.** ..........................................................................................................................17

A separate implied contract between Plaintiff and Xavier governs the student activity fees she paid, and discovery will provide a manner of calculating how much refund she is owed.

*Zahn v. Ohio Univ.*, Ct. of Cl. No. 2020-00371JD, 2020 WL 6163919 (Oct. 19, 2020); *Saroya v. Univ. of the Pac.*, No. 5:20-cv-03196, 2020 WL 7013598 (N.D. Cal. Nov. 27, 2020)

**B. Plaintiff Sufficiently Pled Her Alternative Claims For Unjust Enrichment.** ................18

Plaintiff has sufficiently pled an alternative claim for unjust enrichment. Moreover, Plaintiff is permitted to plead unjust enrichment in the alternative.

*Cross v. Univ. of Toledo*, Ct. of Cl. No. 2020-00274JD, 2020 WL 4726814 (July 8, 2020); *Smith v. The Ohio State Univ.*, Ct. of Cl. No. 2020-0321JD, 2020 WL 5694224 (Sept. 9, 2020); *McDermott v. The Ohio State Univ.*, Ct. of Cl. No. 2020-00286JD, 2020 WL 5239892 (Aug. 24, 2020); *Waitt v. Kent State Univ.*, Ct. of Cl. No. 2020-00392JD, 2020

WL 5894543 (Sept. 28, 2020); *Zahn v. Ohio Univ.*, Ct. of Cl. No. 2020-00371JD, 2020 WL 6163919 (Oct. 19, 2020)

**C. Plaintiff Sufficiently Pled Her Alternative Claims For Promissory Estoppel.** .............20

Plaintiff is permitted to plead both breach of contract and promissory estoppel claims. Moreover, Plaintiff reasonably relied on Xavier's statements, as enumerated in the Amended Complaint.

*Zahn v. Ohio Univ.*, Ct. of Cl. No. 2020-00371JD, 2020 WL 6163919 (Oct. 19, 2020); *Paar v. Jackson Twp. Bd. of Trustees*, 5th Dist. Stark No. 2003-CA-00334, 2004-Ohio-5567

**D. Plaintiff Sufficiently Pled Claims For Violations Of The Ohio Consumer Sales Practices Act.** ......................................................................................................................22

The Ohio Consumer Sales Practices Act ("CSPA") is to be construed liberally to bring conduct under its scope.

*Taylor v. First Resolution Inv. Corp.*, 148 Ohio St.3d 627, 2016-Ohio-3444, 72 N.E.3d 573

**1. Xavier has not challenged allegations under the CSPA in the Amended Complaint.**...............................................................................................................23

**2. The CSPA applies to Xavier's nursing program.** ........................................23

Numerous Ohio courts have held that the CSPA applies to programs such as Xavier's nursing program.

*Malone v. Acad. of Court Reporting*, 64 Ohio App.3d 588, 582 N.E.2d 54 (10th Dist.1990); *Schneider v. Acad. of Court Reporting*, 10th Dist. Franklin No. 93APE07-989, 1994 WL 109718, (Mar. 31, 1994) (same); *Hacker v. Nat'l. Coll. of Bus. & Tech.*, 2nd Dist. No. 23489, 186 Ohio App.3d 203, 2010-Ohio-380, 927 N.E.2d 38; *Ajibola v. Ohio Med. Career Coll., Ltd.*, 2nd Dist. No. 27975, 2018-Ohio-4449, 122 N.E.3d 660, ¶ 37; *Krueck v. Youngstown State Univ.*, 9th Dist. No. 18CA011391, 2019-Ohio-3219, 131 N.E.3d 1030

**3. Xavier had notice that its conduct violated the CSPA.**................................24

The CSPA's notice requirement is liberally construed in favor of consumers, and Xavier had notice that its conduct violated the CSPA.

*Chapman v. Tristar Prods., Inc.*, No. 16-cv-1114, 2016 WL 6216135, (N.D. Ohio Oct. 25, 2016).

**a. *The decisions Cited in the Amended Complaint involving education services need not be final judgments disposing of the case.***.............................................25

The decisions cited by Plaintiff are sufficiently definite determinations that Xavier had notice that its actions violated the CSPA.

*Marrone v. Philip Morris USA, Inc.*, 110 Ohio St.3d 5, 2006-Ohio-2869, 850 N.E.2d 31; *Ajibola v. Ohio Med. Career Coll., Ltd.*, 2nd Dist. No. 27975, 2018-Ohio-4449, 122 N.E.3d 660; *Krueck v. Youngstown State Univ.*, 9th Dist. No. 18CA011391, 2019-Ohio-3219, 131 N.E.3d 1030

**b. *The CSPA violations cited in the Amended Complaint are substantially similar to Xavier's actions.*** ........................................................................................27

The cases cited by Plaintiff in the Amended Complaint show that Xavier had notice that its actions violated the CSPA because they are substantially similar to the facts alleged in this case.

*Gascho v. Glob. Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 695 (S.D. Ohio 2012); *Marrone v. Philip Morris USA, Inc.*, 110 Ohio St.3d 5, 2006-Ohio-2869, 850 N.E.2d; *Ajibola v. Ohio Med. Career Coll., Ltd.*, 2nd Dist. No. 27975, 2018-Ohio-4449, 122 N.E.3d 660; *Krueck v. Youngstown State Univ.*, 9th Dist. No. 18CA011391, 2019-Ohio-3219, 131 N.E.3d 1030; *Hacker v. Nat'l. Coll. of Bus. & Tech.*, 186 Ohio App.3d 203, 2010-Ohio-380; *Malone v. Acad. of Court Reporting*, 64 Ohio App.3d 588, 582 N.E.2d 54 (10th Dist. 1990); *Bartell v. LTF Club Operations Co., Inc.* No. 2:14-CV-401, 2015 WL 1730415 (S.D. Ohio Apr. 14, 2015)

**c. *The Ohio Administrative Code provides sufficient notice under the CSPA.*** .............30

Separately, the Ohio administrative code sections cited by Plaintiff show that Xavier was on notice that its actions violated the CSPA.

*Marrone v. Philip Morris USA, Inc.*, 110 Ohio St.3d 5, 2006-Ohio-2869, 850 N.E.2d 31

**E. Plaintiff Does Not Make "Educational Malpractice" Claims.**........................................33

**1. Plaintiff's breach of contract claims are not educational malpractice claims.**..........33

The Court should decline to recast Plaintiff's breach of contract claims to educational malpractice claims when Plaintiff makes no such claims.

*Smith v. The Ohio State Univ.*, Ct. of Cl. No. 2020-0321JD, 2020 WL 5694224 (Sept. 9, 2020); *Waitt v. Kent State Univ.*, Ct. of Cl. No. 2020-00392JD, 2020 WL 5894543 (Sept. 28, 2020)

**2. Plaintiff's CSPA claims are not for educational malpractice.** ....................................35

Similarly, Plaintiff's explicit CSPA claims should not be recast as educational malpractice claims. CSPA claims against education providers that do not challenge the quality of education are widely accepted in Ohio.

*Ajibola v. Ohio Med. Career Coll., Ltd.*, 2nd Dist. No. 27975, 2018-Ohio-4449, 122 N.E.3d 660; *Malone v. Acad. of Court Reporting*, 64 Ohio App.3d 588, 582 N.E.2d 54 (10th Dist. 1990)

**V. CONCLUSION**...................................................................................................................36

# TABLE OF AUTHORITIES

Page(s)

## Cases

*AFCO Credit Corp. v. Brandywine Ski Ctr., Inc.*,
  81 Ohio App. 3d 217, 610 N.E.2d 1032 (9th Dist. 1992) ....................................................... 13, 15

*Ajibola v. Ohio Med. Career Coll., Ltd.*,
  2nd Dist., No. 27975, 2018-Ohio-4449, 122 N.E.3d 660 ..................................................... passim

*Al–Dabagh v. Case W. Reserve Univ.*,
  777 F.3d 355 (6th Cir. 2015) ................................................................................................. 5

*Am. Greetings, Corp. v. Cookie Jar Entm't, Inc.*,
  No. 1:09-cv-1056, 2009 WL 3713686 (N.D. Ohio Nov. 3, 2009) ................................................. 15

*Anderson v. One Three Five, Inc.*,
  No. 2:17-cv-1492, 2018 WL 3388408 (W.D. Pa. July 12, 2018) ................................................... 8

*Bailey v. Midwestern Entm't., Inc.*,
  103 Ohio App.3d 181, 658 N.E.2d 1120 (10th Dist.1995) ........................................................... 13

*Baker v. Oregon City Schools*,
  6th Dist. No. L-11-1109, 2012-Ohio-972 ................................................................................... 34, 35

*Bartell v. LTF Club Operations Co., Inc.*,
  No. 2:14-cv-401, 2015 WL 1730415 (S.D. Ohio Apr. 14, 2015) ................................................... 30

*Bassett v. Nat'l Collegiate Athletic Ass'n*,
  528 F.3d 426 (6th Cir. 2008) ................................................................................................. 3

*Beard v. Dominion Homes Fin. Servs., Inc.*,
  No. 2:06-cv-00137, 2007 WL 2838934 (S.D. Ohio Sept. 26, 2007) ........................................... 32

*Behrend v. State*,
  55 Ohio App.2d 135, 379 N.E.2d 617 (10th Dist. 1977) ................................................................. 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................. 3

*Bradshaw v. Pa. State Univ.*,
  No. 10-4839, 2011 WL 1288681 (E.D. Pa. Apr. 5, 2011) ........................................................... 20

*Buescher v. Baldwin Wallace Univ.*,
  86 F. Supp. 3d 789 (N.D. Ohio 2015) ..................................................................................... 5

*Campbell v. Hosp. Motor Ins. Inc.*,
  24 Ohio St.3d 54, 493 N.E.2d 239 (1986) ................................................................................. 13

*Capital Equity Grp. v. Ripken Sports Inc.*,
   744 F. App'x 260 (6th Cir. 2018) ................................................................ 4

*Carbone v. Nueva Constr. Grp., LLC*,
   2017-Ohio-382, 83 N.E.3d 375 (8th Dist.) ................................................ 4

*Chapman v. Tristar Prods., Inc.*,
   No. 16-cv-1114, 2016 WL 6216135 (N.D. Ohio Oct. 25, 2016) .................................. 25

*Cristino v. Admr., Ohio Bur. of Worker's Comp.*,
   10th Dist. Franklin No. 12AP-60, 2012-Ohio-4420 .................................... 18

*Cross v. Univ. of Toledo*,
   Ct. of Cl. No. 2020-00274JD, 2020 WL 4726814 (July 8, 2020)......................... 3, 6, 18

*CUC Props., LLC v. 1680 Carillon, LLC*,
   No. 1:12-cv-71, 2012 WL 3023250 (S.D. Ohio July 24, 2012)..................... 12

*David v. Neumann Univ.*,
   177 F. Supp. 3d 920 (E.D. Pa. 2016) ...................................................... 20

*Directv, Inc. v Treesh*,
   487 F.3d 471 (6th Cir. 2007)................................................................... 3

*Doherty v. S. Coll. of Optometry*,
   862 F.2d 570 (6th Cir. 1988)................................................................. 11

*Fouty v. Ohio Dept. of Youth Servs.*,
   167 Ohio App.3d 508, 2006-Ohio-2957, 855 N.E.2d 909 (10th Dist.)............................ 5

*Gascho v. Glob. Fitness Holdings, LLC*,
   863 F. Supp. 2d 677 (S.D. Ohio 2012)..................................................... 27

*Gascho v. Global Fitness Holdings, LLC*,
   918 F. Supp. 2d 708 (S.D. Ohio 2013)..................................................... 26

*Gerboc v. ContextLogic, Inc.*,
   867 F.3d 675 (6th Cir. 2017)................................................................. 33

*Gibson v. Lynn Univ., Inc.*,
   No. 20-cv-81173, 2020 WL 7024463 (S.D. Fla. Nov. 29, 2020)..................... 4, 15, 16

*Guckenberger v. Bos. Univ.*,
   957 F. Supp. 306 (D. Mass. 1997) ........................................................... 6

*Hacker v. Nat'l. Coll. of Bus. & Tech.*,
   186 Ohio App.3d 203, 2010-Ohio-380, 927 N.E.2d 38 .............................. 24, 25, 28, 29

*Jefferson v. Univ. of Toledo*,
   10th Dist. Franklin No. 12AP-236, 2012-Ohio-4793 .................................... 5

*Johnson v. Schmitz,*
    119 F. Supp. 2d 90 (D. Conn. 2000) ............................................... 6

*Kashmiri v. Regents of the Univ. of Cal.,*
    156 Cal.App.4th 809, 67 Cal.Rptr.3d 635 (Cal. Ct. App. 2007)........................................... 6, 7

*Krebs v. Charlotte Sch. of Law, LLC,*
    No. 3:17-cv-00190, 2017 WL 3880667 (W.D.N.C. Sept. 5, 2017) ......................................... 19, 20

*Krueck v. Youngstown State Univ.,*
    2019-Ohio-3219, 131 N.E.3d 1030............................................... 24, 25, 26, 28

*Leiby v. Univ. of Akron,*
    10th Dist. Franklin No. 05AP-1281, 2006-Ohio-2831 ................................................... 12

*Lemmon v. Univ. of Cincinnati,*
    112 Ohio Misc. 2d 23, 750 N.E.2d 668 (Ct. Cl. 2001) ................................................. 35

*MacDonald v. Thomas M. Cooley Law Sch.,*
    724 F.3d 654 (6th Cir. 2013)............................................... 24

*Malone v. Acad. of Court Reporting,*
    64 Ohio App.3d 588, 582 N.E.2d 54 (10th Dist. 1990) ............................................. passim

*Marrone v. Philip Morris USA, Inc.,*
    110 Ohio St.3d 5, 2006-Ohio-2869, 850 N.E.2d 31 ................................................. 26, 27, 30, 31

*Master Consol. Corp. v. BancOhio Nat'l Bank,*
    2d Dist. Montgomery No. 11778, 1990 WL 65666 (May 17, 1990) ........................................... 13

*Matulin v. Academy of Court Reporting,*
    9th Dist. Summit No. 14947, 1992 WL 74210 (Apr. 8, 1992) ................................................. 27

*McDermott v. The Ohio State Univ.,*
    Ct. of Cl. No. 2020-00286JD, 2020 WL 5239892 (Aug. 24, 2020) ......................................... 4, 19

*McKee v. McCann,*
    2017-Ohio-4072, 102 N.E.3d 38 (8th Dist.) ................................................. 13

*Mellowitz v. Ball State Univ.,*
    No. 49D14-2005- PL-015026, 2020 WL 5524659 (Ind. Sup. Aug. 14, 2020) .............................. 4

*Milanov v. Univ. of Mich.,*
    No. 20-000056, 2020 WL 7135331 (Mich. Ct. Cl. July 27, 2020)............................................. 4, 9

*Mitchell v. Lawson Milk Co.,*
    40 Ohio St.3d 190, 532 N.E.2d 753 (1988)........................................................ 19

*NetJets, Inc. v. Binning,*
    10th Dist. Franklin No. 04AP-1257, 2005-Ohio-3934 ................................................. 14

*Paar v. Jackson Twp. Bd. of Trs.*,
   5th Dist. Stark No. 2003-CA-00334, 2004-Ohio-5567 .................................... 20, 21, 22

*Pattie v. Coach, Inc.*,
   29 F. Supp. 3d 1051 (N.D. Ohio 2014) ....................................................... 30

*Reali, Giampetro & Scott v. Soc. Nat'l. Bank*,
   133 Ohio App.3d 844, 729 N.E.2d 1259 (7th Dist. 1999) .............................. 5

*Renner v. Procter & Gamble Co.*,
   54 Ohio App.3d 79, 561 N.E.2d 959 (4th Dist. 1988) ........................... 30, 31

*Rosado v. Barry Univ. Inc.*,
   No. 1:20-cv-21813, 2020 WL 6438684 (S.D. Fla. Oct. 30, 2020)........................... 4, 15

*Salerno v. Fla. S. Coll.*,
   No. 8:20-cv-1494-30, 2020 WL 5583522 (M.D. Fla. Sept. 16, 2020)........................ 4

*Saroya v. Univ. of the Pac.*,
   No. 5:20-cv-03196, 2020 WL 7013598 (N.D. Cal. Nov. 27, 2020) ...................... 4, 18

*Savett v. Whirlpool*,
   No. 12-cv-310, 2112 WL 2780451 (N.D. Ohio Aug. 31, 2012) ................................... 26

*Schneider v. Acad. of Court Reporting*,
   10th Dist. Franklin No. 93APE07-989, 1994 WL 109718 (Mar. 31, 1994) ................................ 24

*Smith v. The Ohio State Univ.*,
   Ct. of Cl. No. 2020-0321JD, 2020 WL 5694224 (Sept. 9, 2020) ......................... passim

*Somasundarum v. Kent State Univ.*,
   10th Dist. Franklin No.13AP-785, 2014-Ohio-1029 ................................... 19

*Stenger v. Ferris State Univ. & Bd. of Trs. of Ferris State Univ.*,
   2020 Mich. Ct. Cl. LEXIS 5, *9 n.4 ............................................... 9

*Taylor v. First Resolution Inv. Corp.*,
   148 Ohio St.3d 627, 2016-Ohio-3444, 72 N.E.3d 573........................................ 22, 23

*Thomas v. Gee*,
   850 F. Supp. 665 (S.D. Ohio 1994)........................................................... 5

*Thomas v. Nat'l Coll. of Virginia, Inc.*,
   901 F. Supp. 2d 1022 (S.D. Ohio 2012)........................................................ 29

*Union Sav. Bank v. Lawyers Title Ins. Corp.*,
   191 Ohio App.3d 540, 2010-Ohio-6396, 946 N.E.2d 835 (10th Dist.)........................... 4

*Volbers-Klarich v. Middletown Mgmt., Inc.*,
   125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434........................................ 25

*Waitt v. Kent State Univ.*,
  Ct. of Cl. No. 2020-00392JD, 2020 WL 5894543 (Sept. 28, 2020) .................................. 4, 6, 7, 34

*Westfield Ins. v Galatis*,
  100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256...................................................... 16, 17

*Zahn v. Ohio Univ.*,
  Ct. of Cl. No. 2020-00371JD, 2020 WL 6163919 (Oct. 19, 2020)......................................... passim

*Zumbrun v. Univ. of S. Cal.*,
  25 Cal.App.3d 1, 101 Cal.Rptr. 499 (Cal. Ct. App. 1972)............................................................ 7

*Zurstrassen v. Stonier*,
  786 So. 2d 65 (Fla. 4th DCA 2001) ............................................................................................ 15

## **Rules**

Federal Rule of Civil Procedure 8 ................................................................................................. 3

Federal Rule of Civil Procedure 8(a)(2) ....................................................................................... 3

Federal Rule of Civil Procedure 12(b)(6) ................................................................................. 3, 8

## **Regulations**

Ohio Adm. Code 109:4-3 ............................................................................................................. 31

Ohio Adm. Code 109:4-3-02 .................................................................................................. 31, 32

Ohio Adm. Code 109:4-3-09(A)(2) ........................................................................................ 32, 33

Ohio Adm. Code 109:4-3-10.................................................................................................. 31, 32

Ohio Adm. Code 109:4-3-12 ....................................................................................................... 33

## I.    INTRODUCTION

Defendant Xavier University's[1] ("Xavier") Motion to Dismiss ("Motion") is based upon fictions contrary to the allegations of the Amended Complaint and reality. Xavier argues that it was forced to cancel its marketed in-person clinical program due to the pandemic. In fact, the Ohio Board of Nursing encouraged schools to turn the Sars-COV2 (COVID-19) pandemic into a teaching and clinical experience opportunity. In response, Xavier took the path of least resistance (and likely cost) and simply cancelled the clinical aspects of its accelerated bachelor of science in nursing ("ABSN") program, along with many of the lab simulations. Xavier argues that even without the promised clinical education Plaintiff Ximena Miranda ("Plaintiff") received a "substantially comparable education" and suffered no damage. Each state in the United States has a minimum number of clinical hours required for licensure. The elimination of the clinical training severely compromised the possibility of state licensure for Plaintiff and other class members, all of whom suffered damage by paying tens of thousands of dollars for a program that failed to deliver what it had promised.

Xavier's Motion also creates a fictional legal universe, one which ignores the myriad of post-pandemic Ohio cases. Since the beginning of the Covid-19 pandemic, students at numerous schools in Ohio have filed lawsuits against those schools related to, *inter alia*, the failure to provide promised services despite retention of tuition and fees. The causes of action in those cases, like here, include breach of contract and unjust enrichment. Every motion to dismiss filed by the defendants—many of which seek to recast the claims as those for educational malpractice, like Xavier here—has been denied.

---

[1] The defendant in this action is Xavier University. Some of the actions alleged may have been taken, as stated in the Amended Complaint, by Orbis Education, the for-profit entity to which Xavier sold its name, reputation and logo for the purposes of establishing the accelerated bachelor of science in nursing program. Xavier's motion does not dispute that it is in any case responsible to Plaintiff and the putative class for actions taken under its name.

1

Plaintiff's claims against Xavier are stronger than the claims filed in the other lawsuits, as Plaintiff points to specific promises made in marketing and handbook materials that were breached related to lab and clinical in-person experience that Xavier claimed was "guaranteed." Here too, the Amended Complaint sufficiently alleges viable causes of action against Xavier, which necessitates denial of Xavier's Motion at this early stage of litigation. For the reasons below, Plaintiff respectfully requests this Court deny Xavier's Motion.

## II.     FACTS AND BACKGROUND

Plaintiff Ximena Miranda left her home state of New York to attend Defendant Xavier University's ABSN program with the hope of working as an emergency room nurse in Florida. Amended Complaint, Doc. 11, PageID# 147-48, ¶¶ 24-26. Xavier's recruiting program contacted Plaintiff quickly upon inquiry, and connected her with an "admissions coach," who talked with Plaintiff about the program, including advising her to review Xavier's ABSN website. *Id.*, PageID# 148, ¶ 27. The website contained videos and statements emphasizing the program's hands-on training and clinical and lab experience, in addition to indicating that following graduation Plaintiff would be able to obtain licensure in, at a minimum, any state in the United States. *Id.*, PageID# 148, ¶¶ 27-28. Plaintiff was further drawn to Xavier's program because she believed Xavier's true nursing faculty would teach the program, that the classes would be smaller than at other institutions, and that she would be able to work in state-of-the-art simulation labs and be placed in prestigious hospitals as part of the heavily-marketed hands-on clinical program. *Id.*, PageID# 148-49, ¶¶ 31-32. These promises and representations were all material to Plaintiff. *Id.*, ¶¶ 28, 33.

They were all false. *Id.*, PageID# 142-44, ¶ 5, 6, 10-19.

Plaintiff and other class members paid tens of thousands of dollars per semester for the clinical and laboratory programs promised but not delivered, student activity fees, professional liability insurance for onsite curriculum, and other additional program-required accessories. *Id.*, PageID# 142,

¶ 4. This includes the failure to deliver detailed and comprehensive hands-on training, as promised on Xavier's website, as found both before Plaintiff committed to Xavier and as of the date of the Amended Complaint. *Id*., PageID# 146, ¶ 17. As a result of Plaintiff and other class members' payments based on illusory promises, misrepresentations, and/or omissions, they have been damaged and Xavier owes them damages, and Xavier should be required to cease making such promises, misrepresentations, and omissions. Doc. 11, PageID# 171.

Xavier moved to dismiss the Amended Complaint in its entirety, challenging Plaintiff's breach of contract, unjust enrichment, promissory estoppel, and Ohio Consumer Sales Practices Act claims. Doc. 13.

## III.    STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). Federal Rule of Civil Procedure 8 provides that all pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although particular detail is not generally necessary, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007).

## IV.    LAW AND ARGUMENT

Across the nation, courts (including those in Ohio) addressing Covid-19 tuition and student fee cases have widely rejected the same breach of contract, unjust enrichment, and educational malpractice arguments Xavier makes here. These cases include:

- *Cross v. Univ. of Toledo*, Ct. of Cl. No. 2020-00274JD, 2020 WL 4726814 (July 8, 2020);

3

- *Smith v. The Ohio State Univ.*, Ct. of Cl. No. 2020-0321JD, 2020 WL 5694224 (Sept. 9, 2020);

- *McDermott v. The Ohio State Univ.*, Ct. of Cl. No. 2020-00286JD, 2020 WL 5239892 (Aug. 24, 2020);

- *Waitt v. Kent State Univ.*, Ct. of Cl. No. 2020-00392JD, 2020 WL 5894543 (Sept. 28, 2020);

- *Zahn v. Ohio Univ.*, Ct. of Cl. No. 2020-00371JD, 2020 WL 6163919 (Oct. 19, 2020);

- *Salerno v. Fla. S. Coll.*, No. 8:20-cv-1494-30, 2020 WL 5583522 (M.D. Fla. Sept. 16, 2020);

- *Rosado v. Barry Univ. Inc.*, No. 1:20-cv-21813, 2020 WL 6438684 (S.D. Fla. Oct. 30, 2020);

- *Saroya v. Univ. of the Pac.*, No. 5:20-cv-03196, 2020 WL 7013598 (N.D. Cal. Nov. 27, 2020);

- *Gibson v. Lynn Univ, Inc.*, No. 20-cv-81173, 2020 WL 7024463 (S.D. Fla. Nov. 29, 2020);

- *Mellowitz v. Ball State Univ.*, No. 49D14-2005- PL-015026, 2020 WL 5524659 (Ind. Sup. Aug. 14, 2020); and

- *Milanov v. Univ. of Mich.*, No. 20-000056. 2020 WL 7135331 (Mich. Ct. Cl. July 27, 2020).

Notably, Xavier declined to cite to these cases, many decided under Ohio law on similar if not weaker claims within the context of the same COVID-19 pandemic. For the reasons in those decisions, and the reasons below, Plaintiff respectfully requests this Court deny Xavier's Motion.

### A. Plaintiff Sufficiently Pled Xavier Breached its Contract with Plaintiff.

To establish a claim for breach of contract under Ohio law, a Plaintiff must show (1) the formation of a binding contract or agreement; (2) the nonbreaching party performed its obligations under the contract; (3) the defendant failed to fulfill its obligations without a legally valid excuse; and (4) the nonbreaching party suffered damages. *Capital Equity Grp. v. Ripken Sports Inc.*, 744 F. App'x 260, 262–63 (6th Cir. 2018), citing *Carbone v. Nueva Constr. Grp., LLC*, 2017-Ohio-382, 83 N.E.3d 375, ¶ 14 (8th Dist.). Ohio law recognizes three types of contracts: express, implied in fact, and implied in law. *Zahn*, 2020 WL 6163919, at *2, citing *Union Sav. Bank v. Lawyers Title Ins. Corp.*, 191 Ohio App.3d 540, 2010-Ohio-6396, 946 N.E.2d 835 (10th Dist.). "'While both express and implied contracts require the showing of an agreement based on a meeting of the minds and mutual assent, the manner in which these requirements are proven varies depending upon the nature of the

4

contract.'" *Id.* quoting *Reali, Giampetro & Scott v. Soc. Nat'l. Bank*, 133 Ohio App.3d 844, 849, 729 N.E.2d 1259 (7th Dist.1999). "In an express contract, the assent to the terms of the contract is formally expressed in the offer and acceptance of the parties." *Id.* There is no such formal offer and acceptance in an implied contract, and no express agreement exists. *Id.* "'Unlike express contracts, implied contracts are not created or evidenced by explicit agreement of the parties; rather, they are implied by law as a matter of reason and justice.'" *Id.*, quoting *Fouty v. Ohio Dept. of Youth Servs.*, 167 Ohio App.3d 508, 2006-Ohio-2957, 855 N.E.2d 909, ¶ 56 (10th Dist.). "'An implied-in-fact contract arises from the conduct of the parties or circumstances surrounding the transaction that make it clear that the parties have entered into a contractual relationship despite the absence of any formal agreement.'" *Id.*

"Ohio treats the relationship between a university and its students as 'contractual in nature.'" *Al–Dabagh v. Case W. Reserve Univ.*, 777 F.3d 355 (6th Cir. 2015) (quoting *Behrend v. State*, 55 Ohio App.2d 135, 139, 379 N.E.2d 617 (10th Dist. 1977)). It is axiomatic that "'... when a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature.'" *Thomas v. Gee*, 850 F. Supp. 665, 674 (S.D. Ohio 1994), quoting *Behrend*, 55 Ohio App.2d at 139. In Ohio, "the terms of such contract are found in the college catalog and handbook supplied to students." *Buescher v. Baldwin Wallace Univ.*, 86 F. Supp. 3d 789, 797-98 (N.D. Ohio 2015), quoting *Jefferson v. Univ. of Toledo*, 10th Dist. Franklin No. 12AP-236, 2012-Ohio-4793, ¶ 15 (quotation marks and citations omitted)).

In addition, an implied contract may also arise from the university's promises, including those on its website and its promotional and recruitment materials. *See Zahn*, 2020 WL 6163919, at *3 ("However, based upon the allegations in the amended complaint, Plaintiff can at least state a claim that an implied contract exists for an in-person education as opposed to an online education."); *see*

5

*also Kashmiri v. Regents of the Univ. of Cal.*, 156 Cal.App.4th 809, 815, 67 Cal.Rptr.3d 635 (Cal. Ct. App. 2007) ("We conclude that … [t]he University breached its [implied] contracts with the professional students when it raised the professional educational fees for continuing students after promising on its website and in its catalogues that such fees would not be raised for the duration of the students' enrollment in the professional program."); *see also Johnson v. Schmitz*, 119 F. Supp. 2d 90, 93 (D. Conn. 2000) ("Because a student bases his or her decision to attend a college or university, in significant part, on the documents received concerning core matters, such as faculty, curriculum, requirements, costs, facilities and special programs, application of contract principles based on these documents and other express or implied promises…appears sound."); *Guckenberger v. Bos. Univ.*, 957 F. Supp. 306, 317 (D. Mass. 1997) ("[A]dvertisements can form the basis of contractual agreements" between students and universities.).

Many Ohio courts have found that students sufficiently alleged breach of contract claims in lawsuits arising from post-pandemic changes with similar allegations as the Amended Complaint. *See, e.g., Smith*, 2020 WL 5694224, at *2 (denying defendant's motion to dismiss plaintiff's breach of contract claim, summarized as she "contracted for in-person classes and received online classes instead."); *Cross*, 2020 WL 4726814, at *3 (denying motion to dismiss breach of contract claim because claim did not constitute educational malpractice); *Zahn*, 2020 WL 6163919, at *3 (finding plaintiff had sufficiently alleged breaches of implied and express contracts by defendant); *Waitt*, 2020 WL 5894543, at *2 (court declining to "recast" plaintiff's claims as those for "educational malpractice" and denying the defendant's motion to dismiss breach of contract claim).

The allegations in Plaintiff's Amended Complaint fall squarely within the analyses offered by these courts. First, Xavier represents that "it is impossible to earn a "BSN 100% Online" and that as an ABSN student "you'll regularly attend hands-on skills labs at the ABSN Learning Center associated with your program of enrollment ...." Amended Complaint, Doc. 11, PageID# 151, ¶ 45.

Xavier promised to provide in-person classes, on-campus facilities, onsite skills and simulation labs, and placement in on-site clinical rotation to Plaintiff and members of the class enrolled in Xavier's on-campus ABSN nursing program. *Id*., PageID# 152, ¶ 49. Xavier's website features prominent YouTube videos stressing the importance of hands-on learning and highlighting the in-person clinical and lab experiences. *Id*., PageID# 148, ¶ 27. Second, Plaintiff performed her obligations under the contract by paying her tuition and fees for in-person education, access to on-campus facilities resources, and in-person labs and clinicals. *Id*., PageID# 142-43 ¶¶ 4-7. Third, Xavier stopped providing the promised in-person classes, access to clinical settings, and access to on-campus facilities and resources, while failing to refund any portion of the tuition and fees Plaintiff paid for such classes and access. *Id*., PageID# 160-61 ¶¶ 79-80. Fourth, Plaintiff has been damaged by Xavier's retention of entire tuition and fees for classes and access to which she was denied. *Id*., PageID# 161, ¶ 84. Or, to put it in terms addressed by the *Zahn, Smith,* and *Waitt* courts, Plaintiff alleged she contracted and paid for hands-on clinical and laboratory teaching, and Xavier has breached that contract. *See also Zumbrun v. Univ. of S. Cal*., 25 Cal.App.3d 1, 10, 101 Cal.Rptr. 499 (Cal. Ct. App. 1972) (where university's catalogues and bulletins had promised to offer the course "Sociology 200," including lectures and a final examination, university's failure to provide either lectures or a final exam stated a claim for breach of contract); *Kashmiri*, 156 Cal. App. 4th at 826 ("Courts have … not been hesitant to apply contract law when the educational institution makes a specific promise to provide an educational service, such as a failure to offer any classes or a failure to deliver a promised number of hours of instruction").

As described in other Ohio court's decisions in *Smith, McDermott*, *Cross*, *Zahn*, and *Waitt*, Plaintiff has met her burden to allege plausible breach-of-contract claims.

**1. Xavier's argument admitting that it breached the contracts, but suggesting it offered a comparable substitute, is both inaccurate and premature.**

Unable to deny that Plaintiff has sufficiently pled the elements of her breach of contract claims, Xavier turns to a counterfactual narrative that is inconsistent with both the amended complaint and reality. This is inappropriate, inaccurate, and premature.

First, under the standard of review over a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts consider the allegations in the pleading, accept those as true, and then determine whether the allegations are plausible. Under this standard, courts do not accept, and do not consider, alternative sets of facts or narratives presented by defendants. *See, e.g., Anderson v. One Three Five, Inc.*, No. 2:17-cv-1492, 2018 WL 3388408, at *3 (W.D. Pa. July 12, 2018) ("Additionally, [defendant] spends much of its brief setting forth an alternative fact pattern surrounding Plaintiff's termination and ostensibly asks the court to credit its version of the events … Consideration of a defendant's [version] is not proper to consider on a motion to dismiss and will not be recounted or considered here."). Xavier's suggestion that it would "no longer be safe or permissible to hold classes in person," and that the "College of Nursing went to great lengths to ensure that students would continue to receive high quality instruction from the safety of their homes," Motion, Doc. 13, PageID# 197, are just that— Xavier's alternative version, which is contrary to the allegations in the Amended Complaint and to reality, and must be ignored by this Court for the purposes of a motion to dismiss. As previously stated, schools were in fact encouraged to continue offering clinical experiences for their nursing students by the State of Ohio. Amended Complaint, Doc. 11, PageID# 156, ¶ 60.

Second, Xavier's argument ignores relevant Ohio cases, such as *Zahn*, which permitted the plaintiff's breach of contract claims on the allegations that "she paid an amount of money to OU with the expectation that she would receive an in-person education rather than an online education." *Zahn*, 2020 WL 6163919, at *3. Xavier admits that it is not providing Plaintiff the in-person education she

was promised. Motion, Doc. 13, PageID# 197. This is sufficient for Plaintiff at this stage in the proceedings.

Third, the Michigan Court of Claims case cited by Xavier—*Stenger v. Ferris State Univ. & Bd. of Trs. of Ferris State Univ.*, 2020 Mich. Ct. Cl. LEXIS 5, *9 n.4—is inapposite. In *Stenger*, the Michigan court ruled that the plaintiff could not even show that a contract existed, and added as a footnote that even if there were one, the plaintiff had not shown damages. *Id*. If this Court were inclined to look to Michigan for guidance, it would be better served looking to *Milanov*, 2020 WL 7135331. In *Milanov* the plaintiff alleged—like Plaintiff does in this case—that online classes were not commensurate with in-person classes, and that two of plaintiff's classes "were essentially cancelled because defendant university's online method of instruction failed to provide an adequate learning environment." *Id*. at *1. In denying the motion to dismiss, the *Milanov* court also noted that the claims sounded in contract or quasi-contract, and not in any challenge to the faculty's professional judgment. *Id*. at *3.

It is also premature to consider dismissal on the basis of Xavier's alternative factual scenarios related to damages. Whether the question is if the education was "comparable" Motion, Doc. 13, PageID# 197, or whether Plaintiff is eligible for any refund under Xavier's "withdrawal" policy, *id*., PageID# 197-98, neither are appropriately resolved by the Court without further discovery.

Moreover, Xavier's argument that Plaintiff is ineligible for a tuition refund because Xavier switched to remote learning following the 35th calendar day of the semester, *see* Motion, Doc. 13, PageID# 197-98, has no merit and recommends a dangerous precedent. Xavier's refund policy deals with voluntary withdrawals by the student, not situations where the University decides to change contracted-for instruction. Xavier cannot reasonably argue that it is entitled to retain tuition from any student if it decided to cancel all classes each semester after the 35th calendar day.

**2. Xavier's argument regarding its authority to change its curriculum is unpersuasive.**

Xavier next attempts to argue that one sentence in its Student Handbook ("Handbook") gives it plenary authority to change a critical component of its curriculum, without regard to any previous commitment. However, this argument—that there can be no breach of contract because Xavier has the right to make any unilateral changes to the curriculum—relies on a mere half-reading of the Handbook.

Xavier argues that the Handbook "unequivocally and expressly reserves Xavier's right to make changes to the curriculum." Doc. 13, PageID# 198. The actual quote is as follows:

> Faculty reserves the right to change the curriculum if deemed necessary for the progressive development of the program. For further information on grading policies, consult the University catalog.

Doc. 13-1, PageID# 281. The context of the quote, found at the bottom of the "Progression Policies" relates to grade point averages, including the statement "[f]or further information on grading policies." Xavier stretches the scope of this statement too far when it suggests that this statement, found next to an asterisk at the bottom of a page on grading and course progression, gives it the authority to unilaterally strike whole portions of key programming. Unlike in cases it cites, (Doc. 13, PageID# 199, n.8), Xavier fails to point to any language in the Handbook or on its website explicitly stating as one of the terms of contract that Xavier may unilaterally remove from the ABSN curriculum the most important part—the clinicals.

Moreover, even if the scope of this asterisked sentence was found to be as expansive as Xavier wishes, its argument still fails, as it has pointed to no evidence in the pleadings that suggests the changes were "necessary for the progressive development of the program." Rather, Plaintiff's allegations state that in-person classes and labs were cancelled, student services where cut, and students could no longer access campus facilities. A "progressive" approach would have been to follow the recommendations of the Ohio Board of Nursing and advance the teaching opportunities

10

during the pandemic. Furthermore, Xavier cites no authority for its position that a university may stop providing in-person classes, close its campus, and retain all tuition and fees paid to it for those services simply because the university has a generic reservation of rights.

Finally, Xavier's key case *Doherty v. S. Coll. of Optometry*, 862 F.2d 570 (6th Cir. 1988) is plainly inapplicable. In *Doherty*, the defendant/appellee was an optometry school that had *added* clinical requirements to keep up with the changing and advancing practice of optometry and to ensure that students leaned to use certain new instruments without injuring patients. *Id*. at 574 (citing the trial court). The school in *Doherty* provided reasonable notice of this change, allowing plaintiff time to adjust his schedule in his remaining years. *Id*. at 578. Here, Xavier barred students from participating in clinicals. Notice is not an issue here—the damage caused Plaintiff and class members cannot be solved by notice. In *Doherty*, the court noted its hesitation to render a decision in an academic context, especially the healthcare field, given a general deference to educators. *Id*. at 576-77. That deference has no place where the question is not whether the curriculum is "appropriate"—there can be no dispute that clinical training is appropriate—but whether Xavier must provide the clinical training that was promised and is required for licensure in many states.

### 3. Plaintiff alleges Xavier's breach caused damages.

Xavier next turns to the elements of a breach of contract claim, focusing on whether Plaintiff sufficiently alleges damages. Xavier suggests that the Amended Complaint is "basically silent" on the nature of the damages alleged by Plaintiff. Motion, Doc. 13, PageID# 200. This is an overt mischaracterization of the Amended Complaint.

For example, plaintiff alleges she and other students bargained for a "comprehensive academic experience including substantial in-person simulation labs and clinical training," in exchange for tens of thousands of dollars in tuition, that she and others paid that tuition, and that Xavier is no longer providing "onsite curriculum." Amended Complaint, PageID# 143, ¶¶ 6-7; *id*., PageID# 157, ¶¶ 64-

65. Plaintiff alleges that the lack of clinical training results in the ABSN program failing to meet the requirements for licensure in several U.S. states, contrary to Xavier's representations that they would be able to practice nursing in any state across the United States and in many other countries following graduation. *Id.*, PageID# 143, ¶ 9. In addition to failure to refund all or part of the tuition fees paid, Xavier charged "student activity fees" and "professional liability insurance fees," which should also be refunded, in whole or in part. *Id.*, ¶ 8; *see also id.*, PageID# 156-56, ¶¶ 61-63. In total, Plaintiff and the class members have suffered damages of over $5 million. *Id.*, PageID# 147, ¶ 20. Plaintiff has sufficiently alleged this element in her Amended Complaint. *See, e.g., CUC Props., LLC v. 1680 Carillon*, *LLC*, No. 1:12-cv-71, 2012 WL 3023250, at *2 (S.D. Ohio July 24, 2012) (denying motion to dismiss arguing that the plaintiff had not alleged how the defendant failed to perform when the plaintiff alleged that the defendant had failed to refund a credit).

Xavier's key case in this section, *Leiby v. Univ. of Akron*, 10th Dist. Franklin No. 05AP-1281, 2006-Ohio-2831, provides little guidance for this Court. First, the posture of the decision-making reviewed in *Leiby* was quite different from this case: this case is at the pleadings stage, where in *Leiby* discovery and testimony had already been taken. Moreover, in *Leiby*, the court found that the plaintiff had not sufficiently demonstrated the agreement element of a breach of contract claim, *id.* at ¶¶ 16-17, and was also unable to show damages through testimony. *Id.* at ¶ 26. In this case, Plaintiff has alleged all of the elements of her claims, and no testimony has been yet given on any element, let alone damages.

The Court should also decline to credit Xavier's argument that Plaintiff cannot establish damages because "if she satisfactorily completes her remaining coursework, she will receive a nursing degree from Xavier. And that degree will be identical to the one that she would have received if there had been no pandemic and no distance learning." Motion, Doc. 13, PageID# 200. This is both speculative and likely untrue. Moreover, Plaintiff has alleged that she and class members were

promised eligibility to practice in any state after graduation; a representation now known to be false before the pandemic, and even more so following Xavier's post-pandemic elimination of clinical training. Amended Complaint, Doc. 11, PageID# 143, ¶ 9.

More frustrating to Plaintiff and the class members, this argument suggests Xavier has little interest in its students between the tender of tuition monies and the granting of a diploma.

### 4. Plaintiff did not ratify a contract by attending on-line courses.

Xavier's next attack on the Amended Complaint turns its focus to Plaintiff herself, arguing that she "ratified" Xavier's breach of contract by accepting "the benefits" of the contract by continuing to attend classes in the remote format. Motion, Doc. 13, PageID# 201-02. Xavier's argument, like the others before it, misses the mark.

"The intention to ratify is an essential element, and is at the foundation of the doctrine of ratification." *AFCO Credit Corp. v. Brandywine Ski Ctr., Inc.*, 81 Ohio App. 3d 217, 221, 610 N.E.2d 1032 (9th Dist.1992) (insured objecting to the terms of a policy while the parties negotiated a resolution did not indicate an intent to ratify). Xavier fails to affirmatively demonstrate Plaintiff's intention to ratify any contract in its Motion by reference to the Amended Complaint.[2]

Xavier's primary argument comes from cases discussing ratification within the express context of corporate law, in particular the actions or inactions of a board of directors related to the unauthorized actions of an agent where the corporation is a principal. Motion, Doc. 13, PageID# 201, citing *Campbell v Hosp. Motor Ins. Inc.*, 24 Ohio St.3d 54, 493 N.E.2d 239 (1986); *see also id.*, citing to *Master Consol. Corp. v. BancOhio Nat'l Bank*, 2d Dist. Montgomery No. 11778, 1990 WL 65666

---

[2] Ohio courts recognize that for purposes of Civ.R. 12(B)(6) motion to dismiss, affirmative defenses typically involve facts outside the complaint, and exceptions to this general rule exist only when the affirmative defense is obvious from the face of the complaint. *See McKee v. McCann*, 2017-Ohio-4072, 102 N.E.3d 38, ¶ 16 (8th Dist.). No such exception is applicable here. *See also Bailey v. Midwestern Entm't., Inc.*, 103 Ohio App.3d 181, 185, 658 N.E.2d 1120 (10th Dist.1995) ("Whether the contract was ratified (or accepted) is a question of fact to be determined by the trial court.").

(May 17, 1990) (discussing ratification of unauthorized actions). These cases have nothing to do with this case.

Nor does *NetJets, Inc. v. Binning*, 10th Dist. Franklin No. 04AP-1257, 2005-Ohio-3934, provide Xavier the support it seeks. In *Binning*, the defendant (a pilot) signed an agreement that included a reimbursement clause for training paid for by the plaintiff. After his training and as part of his employment, the pilot routinely stowed luggage for passengers, and made no complaints about having to perform this task. *Id*. at ¶¶ 9-10. After he quit and the defendant sought reimbursement for the paid training, the pilot sought to void the entire contract by alleging he did not know about the stowage duties. *Id*. The court found that Binning's actions, even if he did not initially understand his role with regard to stowing passengers' baggage, ratified the agreement by continuing to stow baggage without complaint. *Id*. at ¶ 11.

Plaintiff's case is easily distinguishable for each semester she and class members paid Xavier. For the Spring semester, Plaintiff had already paid for and received certain bargained-for benefits (in-person classes, labs, clinicals, and other student services) for the first half of the semester. It was only after COVID-19 began that Xavier unilaterally stopped providing those benefits and did not offer Plaintiff any refund or compensation.

Xavier also suggests that Plaintiff ratified Xavier's actions when they enrolled or reenrolled after the Spring Semester because she should have been aware that Xavier would only offer online programs with no clinical practice. Motion, Doc. 13, PageID# 202. This argument ignores two key sets of facts alleged in the Amended Complaint. First, Xavier continued to make the same promises and commitments on its website well past the Spring Semester. *See* Amended Complaint, Doc. 11, PageID# 151-56, 161, ¶¶ 45-58, 80 n. 5-16. As far as Plaintiff and the class members knew at any given point in time, Xavier was promising a return to clinicals the next semester. Second, this argument ignores that once Plaintiff began the ABSN program, she was effectively caught:

> The accelerated timeline is what attracts many students to the program. It is also what keeps many students in the program who might otherwise depart; the rapid pace of the studies and the amount of money committed through just one or two semesters is so substantial that students are not able to simply stop their studies in the ABSN program and transfer to another post-graduate nursing licensure program.

*Id.*, PageID# 150, ¶ 40. Accordingly, Plaintiff's actions are better viewed as mitigation of loss rather than ratification. *See, e.g., Am. Greetings, Corp. v. Cookie Jar Entm't, Inc.*, No. 1:09-cv-1056, 2009 WL 3713686, at *9-10 (N.D. Ohio Nov. 3, 2009) (finding efforts to mitigate in lieu of treating a contract as fully invalid were not tantamount to ratification).

Xavier's position here is essentially that Plaintiff and the class members should have known that it was not telling them the truth when it continued to make representations and promises related to what they would receive as part of the ABSN practical skills-based curriculum. This is not a clear intention to ratify. *AFCO Credit Corp.*, 81 Ohio App. 3d at 221.

Two Florida courts have declined to extend the doctrine of ratification in similar matters. In *Rosado*, 2020 WL 6438684, the court disagreed with the defendant's argument that a student ratified the allegedly breach contract by continuing to attend remote courses for credit. The court determined that the plaintiff's decision to remain on campus at the time of its closure and thus triggering the forfeiture of her tuition and a significant academic penalty, without more, "is insufficient at this juncture to establish an 'affirmative showing' of her 'intention to adopt' Barry's alleged breach of contract." *Id.* at 5, quoting *Zurstrassen v. Stonier*, 786 So. 2d 65, 71 (Fla. 4th DCA 2001). In *Gibson* 2020 WL 7024463, at *5–6, the court refused to "draw the conclusion that Plaintiff relinquished his contractual remedies solely based on allegations that he did not—in the face of an unpredictable, novel, and rapidly evolving pandemic—quit school mid-semester and risk forfeiting his tuition."

This Court should conclude similarly and reject Xavier's ratification argument.

15

**5.  Plaintiff pled a breach of contract related to her insurance fee.**

In another partial reading of the Handbook, Xavier suggests that it has no obligation to refund her the insurance fee she paid that was to cover her during clinical practicum courses. Motion, Doc. 13, PageID# 202. Xavier suggests that this is a "non-refundable fee." *Id*., citing Doc. 13-1, PageID# 272. To do so, it ignores key words and phrases in the Handbook.

Xavier's position is Plaintiff paid the fee, expecting that it "would not be returned under any circumstances." *Id*. However, the "non-refundable" provision that Xavier cites is conditioned upon the students being "enrolled in practicum courses." Specifically, the Handbook states that the non-refundable fees include the following:

- University liability insurance coverage of $18 per semester **when enrolled in practicum courses.**

Handbook, Doc. 13-1, PageID# 272. Xavier has not accounted for the conditional language of "*when enrolled in practicum courses,*" in its argument.

 "When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement." *Westfield Ins. v Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11. The question is thus whether it was the intent of the parties that insurance paid when not enrolled in practicum courses is "non-refundable" or should be refunded. Nothing in Amended Complaint suggests that Plaintiff intended that her money go towards insurance that Xavier was going to prohibit her from being able to use. Nor should this Court "unreasonably contort" the agreement between parties here and find that the parties intended the "non-refundable" aspect of the insurance fee to apply when Plaintiff was not enrolled in practicum courses. *Id*. at ¶ 39.

The second part of Xavier's argument is that Plaintiff failed to allege either (1) that the insurance was not provided or (2) that she was not covered at the time she performed clinical. Xavier is confounding Plaintiff's claims. Plaintiff is not alleging a claim arising from the time frame when the clinical work was performed. Plaintiff is alleging that "[b]ecause clinical practices for ABSN

16

students has been discontinued, ABSN students receive no benefit from the professional liability insurance paid to Xavier" Doc. 11, PageID# 157, ¶ 61. The claims relate to the time frame when she was charged for insurance that was unnecessary because she was not enrolled in "practicum courses," and any and all semesters thereafter.

### 6. Plaintiff sufficiently pled a breach of contract with respect to her student activity fees.

Finally, Xavier continues its line of outside-the-pleading argument by suggesting that the "Handbook does not obligate Xavier to provide any particular quantity or type of activities. The Student Activity Fee is a mandatory fee that is due as a prerequisite to matriculation that each student must pay regardless of whether she intends to (or does) receive any benefit from it." Motion, Doc. 13, PageID# 203. Notably, and despite Xavier's insinuation otherwise, the Handbook makes no mention whatsoever of student activity fees. *See generally* Handbook, Doc. 13-1. Alternatively, Xavier suggests that the Student Activity Fee is "a requirement for enrollment," funds the entirety of the student government, and that even if there were a contract, there would be "no way to quantify damages other than through engaging in unbounded speculation." *Id*., PageID# 203-04.

Plaintiff sufficiently alleged that there was a separate implied contract under which Xavier was obligated to provide student activities in exchange for the "student activity fee." *See Zahn*, 2020 WL 6163919, at *3 (finding that although "a portion of the expenses and fees [plaintiff] seeks to recover are covered by an express contract," the plaintiff "can at least state a claim that an implied contract exists" for matters not governed by the express contract). Because Plaintiff has alleged such a contractual obligation exists and was breached by Xavier (*see* Amended Complaint, Doc. 11, PageID# 160-61, ¶¶ 78-79, 81-82), the Court should take these well-pled allegations in the Amended Complaint as true at this stage of litigation. *See, e.g., Zahn*, 2020 WL 6163919, at *3 ("Plaintiff has also alleged that she paid money for certain mandatory fees and has not received the services associated with those fees (e.g. access to dining halls, activity fees, facility fees, *etc*.). Based on these

17

assertions, the Court finds it is not beyond doubt that Plaintiff could prove a set of facts that either an express or implied contract was created. Plaintiff has a right to submit evidence to the fact finder in support of her claims.").

Finally, Xavier's suggestion that to determine the pro-rated amount of unused student activity fee would be "unbounded speculation," is simply untrue. Discovery will show what amounts go to what activities, resources, and organizations, on a per semester and per student basis. Experts may determine what the total refundable amount per class member would be. Accordingly, Xavier's arguments here are premature. *See, e.g., Saroya*, 2020 WL 7013598, at *6 ("[defendant's] remaining arguments, including its damages argument…are more appropriate at the dispositive motion stage.").

**B. Plaintiff Sufficiently Pled Her Alternative Claims For Unjust Enrichment.**

Xavier has two broad theories as to why Plaintiff's unjust enrichment claims must be dismissed. Motion, Doc. 13, PageID# 204-06. These are that (1) an unjust enrichment claim cannot co-exist with a breach of contract claim and (2) Plaintiff cannot show that retaining the tuition is unjust. Neither of these arguments pass muster. A claim for unjust enrichment is sufficiently pled if the allegations in the complaint show a benefit conferred by the plaintiff on the defendant, defendant's knowledge of that benefit, and that the defendant's retention of that benefit would be unjust under the circumstances. *See Cross*, 2020 WL 4726814, at *5. Plaintiff has met these elements; indeed, outside of its own counterfactual narrative, Xavier does not challenge these facts.

Moreover, Plaintiff is permitted to plead unjust enrichment in the alternative. *See Zahn*, 2020 WL 6163919, at *3, quoting *Cristino v. Admr., Ohio Bur. of Worker's Comp*., 10th Dist. Franklin No. 12AP-60, 2012-Ohio-4420, ¶ 26 ("The mere presence of both [breach of contract and unjust enrichment claims] in a complaint does not warrant the dismissal of the unjust enrichment claim on a Civ R 12(B)(6) motion."); *Smith*, 2020 WL 5694224, at *2 ("Because the existence of the underlying contract is disputed, it would be premature for the court to dismiss plaintiffs' unjust enrichment and

conversion claims."); *McDermott*, 2020 WL 5239892, at \*3, quoting *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988) ("The parties thus not only disagree as to which contract governs the case, but they also disagree as to the existence of one or more of the alleged contracts. In construing the complaint under the Civ.R. 12(B)(6) standard, the court "must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party."). "Because the existence of the underlying contract is disputed, it would be premature for the court to dismiss plaintiff's unjust enrichment claim. Furthermore, it would also be premature for the court to dismiss an unjust enrichment claim pled in the alternative at this stage of the litigation." *Id*.

Here, Plaintiff alleged that "[d]espite no longer providing the important onsite curriculum that students are promised, Xavier did not reduce its tuition" and "[d]espite no longer providing important hands-on learning experiences, Xavier continues to charge full tuition to ABSN students." Amended Complaint, Doc. 11, PageID# 143, 157, ¶¶ 7, 62. Furthermore, "[b]ecause clinical practice for ABSN students has been discontinued, ABSN students receive no benefit from the professional liability insurance fee paid to Xavier." *Id*., PageID# 156-57, ¶ 61. These allegations are sufficient to state a claim for unjust enrichment. *See, e.g., McDermott*, 2020 WL 5239892, at \*2-3 (Allegations that university charged a fee specifically to support dental clinical class work and then closed the clinic were sufficient to state claim for unjust enrichment).

Xavier's cases provide it no support. In *Somasundarum v. Kent State Univ.*, 10th Dist. Franklin No.13AP-785, 2014-Ohio-1029, the plaintiff sued Kent State University ("Kent State") for unjust enrichment after the flight school he had a contract with paid Kent State $1,500 to help plaintiff obtain a certain type of visa. *Id*. at ¶¶ 5, 16. Kent State obtained the visa, and the plaintiff was kicked out of the flight school program for dishonesty and personality problems. *Id*. at ¶¶ 4, 6, 16. This is a far cry from the allegations in Plaintiff's Amended Complaint. Contrary to *Krebs v. Charlotte Sch. of Law, LLC*, No. 3:17-cv-00190-GCM, 2017 WL 3880667 at \*6 (W.D.N.C. Sept. 5, 2017), Plaintiff alleged

that Xavier "actively recruited" her, and that Xavier "failed to provide classes in [nursing] instruction, professors to teach those classes, or classrooms in which students could be taught." *Id.* at *6. And unlike *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 927 (E.D. Pa. 2016) and *Bradshaw v. Pa. State Univ.*, No. 10-4839, 2011 WL 1288681, at *2 (E.D. Pa. Apr. 5, 2011), Plaintiff explicitly pled that Xavier has failed to hold the classes for which she paid, and/or has prevented her from attending certain necessary classes.

Finally, Xavier argues that at no point does "Ms. Miranda allege that Xavier saved any money (or profited) by moving the coursework online" or that the move was a result of "any effort by Xavier to enrich itself." Motion, Doc. 13, PageID# 206. However, Xavier's motivation is not an element of unjust enrichment. Even if it were, contrary to Xavier's suggestion, Plaintiff repeatedly states that Xavier's motivation is not to benefit or educate the students, but simply to make money by selling its erstwhile good name.

### C. Plaintiff Sufficiently Pled Her Alternative Claims For Promissory Estoppel.

Xavier's attempt to dismiss Plaintiff's promissory estoppel claims, pled in the alternative, fare no better than its other arguments. At its core, Xavier argues that (1) there is a single codified contract between it and Plaintiff, and (2) there is no contract requiring it to provide the in-person clinical and lab simulation work. Motion, Doc. 13, PageID# 206. This argument is not supported by the Amended Complaint or the law. *See, e.g., Zahn*, 2020 WL 6163919, at *3 (denying motion to dismiss alternative theories in pleadings). Moreover, although the theories are presented to the Court as alternatives, it is not Ohio law that promissory estoppel and breach of contract claims are mutually exclusive. *See, e.g., Paar v. Jackson Twp. Bd. of Trs.*, 5th Dist. Stark No. 2003-CA-00334, 2004-Ohio-5567, ¶¶ 45-50

(affirming jury's finding of liability on both theories where "the damages on the breach of contract and promissory estoppel are not identical.").[3]

Xavier also makes much ado about whether Plaintiff and the class members could reasonably rely on its promises, stating that it "never made specific promises to provide in-person education or student activities," and if it had, it wouldn't be reasonable to rely on these representations. Motion, Doc. 13, PageID# 207. But this could not be further from the truth. As shown in the table below detailing just a few of Xavier's representations, it was reasonable for Plaintiff and the class members to rely on Xavier's statements:

| XAVIER'S PROMISE | DOCUMENT | RECORD CITE |
|---|---|---|
| "It is important to note that it is impossible to earn a BSN 100% online. As an ABSN student, you'll regularly attend hands on skills and simulation labs at the ABSN Learning Center associated with your program of enrollment. During nursing skills and simulation labs, our clinical instructors will teach you how to put the core concepts you learned online into practice" | Website | Amended Complaint, Doc. 11, PageID# 151, ¶ 45 |
| Clinical rotation "play a significant role in your education, and we provide some of the best placements of any nursing school in Ohio" | Website | *Id.*, PageID# 154, ¶ 54 |
| "Clinical rotations play a significant role in your education…. Whether you're a student in our Cincinnati, Cleveland, or Columbus ABSN program, **you can expect to complete your accelerated ABSN clinicals in top local health care facilities**" | Website | *Id.*, ¶ 57. |
| "Guarantee a placement in a quality clinical environment that promotes your personal and professional development" | Website | *Id.* |

[3] Xavier does not challenge the sufficiency of Plaintiff's allegations for promissory estoppel, which require her to plead " (1) a promise; (2) that the promisor should reasonably expect to induce action or inaction on the part of another; (3) which does induce the action or inaction; and (4) injustice will result if the promise is not enforced." *Paar v. Jackson Twp. Bd. of Trs.*, 5th Dist. Stark No. 2003-CA-00334, 2004-Ohio-5567, ¶ 16.

| "Students learn in the classroom basic knowledge related to the major classes of drugs, their therapeutic actions, concepts of absorption…..Clinical nursing courses are designed to provide students with clinical learning opportunities…. **"Students are placed in a variety of clinical agencies"** | Handbook | Handbook, Doc. 13-1, PageID# 253 |
|---|---|---|
| Policy on HIV & Communicable Disease "Should a student test positive for such diseases, it may be necessary due to clinical agencies policies to find alternative learning experiences" | Handbook | *Id.*, PageID# 247 |
| **Clinical Attendance Policy: Pre-Licensure Students** **Students are required to attend and actively engage in each assigned clinical or laboratory experience.** **Clinical and lab attendance is mandatory** | Handbook | *Id.*, PageID# 254 |

Construing all inferences in Plaintiff's favor, given these promises were contained within the Handbook and on a Xavier-sponsored website, it was both reasonable and foreseeable that the students would expect to spend significant time in a clinical setting, among other on-site learning experiences.

**D. Plaintiff Sufficiently Pled Claims For Violations Of The Ohio Consumer Sales Practices Act.**

The Ohio Consumer Sales Practices Act ("CSPA") is a "remedial statute," "intended to reach a broad range of conduct." *Taylor v. First Resolution Inv. Corp.*, 148 Ohio St.3d 627, 2016-Ohio-3444, 72 N.E.3d 573, ¶ 88. In an individual action under the CSPA, a supplier is liable for any act or practice that is unfair, deceptive, or unconscionable. R.C. 1345.02(A); R.C. 1345.03(A). A supplier is liable for such violations regardless of if they take place before, during, or after the transaction. *Id.*

1. **Xavier has not challenged allegations under the CSPA in the Amended Complaint.**

Xavier opens its argument regarding the applicability of the CSPA by stating that "[i]t is not deceptive or unconscionable to take steps to preserve human life or to follow government directives." Motion, Doc. 13, PageID# 208. It is deceptive and unconscionable to, *inter alia*, guarantee the clinical training necessary for licensure in many states, then eliminate that training while still charging the same tuition and fees. *See* Amended Complaint, Doc. 11, PageID# 165-67, ¶¶ 106-16.

Xavier glosses over the fact that it was not required to suspend in-person clinicals for its nursing students. Indeed, the Ohio Board of Nursing encouraged "'academic-practice partnerships between health care facilities and pre-license RN and PN nursing education programs during the COVID-19 emergency in order to meet academic and workforce needs….'" Amended Complaint, Doc. 11, PageID# 156, ¶ 60. And even if Xavier were required to suspend promised in person learning, this would not excuse its failure to provide refunds for services Plaintiff paid for but never received.

Nor does Xavier's statement excuse CSPA violations entirely unrelated to the pandemic (*see, e.g., id.*, PageID# 165-66, ¶¶ 111-14), those occurring before the pandemic (*see, e.g., id.*, ¶¶ 108-11, 113), or the knowingly false representations regarding in-person learning made subsequent to or during the pandemic. S*ee, e.g., id.*, PageID# 166-67, ¶¶ 112, 116; *see also, e.g., id.*, PageID# 151-56, ¶¶ 45, 49, 53-58 (citing to misrepresentations about in person learning made in June and July of 2020).

2. **The CSPA applies to Xavier's nursing program.**

Xavier argues that the provision of educational services is not a consumer transaction under the CSPA. *See* Doc. 13, PageID# 208-09. Xavier acknowledges that "Ohio courts have allowed students to bring []CSPA claims against their schools," yet it incorrectly states that "no Ohio decision has analyzed" Xavier's argument that educational services were provided for professional—not personal, family, or household—purposes. *Id.* at PageID# 209 n. 10. Not one of the cases Xavier cites

23

to hold that the CSPA is inapplicable to the provision of educational services. *See* Doc. 13, PageID# 208-09 (citing cases).

This is because Ohio courts have repeatedly permitted CSPA claims to proceed against education providers, with many expressly rejecting the argument Xavier raises here. *See, e.g., Malone v. Acad. of Court Reporting*, 64 Ohio App.3d 588, 594, 582 N.E.2d 54 (10th Dist. 1990) ("Defendants' contention that the Consumer Sales Practices Act is not applicable because the legislature never intended it to apply to regulated professional schools is not well taken."); *Schneider v. Acad. of Court Reporting*, 10th Dist. Franklin No. 93APE07-989, 1994 WL 109718, at *6-7 (Mar. 31, 1994) (same); *Hacker v. Nat'l. Coll. of Bus. & Tech.*, 186 Ohio App.3d 203, 2010-Ohio-380, 927 N.E.2d 38, ¶ 20 ("the trial court concluded, and the parties do not dispute, that National College is subject to the CSPA."); *Krueck v. Youngstown State Univ.*, 9th Dist. No. 18CA011391, 2019-Ohio-3219, 131 N.E.3d 1030, ¶ 16 ("we disagree with the trial court's conclusion that the CSPA was inapplicable."); *Ajibola v. Ohio Med. Career Coll., Ltd.*, 2nd Dist. No. 27975, 2018-Ohio-4449, 122 N.E.3d 660, ¶ 37 ("It is undisputed for purposes of this appeal that the College is a 'supplier,' that Madison and Hubbard are 'consumer[s],' and that their contract for educational services was a 'consumer transaction' within the meaning of the [CSPA].") (first alteration in original).

Xavier's cases on this issue do not apply here. *MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 660 (6th Cir. 2013) analyzes Michigan law for claims brought under the Michigan Consumer Protection Law, and none of Xavier's other cases involve educational services.

### 3.  Xavier had notice that its conduct violated the CSPA.

"Under R.C. 1345.09(B), a class action is permitted under the Act if the plaintiff alleges that the substantive provisions of the Act have been violated, and (1) a specific rule or regulation has been promulgated under R.C. 1345.05 that specifically characterizes the challenged practice as unfair or deceptive, or (2) an Ohio state court has found the specific practice either unconscionable or deceptive

24

in a decision open to public inspection." *Volbers-Klarich v. Middletown Mgmt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶ 32 (quotation omitted).[4] Like the other aspects of the CSPA, this notice requirement should be liberally construed in favor of consumers. *See Chapman v. Tristar Prods., Inc.*, No. 16-cv-1114, 2016 WL 6216135, at \*4 (N.D. Ohio Oct. 25, 2016).

Xavier challenges Plaintiff's CSPA allegations not on the merits, but on the collateral question of whether Plaintiff has sufficiently alleged the CSPA notice requirements. Each of these arguments fails.

> ### a. The decisions cited in the Amended Complaint involving education services need not be final judgments disposing of the case.

Xavier first suggests that notice must be in the form of a "final determination" by a court, and that Plaintiff has failed to provide such notice. *See* Doc. 13 at PageID# 210-11 (citing two non-Ohio court cases). This is simply not true. *See* Amended Complaint, Doc. 11, PageID# 167-68, ¶ 118 (citing *Krueck*, 2019-Ohio-3219 at ¶¶ 16-21; *Ajibola*, 2018-Ohio-4449 at ¶¶ 36-37; *Hacker*, 2010-Ohio-380 at ¶¶ 22-24; and *Malone*, 64 Ohio App.3d at 593-594). In *Ajibola*, for example, the appellate court reversed and remanded the trial court's decision, finding that the defendant Ohio Medical Career College was a supplier, the plaintiffs were consumers, their contract for education was consumer transaction, and that the plaintiff's factual allegations were sufficient to support a claim that the defendant's actions (making false representations in a consumer transaction) violated the CSPA. *Ajibola*, 2018-Ohio-4449 at ¶¶ 36-37. The appellate court thus made the final determination that (1) as a matter of law, a college or university violates the CSPA when it makes false representations or

---

[4] R.C. § 1345.09(B) states "Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02, 1345.03, or 1345.031 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may…recover damages or other appropriate relief in a class action under Civil Rule 23, as amended."

claims in a consumer transaction, and (2) the facts as alleged in the complaint objectively showed a violation of the CSPA.

In *Kreuk*, the Ohio appellate court made a similar final determination: the facts alleged in the complaint (statements by the defendant that plaintiffs would be eligible to sit for state and national licensing exams without completing additional coursework), when viewed objectively and without regard for whether or not they could be proven, showed a violation of the CSPA by an institute for higher education. *Kreuk*, 2019-Ohio-3219 at ¶¶ 16-21. These are both final determinations by Ohio appellate courts on issues that gave Xavier ample and sufficient notice that its representations too would violate the CSPA.

Such an interpretation comports with the law of notice under the CSPA as expressed by the Supreme Court of Ohio. *See Marrone v. Philip Morris USA, Inc.*, 110 Ohio St.3d 5, 2006-Ohio-2869, 850 N.E.2d 31, ¶ 9 ("The prior notice may be in the form of…a court *decision* made available for public inspection by the Attorney General under R.C. 1345.05(A)(3).") (emphasis added).[5]

Those cases cited by Xavier are inapposite and offer little guidance. In *Gascho v. Global Fitness Holdings, LLC*, 918 F. Supp. 2d 708, 715 (S.D. Ohio), the federal district court held that a consent judgment did not constitute a final determination for purposes of notice. But Plaintiff has not cited to any consent judgments. And although in *Savett v. Whirlpool*, No. 12-cv-310, 2112 WL 2780451, at *4-5 (N.D. Ohio Aug. 31, 2012), the federal district court stated that a case could not constitute notice because the opinion only resolved a motion to dismiss, and therefore was not a final determination, the *Savett* court offered no analysis and no other case law to support its position. This is in part because no reasonable analysis, and no case law, support such a position. Under Xavier's

---

[5] Note that the Court in *Marrone* embraces an interpretation of the word "judgment" similar to the definition found in Black's Law Dictionary (*i.e.*, not limited to "final judgments" that dispose of a case in favor of the plaintiff). *See Marrone v. Philip Morris USA, Inc.*, 110 Ohio St.3d 5, 2006-Ohio-2869, 850 N.E.2d 31, ¶ 6 (2006) (describing trial court's decision certifying a class as a "judgment.").

theory, even cases such as *Matulin v. Academy of Court Reporting*, 9th Dist. Summit No. 14947, 1992 WL 74210 (Apr. 8, 1992), which affirmed a jury verdict finding liability on multiple counts, including a CSPA count, but affirmed with regard to the CSPA only in the issues of whether it applies to higher education institutions, would not constitute sufficient notice. *Id.* at *5. This is contrary to a plain and reasonable reading of the CSPA, and to common sense.

Under Ohio law, Plaintiff has met this notice requirement.

### b. The CSPA violations cited in the Amended Complaint are substantially similar to Xavier's actions.

Xavier also tries to escape Plaintiff's CSPA allegations by suggesting that it lacked notice that its actions were unlawful because no one had been caught making such misrepresentations before. But this ignores actual Ohio law.

In *Marrone*, the Supreme Court of Ohio held that "there must be a substantial similarity between a defendant's alleged violation of the Act and an act or practice previously declared deceptive by either a rule promulgated by the Attorney General or a court decision that was publicly available when the alleged violation occurred." *Marrone*, 2006-Ohio-2869 at ¶ 24. "Substantial similarity" means "a similarity not in every detail, but in essential circumstances or conditions." *Id.* "Substantially similar conduct, even in non-identical industries, may constitute the requisite notice." *Gascho v. Glob. Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 695 (S.D. Ohio 2012). Furthermore, the "substantially similar" requirement "does not mandate identical facts," which would be "virtually impossible to show" because every situation is distinguishable. *Gascho*, 863 F. Supp. 2d at 696. Rather, the level of specificity must merely "go beyond the general prohibitions of the CSPA." *Id.* In other words, the alleged notice should not be so generic that it would "allow *any* previous determination of a deceptive act or practice to qualify as prior notice for any subsequent alleged deceptive act or practice." *See Marrone*, 2006-Ohio-2869 at ¶ 23 (emphasis in original).

27

Xavier uses the bulk of its argument attempting to distinguish *Krueck*, 2019-Ohio-3219; *Ajibola*, 2018-Ohio-4449; *Hacker*, 2010-Ohio-380; and *Malone*, 64 Ohio App.3d 588, all of which involve industries identical to Xavier's. *See* Motion, Doc. 13, PageID# 211-13. Xavier's attempts to split hairs are unavailing because the conduct violating the CSPA need not be identical.

In *Krueck*, the crux of the plaintiff's allegations was that Youngstown State University led her to believe she would be eligible to sit for state and national licensing exams upon graduation without completing additional work, and that this was false. *Krueck*, 2019-Ohio-3219 at ¶ 6. Here, Plaintiff alleged Xavier led her to believe that, following graduation, she would be eligible "to sit for a state licensing exam and practice nursing in any state across the United States, as well as certain other countries." Amended Complaint, Doc. 11, PageID# 165-66, ¶ 111; *see also id.*, PageID# 143, ¶ 9. This misrepresentation was material to her decision to enroll in Xavier's ABSN program. *Id.*, PageID# 148, ¶ 28. Yet, after enrolling in the ABSN program and the filing of this lawsuit, Xavier informed her that, without additional clinical training or curriculum, she would only be eligible to take the nursing exam to practice in 22 states. *Id.*, PageID# 144, ¶ 10. This is substantially similar to the allegations in *Krueck*.

In *Ajibola*, the "plaintiff alleged that the school did not accurately convey that students would have to pass a standardized exam to be licensed as a nurse." Motion, Doc. 13, PageID# 212 (citing *Ajibola*, 2018-Ohio-4449 at ¶ 3). As discussed above, this is substantially similar to Plaintiff's allegations because Xavier did not accurately convey that students would have to complete additional work or curriculum to become a registered nurse in 28 states. *See* Amended Complaint, Doc. 11, PageID# 143-144, 148, 165-66, ¶¶ 9-10, 28, 111. Furthermore, the plaintiff in *Ajibola* made nearly identical allegations to Plaintiff here; namely, that the defendant misrepresented its nursing students would receive clinical nursing training. *Ajibola*, 2018-Ohio-4449 at ¶ 3. Likely recognizing the similarities, Xavier attempts to distinguish *Ajibola* by arguing that the defendant there did not face a

28

global pandemic that prevented it from offering clinical training. Motion, Doc. 13, PageID# 212. Yet, this representation is false because despite the pandemic, Xavier was not prevented from offering clinical instruction; in fact, such training during the pandemic was encouraged by the Ohio Board of Nursing. *See* Amended Complaint, Doc. 11, PageID# 156, ¶ 60. Additionally, Xavier continued to represent that its students would receive clinical training even after it ceased such activities. *See id.*, PageID# 167, ¶ 116; *see also id.* PageID# 154-56, 161, ¶¶ 54-58, 80 (specific misrepresentations concerning hands-on clinical training on Xavier's website accessed June 29, 2020 and July 24, 2020).[6]

In *Hacker*, the college represented that clinical externships would be available to students. *Hacker*, 2010-Ohio-380 at ¶ 22. Yet, the plaintiffs submitted evidence that they were forced to wait several months before receiving the promised externships. *Id.* The appellate court reversed summary judgment in favor of the defendant, holding that "requiring a consumer to wait for performance under a contract may constitute a CSPA violation." *Id.* at ¶ 23. For the reasons discussed above with respect to *Ajibola*, the circumstances of *Hacker* are substantially similar to Plaintiff's allegations here. *See id.*, PageID# 154-56, 161, 165-67, ¶¶ 54-58, 80, 107, 110-12, 115-16.

Finally, in *Malone*, the appellate court found that the plaintiff stated valid claims against the defendant with regard to representations alleged to be false and/or unconscionable and relied upon by students when enrolling. *Malone*, 64 Ohio App.3d at 590, 593. This case constitutes notice because the circumstances are sufficiently similar to what Plaintiff alleged here (*i.e.*, that Xavier made

---

[6] Although Xavier did in fact knowingly misrepresent the availability of hands-on clinical training, this is not a requisite of R.C. 1345.02. *Thomas v. Nat'l Coll. of Virginia, Inc.*, 901 F. Supp. 2d 1022, 1033 (S.D. Ohio 2012) ("a consumer does not need to prove intent or scienter to prove a violation of R.C. 1345.02").

misrepresentations relied upon by students when enrolling). *See, e.g.*, PageID# 165-67, ¶¶ 110-14, 116.[7]

Xavier cites to *Pattie v. Coach, Inc.*, 29 F. Supp. 3d 1051, 1057 (N.D. Ohio 2014) in its attempt to pick apart the substantial similarities between the allegations against Xavier and cases cited in the Amended Complaint. *See* Doc. 13, PageID# 211 ("In *Pattie v. Coach, Inc.*, the Court dismissed the class []CSPA claim because the plaintiff cited to cases involving out-of-store advertisements, while the plaintiff's concerned the distribution of in-store coupons."). Although at first glance in store coupons may appear similar to out of store advertisements, the effect they have on consumers (*i.e.*, the underlying reason the conduct is deceptive) is entirely different. *See Pattie*, 29 F. Supp. 3d at 1057 ("Out-of-store advertisements reach consumers and persuade them to travel to or to enter a retail premises, while in-store advertisements or coupons, handed out after a consumer has already decided to enter a store, do not."). The issues plaguing the notice cases in *Pattie* are not shared by the cases cited as notice in the Amended Complaint, which each involve effects on consumers substantially similar to the allegations against Xavier.

### c. *The Ohio Administrative Code provides sufficient notice under the CSPA.*

In addition to publicly available court decisions, "[p]rior notice may also be in the form of 'an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code.'" *Marrone*, 2006-Ohio-2869 at ¶ 22. "These substantive rules

---

[7] The non-education notice cases cited by Plaintiff cannot be distinguished, as Xavier attempts to do, simply by arguing that they are from "unrelated industries." *See* Motion, Doc. 13, PageID# 214-15 (discussing the non-education cases cited in the Amended Complaint at PageID# 168-69, ¶ 118). Similarity is all that is required, not identity. For example, in *Bartell v. LTF Club Operations Co., Inc.* No. 2:14-cv-401, 2015 WL 1730415 (S.D. Ohio Apr. 14, 2015), the court held that the fitness industry was sufficiently similar to the dating service industry because both were "(1) services; (2) provided over an extended period of time; (3) with monthly payments." *Bartell*, 2015 WL 1730415, at *10. The gist of this case is that Xavier failed to provide promised services that had been paid for. The non-education cases cited by Plaintiff put Xavier on notice that its conduct in this regard violates the CSPA. Amended Complaint, PageID# 167-69, ¶ 118.

are liberally construed and applied to promote their purposes and policies, with such purposes and policies being to: (a) define with reasonable specificity acts and practices which violate R.C. 1345.02 or 1345.03; (b) protect consumers from suppliers who engage in referral selling, commit deceptive acts or practices, or commit unconscionable acts or practices; and (c) encourage the development of fair consumer sales practices." *Renner v. Procter & Gamble Co.*, 54 Ohio App.3d 79, 86, 561 N.E.2d 959, 966 (4th Dist. 1988) (citation omitted). Under *Marrone*, the same "substantial similarity" requirement for notice that applies to court decisions also applies to the rules in the Ohio Administrative Code. *See Marrone*, 2006-Ohio-2869 at ¶ 24.

Here, Plaintiff identified provisions of three administrative code sections providing Xavier notice under the CSPA. *See* Amended Complaint, Doc. 11, PageID# 169-71, ¶¶ 119-22. Xavier asserts *Marrone* held the rules in Ohio Adm. Code § 109:4-3 were too generic to constitute notice under the CSPA. *See* Motion, Doc. 13, PageID# 27. Considering all rules adopted by the Attorney General under R.C. 1345.05(B)(2) are found in Ohio Adm. Code 109:4-3, Xavier's interpretation of *Marrone* would have the effect of completely proscribing the Attorney General's ability to promulgate rules that constitute notice as permitted by R.C. 1345.05(B)(2) and R.C. 1345.09(B). Such an interpretation is both absurd and plainly contrary the holding of *Marrone*.

*Marrone* merely held that one specific rule in Ohio Adm. Code 109:4-3 (Ohio Adm. Code 109:4-3-10) was too generic to constitute notice under the CSPA. *See Marrone*, 2006-Ohio-2869 at ¶ 23 ("The plaintiffs rely on Ohio Adm. Code 109:4-3-10, which states that it is a deceptive act or practice for a supplier to make any representations in the absence of a reasonable basis in fact….[W]e hold that this rule is insufficient to provide prior notice under R.C. 1345.09(B) because it does not refer to any particular act or practice."). Although dicta,[8] Plaintiff also acknowledges *Marrone*

---

[8] In *Marrone*, the applicability of Ohio Adm. Code 109:4-3-02 was not at issue in the case and was instead merely mentioned in passing.

indicated Ohio Adm. Code 109:4-3-02 was similarly generic. *See id.* at ¶ 20. However, these two rules, read together with the other Ohio Administrative Code provisions and cases cited in the Amended Complaint, make it even more apparent that Xavier had sufficient notice its conduct violated CSPA. *See, e.g., Beard v. Dominion Homes Fin. Servs., Inc.*, 2:06-cv-00137, 2007 WL 2838934, at *9 (S.D. Ohio Sept. 26, 2007) (decided after *Marrone*, yet finding Ohio Adm. Code 109:4-3-02, in conjunction with other citations, sufficient to provide notice).

Furthermore, Xavier fails to make any argument regarding Ohio Adm. Code 109:4-3-09(A)(2), which states:

(A) It shall be a deceptive act or practice in connection with a consumer transaction for a supplier:

(2) To accept money from a consumer for goods or services ordered by mail, telephone, the internet, or otherwise and then permit eight weeks to elapse without:

(a) Making shipment or delivery of the goods or services ordered;

(b) Making a full refund;

(c) Advising the consumer of the duration of an extended delay and offering to send the consumer a refund within two weeks if the consumer so requests; or

(d) Furnishing similar goods or services of equal or greater value as a good faith substitute if the consumer agrees.

Unlike Ohio Adm. Code 109:4-3-10(A), Section 109:4-3-09(A)(2)  is not so broad that it would allow *any* deceptive act to fall under its purview. Rather, it applies to the specific act or practice of accepting money in exchange for the performance of a service and then allowing eight weeks to elapse without performing the service or offering a refund. This is exactly what has been alleged

against Xavier here.[9] *See* Amended Complaint, Doc. 11, PageID# 143, 153-56, 159, 165-66, 169-70, ¶¶ 6, 53-60, 74, 107, 115 (Xavier promised to provide, and accepted money for, in person simulation labs and clinical learning. In March 2020, Xavier stopped providing in person clinicals and simulation labs. Yet, as of the filing of the Amended Complaint on October 2, 2020, it had not offered to provide refunds). Therefore, Ohio Adm. Code 109:4-3-09(A)(2) is substantially similar to the allegations against Xavier and constitutes sufficient notice under R.C. 1345.09(B).

### E. Plaintiff Does Not Make "Educational Malpractice" Claims.

Despite numerous recent court decisions (including several in Ohio) on substantially similar arguments, each denying defendants' motions, Xavier suggests that this Court should take an uncharted road and find Plaintiff's well-pled allegations are no more than educational malpractice claims. There is, however, no need for the Court to attempt to re-cast Plaintiff's claims.

In fact, Xavier concedes that Plaintiff does not "explicitly state that the education Xavier provided was inadequate." *See* Motion, Doc. 13, PageID# 219. Based upon this concession alone, given the current posture of the case, the Court should not delve into the educational malpractice issues raised by Xavier.

#### 1. Plaintiff's breach of contract claims are not educational malpractice claims.

Xavier is not the first university to argue that breach of contract claims brought against universities amidst the COVID-19 pandemic is really an educational malpractice claim in disguise.

---

[9] Xavier's discussion of *Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 680 (6th Cir. 2017) is inapposite. In *Gerboc*, the plaintiff cited to Ohio Adm. Code 109:4-3-12 as providing notice that the defendant, an online retailer with no physical store locations, violated the CSPA with its online advertising. *See id.* However, as noted by the court, the language of Ohio Adm. Code 109:4-3-12 makes clear that it only applies to retailers with physical store locations. *See id.* ("by its own terms, this rule applies only to 'representation[s] made by a supplier *outside of its interior premises*.'") (emphasis in original) (quoting Ohio Adm. Code 109:4-3-12(B)(3)). Unlike the situation in *Gerboc*, Xavier's failure to provide refunds for services it accepted money for but never performed fits neatly within the plain language of Ohio Adm. Code 109:4-3-09(A)(2).

*See, e.g., Smith*, 2020 WL 5694224, at *2 ("The mere mention of possible consequences to plaintiffs educational or professional future does not render plaintiffs[sic] complaint a claim for educational malpractice."); *see also Waitt*, 2020 WL 5894543, at *2. This Court should not be the first to give credence to such an argument.

Again, Xavier ignores the plain language of the Amended Complaint, which states clearly as follows:

> The promise of hands-on training to ABSN students was incorporated in the contract between them and Xavier. Plaintiff does not bring this action suggesting that a difference of opinion in pedagogy is at stake. Rather, plaintiff brings this action because Xavier failed to provide what was promised, and what it continues to promise on its website

Amended Complaint, Doc. 11, PageID# 146, ¶ 17.

The issue raised by Plaintiff's breach of contract claim is not whether Xavier fell below a specific standard of care that asks the Court to question the quality of the education; rather, the question before the court is whether Xavier failed to deliver on promises related to clinical and hands on education and received tuition and fees in exchange for those promises. Xavier's suggestion that students pay only for a diploma runs contrary to reality and common sense. Reducing the contract to such general terms would allow Xavier to fail to deliver the promises in the Handbook and website, pandemic or not, and claim it has kept its side of the bargain as long as it provides a diploma.

Xavier is essentially saying it can market clinicals as being an important aspect of the education, the student handbook can provide sample curricula including clinicals, and Xavier can tout universal licensure in the United States based on clinicals, but in the end, these statements are meaningless and unreliable, and cause no harm as long as Xavier provides a piece of paper in the form of a degree. This is untenable.

Finally, *Baker v. Oregon City Schools*, 6th Dist. No. L-11-1109, 2012-Ohio-972 offers Xavier little assistance. In that case, the plaintiffs/appellants appealed the trial court's grant of summary judgment, finding their negligence claims were actually educational malpractice claims, and that there

34

was no contract. *Id*. at ¶ 5. Here, this case is at the pleadings stage, Plaintiff has pled no negligence, or any other common law tort, claim, and Xavier does not dispute that there is at least one contract.

Plaintiff has not alleged an educational malpractice claim; this Court should not recast Plaintiff's contract claims as anything but what they are in the pleadings.

### 2. Plaintiff's CSPA claims are not for educational malpractice.

Similarly, Plaintiff's explicit CSPA claims should not be recast as educational malpractice claims. CSPA claims against education providers that do not challenge the quality of education are widely accepted in Ohio. *See, e.g.*, *Ajibola*, 2018-Ohio-4449 at ¶¶ 3, 37 (allegations challenging misrepresentations about nursing licensure and clinical training "go beyond those found to present only a non-cognizable claim for educational malpractice.").

Unlike Plaintiff's allegations here, none of the cases Xavier cites involve claims under the CSPA. *See* Motion, Doc. 13, PageID# 219. And ironically, the only Ohio case Xavier cites, *Lemmon v. Univ. of Cincinnati*, 112 Ohio Misc. 2d 23, 750 N.E.2d 668 (Ct. Cl. 2001), cited approvingly of *Malone v. Acad. of Court Reporting*, 64 Ohio App.3d 588, which held that a claim under the CSPA *did not* constitute a claim for educational malpractice.

Plaintiff's CSPA claims do not challenge the quality of education provided by Xavier. Rather, her CSPA claims stem from Xavier's various misrepresentations, failure to provide promised services, and failure to provide refunds. *See* Amended Complaint, Doc. 11, PageID# 165-67, ¶¶ 106-16. Therefore, Plaintiff's CSPA claims "go beyond those found to present only a non-cognizable claim for educational malpractice." *Ajibola*, 2018-Ohio-4449 at ¶ 37.

## V. CONCLUSION

For the reasons listed herein, Plaintiff respectfully requests this Court deny Xavier's Motion in its entirety.

Respectfully submitted,

/s/ *Terence R. Coates*
Terence R. Coates (0085579)
W.B. Markovits (0018514)
Zachary C. Schaengold (0090953)
MARKOVITS, STOCK & DE MARCO, LLC
3825 Edwards Rd., Suite 650
Cincinnati, Ohio 45209
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*tcoates@msdlegal.com*
*bmarkovits@msdlegal.com*
*zschaengold@msdlegal.com*

and

Joseph M. Lyon (0076050)
THE LYON FIRM
2754 Erie Avenue
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 721-1178
*jlyon@thelyonfirm.com*

*Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on December 11th, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Terence R. Coates*
Terence R. Coates (0085579)