IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| XIMENA MIRANDA, *et al.*, | : | CASE NO. 1:20-CV-00539-TSB |
| | : | |
| Plaintiff | : | JUDGE TIMOTHY S. BLACK |
| | : | |
| v. | : | |
| | : | XAVIER UNIVERSITY'S REPLY IN |
| XAVIER UNIVERSITY, | : | SUPPORT OF ITS MOTION TO DISMISS |
| | : | PLAINTIFF'S AMENDED CLASS ACTION |
| Defendant. | : | COMPLAINT |

**COMBINED TABLE OF CONTENTS AND SUMMARY
PURSUANT TO S.D. OHIO CIV. R. 7.2(A)(3)**

**INTRODUCTION** …………………………………………………………………………... 1

**ARGUMENT** ……………………………………………………………………………… 4

**I. Ms. Miranda has failed to state a claim for breach of contract.** …………………………… 4

**A. There is no breach of contract related to the transition from in-person instruction to remote instruction.** …………………………………………………... 4

**1. The Handbook authorized the transition to distance learning.** ……………... 4

The Handbook contains an express reservation of rights, which authorized Xavier to make the adjustments to the curriculum that it did in response to the pandemic, and Ohio law is clear that such unambiguous contractual terms must be applied as written. *See, e.g.*, *Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.*, 150 N.E.3d 28, 31 (Ohio 2019).

**2. The other Ohio COVID-19 cases to which Ms. Miranda cites are not on point because they do not involve a reservation of rights like the one in Ms. Miranda's contract.** …………………………………………………………….. 6

Not one of the other Ohio COVID-19 cases on which Ms. Miranda relies contains a similar reservation of rights; these cases, therefore, do not control the analysis here.

**3. Xavier and Ms. Miranda do not have an implied-in-fact contract to provide in-person instruction.** …………………………………………………………... 6

Ms. Miranda's claim that the statements on Xavier's website created an implied contract with the school fails because there is an express contract governing her relationship with the University, and in Ohio, there cannot be "an express agreement and an implied contract for the same thing existing at the same time." *Waltherr-Willard v. Mariemont City Sch.*, No. 1:12-CV-476-HJW, 2013 WL 121970, at *4 (S.D. Ohio Jan. 9, 2013) (quoting *Warren v. Trotwood–Madison City School Dist. Bd. of Educ.*, 1999 WL 148233 at *7–8 (Ohio Ct. App. 1999)), *aff'd*, 601 F. App'x 385 (6th Cir. 2015); *Williams v. Nat'l Ass'n for Advancement of Colored People*, 135 N.E.3d 1260, 1268 (Ohio Ct. App. 2019).

**4. Ms. Miranda cannot argue that she was injured by the transition to remote learning.** ……………………………………………………………………… 9

To prove she was injured by the transition to distance learning, Ms. Miranda must show that the remote instruction she received was inferior to the traditional model, but to do so requires this Court to undertake an impermissible evaluation of the quality of the education provided by the University during the pandemic. *Hutchings v. Vanderbilt Univ.*, 55 F. App'x 308, 310 (6th Cir. 2003).

i

**5.    Ms. Miranda ratified any supposed breach by continuing to take classes. … 11**

By continuing to benefit from the instruction provided by Xavier, earning credits towards her degree, and re-enrolling for the summer and fall terms, Ms. Miranda has demonstrated her intent to ratify the transition to distance learning. *See, e.g.*, *Willoughby Supply Co., Inc. v. Villhauer*, 113 N.E.3d 973, 978 (Ohio Ct. App. 2018).

**B.    Ms. Miranda has failed to plead a breach of contract claim related to her insurance fee. …………………………………………………………….. 13**

Ms. Miranda does not dispute that the Handbook required her to pay the non-refundable insurance fee upon her enrollment in practicum courses, and she has identified no viable basis for ignoring this unambiguous contractual requirement.

**C.    Ms. Miranda has failed to plead a breach of contract claim related to her Student Activity Fee. …………………………………………………….. 15**

Ms. Miranda has failed to allege any breach with respect to the Student Activity Fee, as she complains only that student activities were not provided during the pandemic, but fails to offer any facts demonstrating that Xavier promised to do so.

**II.    Ms. Miranda cannot plead unjust enrichment in the alternative. …………………. 17**

Ms. Miranda cannot maintain an unjust enrichment claim in the alternative to her breach of contract claim because, while she admits that alternative pleading is only permissible where the existence of the contract is in dispute, she never alleges such a dispute exists here. *Zahn v. Ohio Univ.*, 2020 Ohio Misc. LEXIS 230, *9 (Ohio Ct.Cl. Oct. 19, 2020); *Smith v. The Ohio State University*, No. 2020-00321JD, 2020 WL 5694224, at *2 (Ohio Ct.Cl. Sep. 09, 2020).

**III.    Ms. Miranda cannot plead promissory estoppel in the alternative. ……………….. 17**

Like her unjust enrichment claim, Ms. Miranda cannot plead promissory estoppel in the alternative because she does not dispute the existence of a contract with Xavier and "[w]here the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel." *O'Neill v. Kemper Ins. Companies*, 497 F.3d 578, 583 (6th Cir. 2007) (quoting *Terry Barr Sales Agency, Inc. v. All–Lock Co., Inc.*, 96 F.3d 174, 181 (6th Cir. 1996) (internal quotation marks omitted)).

IV. **The OCSPA does not apply to Ms. Miranda's claims and cannot be maintained as a class action.** ............................................................................... 18

    A.     **The OCSPA does not apply because Ms. Miranda's enrollment in nursing school is not a consumer transaction.** ............................................. 18

Ms. Miranda does not dispute that she enrolled in the ABSN program in order to become a nurse, and Sixth Circuit and Ohio law makes clear that such transactions that are undertaken for professional—not personal—reasons are not subject to the OCSPA. *MacDonald v. Thomas M. Cooley Law School*, 724 F.3d 654, 660 (6th Cir. 2013); *Freeman v. Curry*, No. 14CV1010268, 2015 WL 12602384, at \*3 (Ohio Com. Pl. Oct. 06, 2015); *Caley v. Glenmoor Country Club, Inc.*, 1 N.E.3d 471, 483 (Ohio Ct. App. 2013); *Flex Homes, Inc. v. Ritz-Craft Corp. of Michigan*, No. 07CV1005, 2009 WL 3242140, at \*12 (N.D. Ohio Sept. 30, 2009), *aff'd sub nom. Flex Homes, Inc. v. Ritz-Craft Corp of Michigan, Inc.*, 491 F. App'x 628 (6th Cir. 2012); *Giffin v. Crestview Cadillac*, No. 09AP–278, 2009 WL 4809862, at \*6-7 (Ohio Ct. App. 2009); *Cockrell v. Willett*, No. 93 CA 1945, 1994 WL 420916, at \*2–3 (Ohio Ct. App. Aug. 5, 1994).

    B.     **Ms. Miranda has failed to identify a case or Code provision that could satisfy the notice requirement necessary to maintain a class action.** .................. 20

    1.     **Ms. Miranda has not identified any final determination by a court to put Xavier on notice.** ............................................................... 20

Ms. Miranda concedes that only a final determination by a court can put Xavier on notice that its conduct could violate the OCSPA. While she identifies four cases that she claims provided notice, three of them are legally insufficient in this regard because they are merely decisions on a motion to dismiss and therefore are not "final determinations" under Ohio law. The final decision does not conclude that the defendant's conduct violated the Act, but rather determined that there was a question of fact regarding whether the defendant's statements were deceptive. Thus, none of the cases she identified could possibly have put Xavier on notice.

    2.     **The Ohio Administrative Code provisions Ms. Miranda claims provided notice are too generic or not relevant.** .............................................. 22

Similarly, in her Amended Complaint she asserted that three Code provisions could have provided notice, but in her Opposition, she concedes that two are simply too generic, and the final provision is inapposite because it relates to the timely delivery of goods, which is not at issue here.

V.     **Ms. Miranda cannot plead around the fact that her lawsuit asserts nothing but educational malpractice claims.** ............................................................ 23

While Ms. Miranda argues that her lawsuit is just about whether there was a breach of contract when Xavier transitioned to remote learning, she must demonstrate some injury arising from this purported breach, which she cannot do unless the distance learning alternative was academically inferior to the traditional method. But Ohio law is clear that Courts will not entertain such claims related to the quality of education delivered. *Buescher v. Baldwin Wallace University*, No. 1:13

CV 2821, 2014 WL 1910907 (N.D. Ohio May 12, 2014); *Adams v. Antonelli Coll.*, 304 F. Supp. 3d 656, 665 (S.D. Ohio 2018); *Borden v. Antonelli Coll.*, 304 F. Supp. 3d 678, 688 (S.D. Ohio 2018).

**CONCLUSION** .................................................................................. **25**

**CERTIFICATE OF SERVICE** ............................................................ **26**

# TABLE OF AUTHORITIES

**Cases**

*A.G. by & through N.G. v. Cmty. Ins. Co.,*
363 F. Supp. 3d 834 (S.D. Ohio 2019) ............................................................................. 10

*Ajibola v. Ohio Med. Career Coll., Ltd.,*
122 N.E.3d 660 (Ohio Ct. App. 2018) ........................................................................... 20, 21

*Adams v. Antonelli Coll.,*
304 F. Supp. 3d 656 (S.D. Ohio 2018) ............................................................................. 24

*AFCO Credit Corp. v. Brandywine Ski Center, Inc.,*
610 N.E.2d 1032 (Ohio Ct. App. 1992) ........................................................................... 12

*American Greetings, Corp v. Cookie Jar Entertainment, Inc.,*
No. 1:09-cv-1056, 2009 WL 3713686 (N.D. Ohio Nov. 3, 2009) ........................................... 12, 13

*Baily v. Midwestern Ent., Inc.,*
103 Ohio App.3d 181, 658 N.E.2d 1120 (10th Dist. 1995) ................................................... 11

*Baker v. Oregon City Schools,*
No. L-11-1109, 2012 WL 762482 (Ohio Ct. App. Mar. 9, 2012) ........................................... 24

*Beard v. Dominion,*
2:06-cv-00137, 2007 WL 2838934 (S.D. Ohio Sept. 26, 2007) ........................................... 22

*Beukas v. Bd. of Tr. of Fairleigh Dickinson Univ.,*
605 A.2d 776 (N.J. Super. Ct. Law. Div. 1991) ................................................................. 5

*Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.,*
150 N.E.3d 28 (Ohio 2019) ......................................................................................... 5

*Borden v. Antonelli Coll.,*
304 F. Supp. 3d 678 (S.D. Ohio 2018) ............................................................................. 24

*Bruner v. Petersen,*
944 P.2d 43 (Alaska 1997) ........................................................................................... 5

*Buescher v. Baldwin Wallace University,*
No. 1:13 CV 2821, 2014 WL 1910907 (N.D. Ohio May 12, 2014) ........................................ 23, 24

*Byler v. Air Methods Corp.,*
823 F. App'x 356 (6th Cir. 2020) ................................................................................... 15

*Caley v. Glenmoor Country Club, Inc.*,
1 N.E.3d 471 (Ohio Ct. App. 2013)...................................................................20

*Campanella v. Commerce Exch. Bank*,
745 N.E.2d 1087 (Ohio Ct. App. 2000) ...........................................................16

*Campbell v. Hosp. Motor Inns, Inc.*,
493 N.E.2d 239 (Ohio Ct. App. 1986) .............................................................13

*Cockrell v. Willett*,
No. 93 CA 1945, 1994 WL 420916 (Ohio Ct. App. Aug. 5, 1994) ...............20

*Computel, Inc. v. Emery Air Freight Corp.*,
919 F.2d 678 (11th Cir. 1990) .........................................................................12

*Cross v. Univ. of Toledo*,
Ct. of Cl. No. 2020-00274JD, 2020 WL 4726814 (July 8, 2020) ....................6

*Doherty v. S. Coll. of Optometry*,
862 F.2d 570 (6th Cir. 1988)..............................................................................5

*Dunn v. Bruzzese*,
874 N.E.2d 1221 (Ohio Ct. App. 2007) ...........................................................15

*Flex Homes, Inc. v. Ritz-Craft Corp of Michigan, Inc.*,
491 F. App'x 628 (6th Cir. 2012)......................................................................20

*Flex Homes, Inc. v. Ritz-Craft Corp. of Michigan*,
No. 07CV1005, 2009 WL 3242140 (N.D. Ohio Sept. 30, 2009) ....................20

*Foster v. Health Recovery Servs., Inc.*,
No. 2:19-CV-4453, 2020 WL 5943021 (S.D. Ohio Oct. 7, 2020) ..................15

*Freeman v. Curry*,
No. 14CV1010268, 2015 WL 12602384 (Ohio Com. Pl. Oct. 06, 2015).......19

*Gibson v. Lynn University Inc.*,
No. 20-cv-81173, 2020 WL 7024463 (S.D. Fla. Nov. 29, 2020) ...................13

*Giffin v. Crestview Cadillac*,
No. 09AP–278, 2009 WL 4809862 (Ohio Ct. App. 2009) .............................20

*Gourdine v. Felician Coll.*,
No. A-5248-04T3, 2006 WL 2346278 (N.J. Super. Ct. App. Div. Aug. 15, 2006) .......................5

*Gregory v. W. Clermont Local Sch. Dist. Bd. of Educ.*,
414 F. Supp. 3d 1064 (S.D. Ohio 2019) ........................................................ 11

*Hacker v. National College of Business & Technology*,
927 N.E.2d 38 (Ohio Ct. App. 2010) ........................................................ 21, 22

*Hill v. Ohio State Univ. T & L*,
No. 2:12-CV-984, 2013 WL 2354069 (S.D. Ohio May 29, 2013) ................ 14

*Hutchings v. Vanderbilt Univ.*,
55 F. App'x 308 (6th Cir. 2003) ................................................................ 10

*Krueck v. Youngstown State Univ.*,
131 N.E.3d 1030 (Ohio Ct. App. 2018) ...................................................... 21

*Leiby v. Univ. of Akron*,
No. 05AP-1281, 2006 WL 1530152 (Ohio Ct. App. June 6, 2006) ............. 10

*MacDonald v. Thomas M. Cooley Law School*,
724 F.3d 654 (6th Cir. 2013) .................................................................. 18, 19

*Malone v. Academy of Court Reporting*,
88 N.E.2d 54 (Ohio Ct. App. 1990) ............................................................ 21

*McDermott v. The Ohio State Univ.*,
Ct. of Cl. No. 2020-00286JD, 2020 WL 5239892 (Aug. 24, 2020) ............ 10

*McKee v. McCann*,
102 N.E.3d 38 (Ohio Ct. App. 2017) .......................................................... 11

*McWhorter v. Elsea, Inc.*,
No. 2:00-CV-473, 2007 WL 1101249 (S.D. Ohio Apr. 11, 2007) ............... 23

*Montessori Children's House of Durham v. Blizzard*,
781 S.E.2d 511 (N.C. 2016) ........................................................................ 7

*Moore v. Vanderloo*,
386 N.W.2d 108 (Iowa 1986) ...................................................................... 6

*NetJets, Inc. v. Binning*,
No. 04AP-1257, 2005 WL 1806460 (Ohio Ct. App. Aug. 2, 2005) ............. 13

*O'Neill v. Kemper Ins. Companies*,
497 F.3d 578 (6th Cir. 2007) ...................................................................... 17

*Ottney v. Al Sobb's Auto & Truck Frame Serv., Inc.*,
112 N.E.3d 927 (Ohio Ct. App. 2018) ...................................................................................23

*Paar v. Jackson Township Board of Trustees*,
No. 2003-CA-00334, 2004 WL 2348523 (Ohio Ct. App. Oct. 18, 2004) ....................................18

*Randleman v. Fid. Nat. Title Ins. Co.*,
465 F. Supp. 2d 812 (N.D. Ohio 2006) ...................................................................................15

*Rockwood v. Shoen*,
145 F. Supp. 3d 718 (S.D. Ohio 2015) ...................................................................................10

*Rosado v. Barry University Inc.*,
No. 1:20-cv-21813, 2020 WL 6438684 (S.D. Fla. Oct. 30, 2020) .................................................13

*Savett v. Whirlpool Corp.*,
No. 12 CV 310, 2012 WL 3780451 (N.D. Ohio Aug. 31, 2012) ....................................................21

*Shifrin v. Forest City Enterprises, Inc.*,
597 N.E.2d 499 (Ohio 1992) ...................................................................................14

*Smith v. The Ohio State University*,
No. 2020-00321JD, 2020 WL 5694224 (Ohio Ct.Cl. Sept. 9, 2020)........................................6, 17

*Suhail v. Univ. of the Cumberlands*,
107 F. Supp. 3d 748 (E.D. Ky. 2015).....................................................................................5

*Terry Barr Sales Agency, Inc. v. All–Lock Co., Inc.*,
96 F.3d 174 (6th Cir. 1996)....................................................................................17

*Total Benefits Planning Agency Inc. v. Anthem Blue Cross & Blue Shield*,
630 F. Supp. 2d 842 (S.D. Ohio 2007) ....................................................................................1

*Waitt v. Kent State Univ.*,
Ct. of Cl. No. 2020-00392JD, 2020 WL 5894543 (Sept. 28, 2020)...............................................10

*Waltherr-Willard v. Mariemont City Sch.*,
No. 1:12-CV-476-HJW, 2013 WL 121970 (S.D. Ohio Jan. 9, 2013) ...................................7, 8, 18

*Warren v. Trotwood–Madison City School Dist. Bd. of Educ.*,
1999 WL 148233 (Ohio Ct. App. 1999)), *aff'd*, 601 F. App'x 385 (6th Cir. 2015) .......................7

*Williams v. Nat'l Ass'n for Advancement of Colored People*,
135 N.E.3d 1260 (Ohio Ct. App. 2019) ...................................................................................7

*Willoughby Supply Co., Inc. v. Villhauer*,
113 N.E.3d 973 (Ohio Ct. App. 2018) ................................................................11

*Zahn v. Ohio University*,
Ct. of Cl. No. 2020-00371JD, 2020 Ohio Misc. LEXIS 230 (Oct. 9, 2020) ........................ 6, 9, 17

**Statutes**

Mich. Comp. Laws Ann. § 445.902 .................................................................18

Mich. Comp. Laws Ann. § 445.903 .................................................................18

Ohio Rev. Code § 1345.01 ...........................................................................18

Ohio Rev. Code § 1345.02 ...........................................................................18

 Ohio Rev. Code § 1345.09 .........................................................................20, 22

**Other Authorities**

Ohio Adm. Code 109:4-3-02 .........................................................................22

 Ohio Adm. Code 109:4-3-09 ........................................................................22

 Ohio Adm. Code 109:4-3-10 ........................................................................22

Professional Licensure Disclosure Statement, Professional Licensure by State: Nursing
https://www.xavier.edu/professional-licensure/documents/nursing-state-requirements-table
07282020.pdf ...........................................................................................10

## INTRODUCTION

Ms. Miranda's Opposition to Xavier's Motion to Dismiss serves only to confirm that her Amended Complaint could succeed only if the Court pretends that the COVID-19 pandemic never happened. Ms. Miranda goes so far as to say that the Court should not consider that Xavier made decisions in the context of an emerging pandemic because that is part of an "alternative set of facts or narrative" for pleading purposes. (*See* Opp'n 8, ECF No. 15, at PageID 323.) While the fact of the pandemic and the precautions required to slow its spread may be an alternative narrative to the Amended Complaint, they are not an alternative to the world that Xavier (and everyone else) faced when it made the decisions that Ms. Miranda complains of.[1] We all wish that the pandemic did not exist, but none of us can ignore it. And a Complaint that succeeds only if the Court does so must be dismissed.

In her Complaint and her Opposition, Ms. Miranda contends that Xavier should have persisted in face-to-face instruction and clinical placements notwithstanding the highly contagious and lethal nature of COVID-19, the acute shortages of personal protective equipment in the clinical settings, and the government directives to shelter in place. This notion is not grounded in reality.[2] The decision to transition to remote learning was the obvious and only choice to protect Xavier's students, instructors, and clinical partners.

---

[1] These facts are all based on public records that the Court is permitted to consider on a motion to dismiss. *See Total Benefits Planning Agency Inc. v. Anthem Blue Cross & Blue Shield*, 630 F. Supp. 2d 842, 849 (S.D. Ohio 2007). (Not to mention the common experience of every person on the planet.)

[2] Nor does this suggestion actually help Ms. Miranda's case. If Xavier continued as normal, as Ms. Miranda suggests it should have, surely some students would have felt uncomfortable attending in-person. But if they chose to withdraw in order to protect their health and the safety of their families, they would not be eligible for a return of their tuition because the refund period had expired at that point. (*See* Mot. 9, ECF No. 13, at PageID 197 (noting that no refunds are available following the 35th calendar day of the semester).)

1

But even if the Court feels constrained to ignore the facts of the pandemic at this stage of the litigation, Ms. Miranda's claims should be dismissed.

*Breach of contract*

**Distance Learning.** Ms. Miranda does not dispute that the Undergraduate Nursing Student Handbook (the "Handbook") governs her relationship with Xavier. This document specifically empowered Xavier to implement distance learning, and Ms. Miranda offers no compelling basis for ignoring this explicit reservation of rights. Ms. Miranda instead argues that the statements on Xavier's website created an implied contract for in-person instruction, but this argument fails because she admits that the Handbook addresses the same information appearing online, and the law is clear that the existence of an express contract precludes finding implied contract rights. Moreover, even if she could prove a breach, she cannot actually show that she was injured without requiring this Court to examine each course taught by distance learning and compare it to the traditional model to determine whether the remote instruction was inferior. But courts refuse to undertake such evaluations of the quality of the education provided—a fact Ms. Miranda does not deny.

**Insurance fee.** Ms. Miranda concedes that the Handbook expressly required her to pay the professional liability insurance fee upon her enrollment in January in a practicum course and further admits that the Handbook provides that, once paid, the fee was non-refundable. Thus, she has no basis to argue that she did not have to pay the fee or that it should be returned.

**Activities fee.** Ms. Miranda argues that Xavier impliedly contracted to provide student activities. But even if that were true, she fails to identify any breach of this agreement because she does not deny that Xavier did, in fact, provide student activities prior to the pandemic. Thus, she cannot identify any promise Xavier failed to keep.

*Unjust enrichment and promissory estoppel*

Ms. Miranda argues only that she should be permitted to plead these claims in the alternative to her breach of contract claim. But that is true only when the existence of a contract between the parties is in dispute, and her Opposition expressly and repeatedly alleges that she has a contract with Xavier. These claims cannot stand.

*OCSPA claim*

Ms. Miranda's OCSPA claim fares no better, as she cannot even establish that the Act applies to her enrollment at Xavier. She has no answer to the Sixth Circuit case holding that when a student enrolls in a school in order to advance his or her professional prospects, it is not a consumer transaction and therefore not subject to consumer protection statutes—except to say that the case is from Michigan. But Ohio law likewise recognizes that purchases made for professional purposes are not consumer transactions. So, Ms. Miranda's claims do not even fall within the ambit of the OCSPA.

And while she admits that to maintain a class action she must establish that Xavier was on notice (either through a decision by a court determining that the conduct at issue violated the OCSPA or through a provision of the Code declaring the particular act deceptive or unconscionable) that its conduct purportedly violated the OCSPA, she fails to identify any such notice. Indeed, she cannot identify any case that could have properly put Xavier on notice that any of its supposed conduct could have violated the OCSPA. Similarly, she concedes that two of the Code sections she claims provided notice are too generic for this purpose, and the final section she identifies is simply irrelevant.

Ms. Miranda's Amended Complaint should be dismissed in its entirety.

## ARGUMENT

I. **Ms. Miranda has failed to state a claim for breach of contract.**

    A. **There is no breach of contract related to the transition from in-person instruction to remote instruction.**

        1. **The Handbook authorized the transition to distance learning.**

Ms. Miranda does not dispute that her relationship with Xavier is governed by the express terms of the Handbook. Nor does she contest that the Handbook contains an unambiguous reservation of rights, which provides that the "[f]aculty reserves the right to change the curriculum if deemed necessary for the progressive development of the program." (Def.'s Mot. to Dismiss ("Mot.") Ex. A 54, ECF No. 13-1, at PageID 281.) These two concessions foreclose Ms. Miranda's breach of contract argument. In response to the emergency circumstances created by COVID-19, Xavier did exactly what it was permitted to do under the plain language in the reservation of rights: Xavier made changes to the curriculum to respond to the developments in the program requiring the transition to remote learning.

Unable to escape this plain language, Ms. Miranda suggests that it should mean something different because it appears "next to an asterisk at the bottom of a page on grading and course progression." (*See* Opp'n 10, ECF No. 15, at PageID 325.) She does not provide any authority holding that the clear terms of a contract should be ignored simply because they appear at the bottom of the page. Moreover, Ms. Miranda mischaracterizes the context of this provision in an effort to make it seem less important; in reality, the reservation appears in the section on "Undergraduate Program Curricular Policies" (to which the provision plainly relates) and it is distinguished from the rest of the text by being written in a different font and called out by an asterisk, signifying its importance:

*Faculty reserves the right to change the curriculum if deemed necessary for the progressive development of the program. For further information on grading policies, consult the University catalog.*

4

Furthermore, Ohio law is clear that unambiguous terms of a contract are enforced as written. *See, e.g.*, *Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.*, 150 N.E.3d 28, 31 (Ohio 2019) ("[I]f the language of a contract is plain and unambiguous, [courts] enforce the terms as written.").[3] Ms. Miranda does not allege that this language is ambiguous, so it must be enforced as it appears in the Handbook, which plainly authorizes Xavier to adjust the curriculum under these circumstances where it became necessary to deliver the substantive instruction remotely.

Ms. Miranda's only other argument is to suggest that this provision was not actually triggered because the shift to remote learning was not in fact "'necessary for the progressive development of the program'" and that the "'progressive' approach" would have been to continue with in-person instruction. (Opp'n, ECF No. 15, at PageID 325.) It is astonishing that Ms. Miranda actually suggests that in-person instruction should have continued despite the obvious and profound health risks. Regardless, which curricular approach was best suited to the progressive development of the program is quite obviously an academic decision that must, as a matter of law, be left to the discretion of the school. *See Doherty v. S. Coll. of Optometry*, 862 F.2d 570, 576 (6th Cir. 1988) ("The federal judiciary is ill equipped to evaluate the proper emphasis and content of a school's curriculum."); *Suhail v. Univ. of the Cumberlands*, 107 F. Supp. 3d 748, 757 (E.D. Ky. 2015) ("Universities are afforded great deference in developing their academic curriculum."); *Bruner v. Petersen*, 944 P.2d 43, 48 (Alaska 1997) ("In matters of

---

[3] Moreover, Ms. Miranda's argument that Xavier reads the language in the reservation too broadly is contradicted by the cases in which courts ruled that similar provisions permitted schools to dissolve entire colleges or programs. *See, e.g.*, *Gourdine v. Felician Coll.*, No. A-5248-04T3, 2006 WL 2346278, at *4–5 (N.J. Super. Ct. App. Div. Aug. 15, 2006) (no breach of contract arising from termination of plaintiff's program because college had reserved right to eliminate program in which plaintiffs were enrolled); *Beukas v. Bd. of Tr. of Fairleigh Dickinson Univ.*, 605 A.2d 776, 782–84 (N.J. Super. Ct. Law. Div. 1991) (decision to close dental college did not amount to a breach of contract as school's bulletin had reserved the right to make this change), *aff'd*, 605 A.2d 708 (N.J. Super. Ct. App. Div. 1992).

academic merit, curriculum, and advancement, courts afford university faculty and administrators substantial discretion."); *Moore v. Vanderloo*, 386 N.W.2d 108, 115 (Iowa 1986) (observing that courts should not pass judgment on school curricula or interfere with the "internal operations and daily workings of an educational institution"). This Court should not second guess what the University determined was the best way to continue educating its students during a global emergency.

Thus, the Handbook plainly authorized Xavier to transition to remote learning under the circumstances, and there has been no breach of the parties' contract.

**2.    The other Ohio COVID-19 cases to which Ms. Miranda cites are not on point because they do not involve a reservation of rights like the one in Ms. Miranda's contract.**

Ms. Miranda relies heavily on five Ohio Court of Claims decisions denying schools' motions to dismiss claims seeking tuition refunds following the transition to remote learning in response to COVID-19.[4] (*See, e.g.*, Opp'n 6-7, ECF No. 15, at PageID 321-22.) But, critically, not one of these cases involved a contract that contained a reservation of rights authorizing the school to make such adjustments to the curriculum. Thus, they are on totally separate footing from Ms. Miranda's claim here.

**3.    Xavier and Ms. Miranda do not have an implied-in-fact contract to provide in-person instruction.**

*Ms. Miranda concedes that the statements on Xavier's website on which she relies are not actually part of her express contract with the University*; instead, she contends that these statements formed an implied-in-fact contract with Xavier. (*See* Opp'n 5, ECF No. 15, at PageID

---

[4] It is also worth noting that these five cases, *Cross*, *Smith*, *McDermott*, *Waitt*, and *Zahn* (*see* Opp'n 3-4, ECF No. 15, at PageID 318-19) were all decided by the same two judges on the same court and essentially just restate each other.

320.) Even overlooking the fact that the materials on the website are just advertisements,[5] this argument still fails as a matter of law.

In Ohio, there cannot be "an express agreement and an implied contract for the same thing existing at the same time." *Waltherr-Willard v. Mariemont City Sch.*, No. 1:12-CV-476-HJW, 2013 WL 121970, at *4 (S.D. Ohio Jan. 9, 2013) (quoting *Warren v. Trotwood–Madison City School Dist. Bd. of Educ.*, 1999 WL 148233 at *7–8 (Ohio Ct. App. 1999)), *aff'd*, 601 F. App'x 385 (6th Cir. 2015); *Williams v. Nat'l Ass'n for Advancement of Colored People*, 135 N.E.3d 1260, 1268 (Ohio Ct. App. 2019). In *Waltherr-Willard*, for instance, a teacher claimed that, based on certain correspondence, representations, and actions by the school, she had an implied contract to teach only high school students. 2013 WL 121970, at *4. The court rejected this argument, explaining that "[b]ecause plaintiff was a teacher subject to an express written

---

[5] *Montessori Children's House of Durham v. Blizzard* is instructive. 781 S.E.2d 511, 517 (N.C. 2016). There, parents asserted a breach of contract counterclaim, alleging that the school's website promised that their daughter's class would have no more than twenty students, but her actual class size exceeded that number. The court ruled that there was no breach of contract because the statements on the website were not binding contractual terms, but "simply described characteristics of [the school]'s classes that existed at the time and did not purport to make any commitment that these characteristics would never change." *Id.* It noted that "Defendants have failed to direct our attention to any controlling caselaw—or, for that matter, any case at all—holding that statements contained on a private school's webpage or in its advertisements that are not expressly incorporated by reference into a contract for admission to the school should nevertheless be treated as binding contractual terms." *Id.* Finally, and significantly, it noted that the website contained a variety of statements regarding the characteristics of the school, but the parents had provided no rational principle for "differentiating between, on the one hand, statements on a school's webpage that merely describe certain current characteristics of the school that are potentially subject to change and, on the other hand, statements on a webpage relating to aspects of its operations that the school is legally bound to maintain and that are impliedly written into every tuition contract between [the school] and the parents of an enrolled student." *Id.* Likewise, here, the website describes various characteristics of the school, but does not represent that those would never change. Nor is there any rational basis by which the many statements on the website could be distinguished as between those that are purportedly contractually binding and those statements about the current characteristics of the school that might be subject to change.

7

contract governing the terms of her employment, she cannot assert a claim under a theory of implied contract." *Id.*

The same is true here. Ms. Miranda does not dispute that the Handbook is a contract governing her relationship with the University (*see* Opp'n 5–6, ECF No. 15, at PageID 320-21); it therefore precludes the existence of an implied contract covering the same matter. In particular, Ms. Miranda claims that both the website and the Handbook contain representations concerning in-person instruction.[6] (*See* Opp'n 21–22, ECF No. 15, at PageID 336–37.) Accordingly, the express terms in the Handbook preclude any implied contract for in-person instruction based on the statements appearing on the website.[7]

---

[6] Nonetheless, Ms. Miranda has not plausibly alleged that Xavier has breached any of the terms in the Handbook purportedly promising in-person instruction. For instance, Ms. Miranda identifies three statements from the Handbook that she contends promised in-person instruction (*see* Opp'n 22, ECF No. 15, at PageID 337), but none of them can form the basis of a breach of contract claim under the facts alleged. Indeed, only one even plausibly relates to clinical instruction. It states that "Students are placed at a variety of clinical agencies." This statement appears under a heading "Student Signature on Clients' Records," it provides introductory context for the subsequent statements directing students how they should document their nursing care at different clinical sites. (Mot. Ex. A, ECF No. 13-1, at PageID 253.) It is not a promise that students will be continuously or invariably placed in clinical agencies, and is not breached by the fact that students are currently learning remotely.

[7] It is unclear whether Ms. Miranda intends to assert a breach of implied contract claim based on her contention that the Xavier website represented that she would be qualified to sit for a licensure exam in any state, though she was supposedly later informed that additional requirements might be necessary for some states. But even if she intended to make such a claim, it would plainly fail because any implied contract purportedly created by the statements on the website would be overridden by the express terms of the Handbook, which directly addresses out-of-state licensure requirements, providing: "[o]ther state boards of nursing may have different requirements for applicants seeking licensure. It is the responsibility of the student to review and determine a specific state's requirements for that state's licensure application." (Mot. Ex. A, ECF No. 13-1, at PageID 268.) Thus, the Handbook, as the operative contract, makes clear that different states' requirements might vary, and that the students are responsible for determining the specific requirements necessary for each state's certification.

The only Ohio case Ms. Miranda cites in support of her implied contract claim, *Zahn v. Ohio University*, is not on point because, there, the Court of Claims concluded that there was no express contract governing the student's demand for a tuition refund for failure to provide in-person instruction. *See* Ct. of Cl. No. 2020-00371JD, 2020 Ohio Misc. LEXIS 230 (Oct. 9, 2020), at *6-7 (noting that there was no express contract governing in-person classes). Here, Ms. Miranda does not dispute that there is an express contract governing her tuition claim. Accordingly, Ms. Miranda has failed to allege the existence of an implied contract, let alone its breach.

### 4. Ms. Miranda cannot argue that she was injured by the transition to remote learning.

Ms. Miranda's damages argument is likewise fatally flawed. Ms. Miranda is still receiving instruction on the same substantive material that she would have absent the pandemic; her complaint is just that this information is being delivered in a remote, rather than in-person, format. Therefore, even if Xavier had promised in-person classes, and even if there were a breach of this promise, the only way that she can be injured is if the quality of the remote instruction is inferior to in-person education.[8] The only way to prove that theory, however, is for this Court to scrutinize the virtual learning curriculum class by class and determine whether the remote alternative developed by Xavier's instructors is equally as informative and valuable as

---

[8] For this reason, Ms. Miranda's assertion that Xavier is improperly relying on an inaccurate factual narrative that the remote instruction was comparable to the traditional curriculum (*see, e.g.*, Opp'n 8-9, ECF No. 15, at PageID 323) is immaterial. While it is true that the distance learning curriculum provides an equivalent, high-quality education, even if that were not the case, Ms. Miranda still cannot succeed on her claim because it requires this Court to evaluate the quality of the education provided, which courts are admonished not to do. *See, e.g.*, *Hutchings v. Vanderbilt Univ.*, 55 F. App'x 308, 310 (6th Cir. 2003) ("Courts are not inclined to review educational malpractice claims or breach of contract claims based on inadequate educational services."); *Rockwood v. Shoen*, 145 F. Supp. 3d 718, 724 (S.D. Ohio 2015) (claim alleging "substandard educational services" was an unsustainable educational malpractice claim).

the traditional model. But, courts have repeatedly refused to pass judgment on the quality of the

education provided. *See, e.g.*, *Hutchings v. Vanderbilt Univ.*, 55 F. App'x 308, 310 (6th Cir.

2003) ("Courts are not inclined to review educational malpractice claims or breach of contract

claims based on inadequate educational services."); *Rockwood v. Shoen*, 145 F. Supp. 3d 718,

724 (S.D. Ohio 2015) (claim alleging "substandard educational services" was an unsustainable

educational malpractice claim).[9]

    Nor does Ms. Miranda have any meaningful answer to *Leiby*'s holding that there is no

injury because she has failed to identify a single substantive way in which the degree she

receives upon graduation will vary from the one that would have been conferred had there been

no distance learning. *Leiby v. Univ. of Akron*, No. 05AP-1281, 2006 WL 1530152 (Ohio Ct.

App. June 6, 2006). Rather, Ms. Miranda obliquely suggests that her degree will not be the same

because her eligibility to practice may, in some unidentified way, possibly be impacted by the

post-pandemic reformatting of clinical training.[10] (*See* Opp'n 12–13, ECF No. 15, at PageID

---

[9] The same is true with respect to Ms. Miranda's complaint that practitioners, not members of the
"Xavier faculty," teach her classes. Even if that were true, and even if the University made and
breached such a promise, the court would still be required to evaluate the instruction provided by
each teacher in each course and determine whether the practitioner's instruction was any less
valuable or effective (a determination that might vary by student) than the member of the
"Xavier faculty" that would have been available to teach the same course. Again, that is not a
proper undertaking for the judiciary.

[10] Ms. Miranda also asserts that she has satisfied the injury prong because her degree is
purportedly less valuable because she allegedly is not eligible to sit for licensure in all fifty states
upon completion of the program. It is not even clear that she is asserting a breach of contract
action based on this allegation, as she mentions it only in connection with her OCSPA claim.
(*Compare* Am. Compl. ¶ 111, *with* ¶ 82 (detailing breach of contract allegations with no
reference to licensure requirements), ECF No. 11, at PageID 165, 161.) In any event, she has not
properly pled any injury related to this alleged breach because she claims that she wants to
practice in Florida (Am. Compl. ¶ 26, ECF No. 11, at PageID 148), but never alleges that she
will not be able to do so upon her graduation. And, as a factual matter, as reflected on the Xavier
website, she is eligible to sit for licensure in Florida when she graduates. *See* Professional
Licensure Disclosure Statement, Professional Licensure by State: Nursing
https://www.xavier.edu/professional-licensure/documents/nursing-state-requirements-table-

327–28.) But this supposed harm is purely hypothetical, and Ms. Miranda cannot survive a motion to dismiss without providing allegations that are more than merely speculative. *See Gregory v. W. Clermont Local Sch. Dist. Bd. of Educ.*, 414 F. Supp. 3d 1064, 1072 (S.D. Ohio 2019).

### 5.     Ms. Miranda ratified any supposed breach by continuing to take classes.

Ms. Miranda cannot avoid the fact that her decision to remain in the program after the move to distance learning ratified any alleged breach. Ms. Miranda's defense is to claim that, although she has remained enrolled at the University, she did not intend to ratify the contract. (Opp'n 13, ECF No. 15, at PageID 328.) But Ms. Miranda's choice to continue taking courses and earning credits toward her degree even after the switch to remote instruction clearly establishes her intent to ratify any alleged breach.[11] *See, e.g.*, *Willoughby Supply Co., Inc. v. Villhauer*, 113 N.E.3d 973, 978 (Ohio Ct. App. 2018) (requisite intent to ratify demonstrated by continuing to accept benefits).

In particular, Ms. Miranda's ratification is evident from the fact that she re-enrolled for the summer and fall terms, even though they were conducted by distance learning as well. She

---

07282020.pdf. (The Court may consider statements made on the website because the Complaint relies on it. *See, e.g., A.G. by & through N.G. v. Cmty. Ins. Co.,* 363 F. Supp. 3d 834, 839 n.2 (S.D. Ohio 2019).) According to that document, Delaware is the only state where automatic eligibility has been impacted by COVID-19. But, even if she alleged she planned to practice there, any purported injury would be far too speculative to sustain a breach of contract claim at this time, given that she has not even graduated from the program or been required to incur additional expense in order to become eligible to sit for licensure in Delaware.

[11] Unlike in *McKee v. McCann*, 102 N.E.3d 38 (Ohio Ct. App. 2017) and *Baily v. Midwestern Ent., Inc.*, 103 Ohio App.3d 181, 658 N.E.2d 1120 (10th Dist. 1995), the elements of ratification were all present in Ms. Miranda's complaint: a breach allegedly occurred, Ms. Miranda had knowledge of such breach, and Ms. Miranda continued to take courses offered by Xavier after the alleged breach rather than object or voice any type of disagreement. (Opp'n 13, ECF No. 15, at PageID 328.)

claims that continuing to take classes and earn credits toward her degree after the spring semester did not ratify any breach because Xavier purportedly continued to "make the same promises and commitments on its website" past the spring semester so "[a]s far as Plaintiff . . . knew at any given point in time, Xavier was promising a return to clinicals." (Opp'n 14, ECF No. 15, at PageID 329.) This contention is simply not plausible. She could have asked a program director at any point whether remote instruction would continue and was undoubtedly also receiving updates on this topic from the school. Ms. Miranda cannot avoid ratification by burying her head in the sand. *Computel, Inc. v. Emery Air Freight Corp.*, 919 F.2d 678, 684 (11th Cir. 1990) (party cannot avoid ratification by being willfully ignorant or purposely refraining from seeking information).

The Ohio cases on which Ms. Miranda relies are easily distinguished. First, in *AFCO Credit Corp. v. Brandywine Ski Center, Inc.*, the court ruled that the defendant did not ratify a proposed contract where it objected to the terms as soon as the proposed insurance contract was presented to it and never accepted them. 610 N.E.2d 1032, 1035 (Ohio Ct. App. 1992). Rather than immediately objecting to, and refusing to accept, remote instruction, Ms. Miranda continued with distance learning for the whole spring semester and then re-enrolled for summer and fall; thus, her position is materially different than the defendant's in *Bradywine*. Second, in *American Greetings, Corp v. Cookie Jar Entertainment, Inc.*, the court rejected the ratification argument in light of the particular facts of that case—specifically, "the lengthy history of dealings and negotiations between the parties," the plaintiff's efforts to comply with a letter agreement even though it purportedly was fraudulently induced, and the fact that the plaintiff had received no consideration or benefit. No. 1:09-cv-1056, 2009 WL 3713686, at *10 (N.D. Ohio Nov. 3, 2009). Obviously, Ms. Miranda's circumstances are distinct: she does not have a lengthy history of

dealings with Xavier (the *American Greetings* parties' relationship went back nearly a decade), she has not taken efforts to remedy any supposed breach, and she has received benefits from the University. Therefore, the reasoning of *American Greetings* is inapposite and does not dictate the same result here.

Ms. Miranda also claims that this Court should follow two decisions from Florida, *Gibson v. Lynn University Inc.*, No. 20-cv-81173, 2020 WL 7024463, *3 (S.D. Fla. Nov. 29, 2020) and *Rosado v. Barry University Inc.*, No. 1:20-cv-21813, 2020 WL 6438684 (S.D. Fla. Oct. 30, 2020) where the courts ruled that the students had not ratified a breach even though they continued taking classes after the switch to remote learning. But those cases are simply inconsistent with Ohio law, which provides that where a party is aware of a purported nonconformance with the contract, but continues to accept the benefits of the agreement rather than repudiate it, she has ratified any supposed breach. *See, e.g.*, *Campbell v. Hosp. Motor Inns, Inc.*, 493 N.E.2d 239, 241–42 (Ohio Ct. App. 1986) (holding that ratification of a contract may occur by acceptance and retention of the benefits, acquiescence in the contract or failing to repudiate the contract within a reasonable time); *NetJets, Inc. v. Binning*, No. 04AP-1257, 2005 WL 1806460, at *3 (Ohio Ct. App. Aug. 2, 2005) (same). Ms. Miranda has remained enrolled in the ABSN program, is continuing to receive an accelerated nursing education, and will, presumably, attain a degree; by acceptance of these benefits and failure to repudiate the agreement, she ratified any claimed breach.

**B.      Ms. Miranda has failed to plead a breach of contract claim related to her insurance fee.**

The plain language of the Handbook dooms Ms. Miranda's breach of contract claim regarding the $18 professional liability insurance fee. The Handbook states that the liability insurance coverage must be paid by students "enrolled in practicum courses." (Mot. Ex. A, ECF

No. 13-1, at PageID 272.) Ms. Miranda admits that she enrolled in practicum courses and therefore was required to pay the fee, and she does not dispute that Xavier upheld its end of the bargain by insuring her. There is no breach. Nor can she identify any part of the contract that suggests she is eligible for a refund when the Handbook clearly states that the fee is non-refundable once paid.

In an effort to distance herself from this language, Ms. Miranda argues that the Court must instead look to the intent of the parties when interpreting the agreement and asserts that "[n]othing in [the] Amended Complaint suggests that Plaintiff intended that her money go towards insurance that Xavier was going to prohibit her from being able to use." (Opp'n 16, ECF No. 15, at PageID 331.) But courts presume that the intent of the parties is reflected in the plain language of their agreement, and "will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *See Shifrin v. Forest City Enterprises, Inc.*, 597 N.E.2d 499, 501 (Ohio 1992). Thus, it is not her subjective intent, but the unambiguous terms of the contract that control, and the Handbook clearly states that when a student enrolls in a practicum course, she must pay the fee and that this fee is non-refundable.

Moreover, the Handbook is clear that the fee is charged so long as a student is *enrolled* in a practicum course, and it does not contain any exception depending on the format in which that course is being administered. Ms. Miranda does not allege in her Amended Complaint that she has unenrolled from any practicum courses, she just contends that her courses are now being taught remotely.[12] (*See, e.g.*, Mot. Ex. A, ECF No. 13-1, at PageID 278) (showing practicum

---

[12] Ms. Miranda appears to suggest in her Opposition that she is no longer enrolled in practicum courses, but it is well-settled that a plaintiff may not use her opposition to a motion to dismiss to amend her complaint. *Hill v. Ohio State Univ. T & L*, No. 2:12-CV-984, 2013 WL 2354069, at *4 (S.D. Ohio May 29, 2013). It is also not possible that she has unenrolled because it would mean that she is taking less than a full course-load and therefore would not be on track to

courses administered each semester).) Thus, she remains a student enrolled in practicum courses and is therefore required to pay the fee, and has no basis to demand a refund.

### C. Ms. Miranda has failed to plead a breach of contract claim related to her Student Activity Fee.

In her Opposition, Ms. Miranda argues that she and Xavier had an implied-in-fact contract to provide student activities and that the University breached that contract by not hosting events during the pandemic. To state a claim for breach of an implied-in-fact contract, Ms. Miranda must still allege all the elements of a standard breach of contract claim: existence of a contract, breach, and injury. *See Foster v. Health Recovery Servs., Inc.*, No. 2:19-CV-4453, 2020 WL 5943021, at *11 (S.D. Ohio Oct. 7, 2020); *Randleman v. Fid. Nat. Title Ins. Co.*, 465 F. Supp. 2d 812, 818 (N.D. Ohio 2006).

However, all the Amended Complaint alleges is that Ms. Miranda was charged a Student Activity Fee and that there are currently no student activities. (*See, e.g.*, Am. Compl. ¶¶ 36, 63, ECF No. 11, at PageID 149, 157.) Even if charging the Student Activity Fee could create an implied contract to provide student activities, Ms. Miranda has still failed to sufficiently allege a breach of this agreement because she does not dispute that student activities and other student benefits funded by this fee were, in fact, provided prior to the pandemic.

To the extent that Ms. Miranda complains about the absence of additional programming during the pandemic, she has offered no factual allegations that suggest Xavier made such a promise. Even with implied contracts, Ms. Miranda must still establish that the parties agreed to certain performance. *See, e.g.*, *Byler v. Air Methods Corp.*, 823 F. App'x 356, 362–64 (6th Cir. 2020) (no breach of implied-in-fact contract where there was no evidence that parties agreed to

---

graduate on time, which she contends she is (and Xavier does not dispute). (*See* Am. Compl. ¶ 25, ECF No. 11, PageID 147.)

particular term); *Dunn v. Bruzzese*, 874 N.E.2d 1221, 1228–29 (Ohio Ct. App. 2007) (rejecting employee's breach of implied employment agreement claim because she did not demonstrate a "meeting of the minds" on the terms of her future employment); *Campanella v. Commerce Exch. Bank*, 745 N.E.2d 1087, 1097 (Ohio Ct. App. 2000) ("The party claiming that a contract exists must prove that the contracting parties reached a meeting of the minds as to the terms of the transaction."). Ms. Miranda's only allegation in this regard is that she was charged a Student Activity Fee. That singular allegation does not support a conclusion that Xavier agreed to arrange any particular type or quantity of programming, to provide programming during a pandemic, or to deliver programming at all. In short, Ms. Miranda has failed to identify any promise with respect to the Student Activity Fee that Xavier has not fulfilled.

Separately, while Ms. Miranda has elsewhere suggested that the terms on the website created an implied contract with Xavier, (*see, e.g.*, Opp'n 5, ECF No. 15, at PageID 320), she does not raise this argument here.[13] The reason for her silence is apparent based on a review of the website's language regarding the Student Activity Fee. As Xavier explained in its opening brief, what the website says in relevant part is that the "fees are mandatory in that they are charged to every full-time and part-time undergraduate or graduate student whether or not they are on campus or studying abroad" and that the fees "will be used to fund all organizations under the [Student Government Association]." (Mot. 16, ECF No. 13, at PageID 204.) These statements show two things. First, the fact that the fees are charged even to students studying abroad (who therefore could not possibly participate in on-campus activities) demonstrates that students are not contracting with Xavier for the provision of in-person events. Second, even if

---

[13] The Handbook does not contain any statements concerning the Student Activity Fee, so it would not preclude the existence of an implied contact on this topic.

16

these statements on the website could create an implied contract, the only promise made is that the fee will be used to fund the Student Government Association, and there is no allegation that this funding has not occurred. Thus, there remains no promise unfulfilled.

## II. Ms. Miranda cannot plead unjust enrichment in the alternative.

Ms. Miranda claims that she can plead unjust enrichment in the alternative to her breach of contract claim. But that is only true where the agreement between the parties is in dispute— even the cases cited by Ms. Miranda recognize this limitation. *See, e.g.*, *Zahn*, 2020 Ohio Misc. LEXIS 230, *8 (noting that unjust enrichment may be pled "if the existence of the underlying contract is in dispute"); *Smith v. The Ohio State University*, No. 2020-00321JD, 2020 WL 5694224, at *2 (Ohio Ct.Cl. Sep. 09, 2020) (declining to dismiss breach of contract claim "[b]ecause the existence of the underlying contract is disputed"). And although she acknowledges this clear restriction on alternative pleading, Ms. Miranda does not assert that there is any dispute here concerning the existence of a contract between the parties. Rather, Ms. Miranda concedes that the Handbook is an express contract governing her relationship with Xavier. Thus, her unjust enrichment claim is barred.

## III. Ms. Miranda cannot plead promissory estoppel in the alternative.

In Ohio, "[w]here the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel." *O'Neill v. Kemper Ins. Companies*, 497 F.3d 578, 583 (6th Cir. 2007) (quoting *Terry Barr Sales Agency, Inc. v. All–Lock Co., Inc.*, 96 F.3d 174, 181 (6th Cir. 1996) (internal quotation marks omitted)). Ms. Miranda does not dispute that the Handbook is an enforceable contract that governs her relationship with Xavier; thus, her attempt to simultaneously plead a promissory estoppel claim is not pleading in the alternative, it is "pleading in the impossible." *Waltherr-Willard*, 2013 WL

121970, at *4 (refusing to allow the plaintiff to plead promissory estoppel claim in the alternative to breach of contract claim where there was no dispute concerning the existence of the contract).

Ms. Miranda's only answer to this dispositive rule is to point to *Paar v. Jackson Township Board of Trustees*, No. 2003-CA-00334, 2004 WL 2348523 (Ohio Ct. App. Oct. 18, 2004). But *Paar* does not hold that a plaintiff may proceed with a promissory estoppel claim where there is a valid contract. Indeed, it affirms that the opposite is true, unless a defendant waives the issue by not raising it. *Id.* at *7 (court would not reverse jury verdict on both promissory estoppel and breach of contract because defendant repeatedly failed to object to submission of both claims to the jury). That obviously is not the situation here.

## IV. The OCSPA does not apply to Ms. Miranda's claims and cannot be maintained as a class action.

### A. The OCSPA does not apply because Ms. Miranda's enrollment in nursing school is not a consumer transaction.

In Xavier's opening brief, it pointed to the Sixth Circuit's decision in *MacDonald v. Thomas M. Cooley Law School*, 724 F.3d 654, 660 (6th Cir. 2013) and explained that the OCSPA does not apply here because it applies only to transactions that are for primarily personal, family, or household use, not to transactions undertaken for "business purposes."[14]

---

[14] Although *Cooley* alleged a violation of the Michigan Consumer Protection Act ("MCPA"), the conduct prohibited by, and the scope of, that Act are similar in all material respects to the OCSPA (emphasis added):

|  | OCSPA | MCPA |
|---|---|---|
| *Prohibited conduct* | "[U]nfair or deceptive act or practice in connection with a consumer transaction." Ohio Rev. Code § 1345.02 | "**Unfair**, unconscionable, or **deceptive** methods, **acts, or practices** in the conduct of trade or commerce." Mich. Comp. Laws Ann. § 445.903(1). |
| *Scope* | "Consumer transaction": "[A] sale, lease, assignment, award by chance, or other transfer of an item of **goods**, **a service**, a franchise, or an intangible, to an individual for **purposes that are primarily personal, family, or household** . . . ." Ohio Rev. Code § 1345.01(A). | "Trade or commerce": "[T]he conduct of a business providing **goods**, property, or **service primarily for personal, family, or household purposes** . . . ." Mich. Comp. Laws Ann. § 445.902(g). |

18

(Mot. 20–21, ECF No. 13, at PageID 208-09.) Like the students in *Cooley* who did not enroll in law school for "personal purposes" so that they "could leisurely read and understand Supreme Court Reports," but rather for "business purposes," to "attain[] full-time employment in the legal sector," 724 F.3d at 660 (internal quotation marks omitted), Ms. Miranda admits that she enrolled in the ABSN program so that she could become an emergency room nurse, (Am. Compl. ¶ 26, ECF No. 11, at PageID 148). Thus, the transaction with Xavier was undertaken for a business—not a personal, family, or household—purpose, and the OCSPA does not apply.

Ms. Miranda does not argue that *Cooley* was wrongly decided, but instead tries to sidestep the case with the overly broad statement that "Ohio courts have repeatedly permitted CSPA claims to proceed against educational providers." (Opp'n 24, ECF No. 15, at PageID 339.) Ms. Miranda misses the point. Xavier's position is not that the OCSPA does not apply because the University is a school. Rather, the Act does not apply here because Ms. Miranda did not enroll at the University for a personal, family, or household purpose—Ms. Miranda's argument is defendant-focused, Xavier's is plaintiff-focused. And none of the cases cited by Ms. Miranda address this particular argument.

However, Ohio cases do recognize that where the purchase is made for professional purposes, it is not a consumer transaction subject to the OCSPA. *See, e.g.*, *Freeman v. Curry*, No. 14CV1010268, 2015 WL 12602384, at *3 (Ohio Com. Pl. Oct. 06, 2015) (contract to renovate plaintiff's basement was not a consumer transaction because the project was primarily undertaken so that the plaintiff could rent out the renovated space, even though his home would increase in value because of the renovation); *Caley v. Glenmoor Country Club, Inc.*, 1 N.E.3d

---

Given the similarity of these two statutes, the Sixth Circuit's interpretation of the MCPA is plainly instructive here.

471, 483 (Ohio Ct. App. 2013) (purchase of membership to a country club was for "investment" purposes and therefore it was not a consumer transaction); *Flex Homes, Inc. v. Ritz-Craft Corp. of Michigan*, No. 07CV1005, 2009 WL 3242140, at *12 (N.D. Ohio Sept. 30, 2009) (model home that was intended for business, not personal use, was not subject to OCSPA), *aff'd sub nom. Flex Homes, Inc. v. Ritz-Craft Corp of Michigan, Inc.*, 491 F. App'x 628 (6th Cir. 2012); *Giffin v. Crestview Cadillac*, No. 09AP–278, 2009 WL 4809862, at *6-7 (Ohio Ct. App. 2009) (because vehicle was primarily purchased for "business reasons" the sale was not a consumer transaction); *Cockrell v. Willett*, No. 93 CA 1945, 1994 WL 420916, at *2–3 (Ohio Ct. App. Aug. 5, 1994) (finding there was no "consumer transaction" where the roof of a home was deficiently repaired because the plaintiff-owner of the property rented the home out to extended family). Just like these cases, since Ms. Miranda enrolled at Xavier to attain employment as an emergency room nurse, not for her personal enjoyment, the OCSPA does not apply.

**B.**     **Ms. Miranda has failed to identify a case or Code provision that could satisfy the notice requirement necessary to maintain a class action.**

Ms. Miranda concedes that she cannot maintain a class action under the Act without proof that Xavier was on notice that its conduct violated the OCSPA. *See* O.R.C. § 1345.09(B). The notice may be provided by a rule adopted by the Attorney General or a *final* decision by a court "determin[ing]" that a particular practice violates the OCSPA. *See* Ohio Rev. Code § 1345.09(B).

**1.**     **Ms. Miranda has not identified any final determination by a court to put Xavier on notice.**

Ms. Miranda admits that the court's decision must be "final" to provide adequate notice under the statute. (*See* Opp'n 25, ECF No. 15, at PageID 340 (arguing that *Ajibola* provided a "final decision").) Accordingly, a ruling on a motion to dismiss cannot provide notice because,

as the Court in *Savett v. Whirlpool Corp.* explained, it "does not constitute a determination by an Ohio court that a particular act or practice violates the OCSPA." No. 12 CV 310, 2012 WL 3780451, at *4 (N.D. Ohio Aug. 31, 2012). Ms. Miranda criticizes this holding from *Savett* for not citing to any authority, but she, in turn, fails to provide any case law holding it was wrongly decided. Three of the four cases that Ms. Miranda claims provided notice—*Krueck*, *Ajibola*, and *Malone*—were decisions on a motion to dismiss; under *Savett*, they do not provide notice. (Am. Compl. ¶ 118, ECF No. 11, at PageID 167-68.)

That leaves only the case *Hacker v. National College of Business & Technology*, 927 N.E.2d 38 (Ohio Ct. App. 2010), which decided the defendant's motion for summary judgment. Even assuming that decision could be considered "final," notwithstanding the logic in *Savett* that such interim decisions do not qualify, this case does not actually contain a determination that a violation has occurred. What the court held (construing the evidence most strongly in the students' favor) was that a "genuine issue of material fact remains as to whether National College made an unfair or deceptive representation." *Id.* at 45. It noted that whether a statement is deceptive depends on how the consumer views it and concluded that a "trier of fact reasonably *might* find that this representation was unfair or deceptive when viewed from the perspective of [the students]." *Id.* (emphasis added). Thus, had Xavier known of this case, it would have seen no definitive statement from the court that a violation had occurred. Instead, the court merely recognized the possibility that the defendant had made a deceptive or unfair statement, meaning of course, that the trier of fact could still reach the opposite conclusion.[15]

---

[15] Even if this case could possibly be considered as a "final determination," its facts are simply too different from the circumstances here to provide notice. There, a for-profit college was alleged to have made false representations to students that mandatory externship programs would be available during the students' final term of study, when the school had never assessed whether it could actually secure placements for each admitted student. 927 N.E.2d at 40, 43. Obviously,

### 2. The Ohio Administrative Code provisions Ms. Miranda claims provided notice are too generic or not relevant.

Ms. Miranda effectively concedes that two of the three Code provisions that allegedly provide notice to Xavier, Ohio Admin. Code 109:4-3-02 and Ohio Adm. Code 109:4-3-10, are too generic to meet that requirement under the OCSPA.[16] (Opp'n 31-32, ECF No. 15, at PageID 346–47.)

However, she insists that the third provision she included in her Amended Complaint, rule 109:4-3-09(A)(2), is sufficiently specific to provide notice. But even if that were so, that provision has nothing to do with this situation. That Section relates to the timely delivery of ordered goods:

> (A) It shall be a deceptive act or practice in connection with a consumer transaction for a supplier: . . . (2) To accept money from a consumer for goods or services ordered by mail, telephone, the internet, or otherwise and then permit eight weeks to elapse without:
> (a) Making shipment or delivery of the goods or services ordered;
> (b) Making a full refund;

---

these allegations bear no resemblance to Ms. Miranda's claims concerning Orbis's role in her education or the alleged use of practitioners as instructors. And they are also meaningfully different from her claims concerning her eligibility to practice throughout the U.S. and her access to in-person clinical instruction. Key to the decision in *Hacker* was the fact that the school had represented that it could provide certain services while making no effort to verify that such representations were true. *See id.* at 45. That is not at all the case here, and Ms. Miranda does not allege that it is. Even under Ms. Miranda's view of the world, at the time she would have relied on Xavier's statements prior to her enrollment, they were accurate; and to the extent changes were subsequently made, it was not because of Xavier's failure to plan, but because of adjustments made necessary by the global pandemic's disruption of every facet of daily life.

[16] Ms. Miranda argues that these code sections in combination with the cases she cites provide sufficient notice based on *Beard v. Dominion*, 2:06-cv-00137, 2007 WL 2838934, at \*9 (S.D. Ohio Sept. 26, 2007). But *Beard* did not actually hold that a plaintiff can establish notice based on the aggregation or conglomeration of different cases and code provisions (an approach that would be inconsistent with § 1345.09(B)'s language stating that the act or practice at issue must be declared unconscionable by a rule or decision). Rather, it just noted that the plaintiff cited to different cases and code provisions similar to the defendant's conduct and the *defendant did not contest that those examples provided notice*.

> (c) Advising the consumer of the duration of an extended delay and offering to send the consumer a refund within two weeks if the consumer so requests; or
>
> (d) Furnishing similar goods or services of equal or greater value as a good faith substitute if the consumer agrees.

Ohio Admin. Code 109:4-3-09. "Ohio courts . . . conclude that there is a violation [of Ohio Admin. Code 109:4-3-09] if goods or services are not delivered within the eight-week window." *McWhorter v. Elsea, Inc.*, No. 2:00-CV-473, 2007 WL 1101249, at *20 (S.D. Ohio Apr. 11, 2007).

No part of the Complaint alleges that after Xavier received Ms. Miranda's tuition it failed to deliver anything for eight weeks without paying a refund. *Compare Ottney v. Al Sobb's Auto & Truck Frame Serv., Inc.*, 112 N.E.3d 927, 933 (Ohio Ct. App. 2018) (evidence supported violation of 109:4-3-09(A)(2) where body shop held plaintiff's vehicle for seventeen months without completing any repairs). On the contrary, Ms. Miranda does not contest that after she paid her tuition, her classes commenced as planned in January 2020. Thus, there is simply no argument that this Section applies to the allegations here and therefore it could not possibly put Xavier on notice.

## V. Ms. Miranda cannot plead around the fact that her lawsuit asserts nothing but educational malpractice claims.

As explained above, it is clear that Ms. Miranda cannot prove her breach of contract claim without requiring this Court to study each course and determine whether the remote instruction developed by Xavier delivered the same pedagogical benefits as the traditional curriculum. That is exactly the analysis courts eschew in refusing to hear educational malpractice claims. Nevertheless, Ms. Miranda claims that she is not making an educational malpractice claim because she does not allege that "Xavier fell below a specific standard of care." (Opp'n 34, ECF No. 15, at PageID 349.) But the court in *Buescher v. Baldwin Wallace University*, exposed

23

the fallacy of this argument that just because a plaintiff does not specifically allege a "substandard education," does not mean that is not the essence of her claim. No. 1:13 CV 2821, 2014 WL 1910907, at *4 (N.D. Ohio May 12, 2014). In *Buescher*, the plaintiffs argued that their claim was not an educational malpractice claim because it did not allege a substandard education.[17] *Id.* The court disagreed, explaining "plaintiffs' allegations that defendants' failure to provide them with a quality nursing education through the ABSN program despite the representations made in defendants' marketing of the program and statements made in the handbook, do amount to [an educational malpractice] claim even though plaintiffs do not use the term 'substandard education.'" *Id.*

While Ms. Miranda tries to artificially cabin her complaint to just the allegation that in-person education was promised but not delivered, even if that were true, it means nothing legally unless it injured her. And it can only injure her if what she received instead of an in-person instruction is inferior. Thus, even without alleging a "substandard education," the crux of her claim is that she was denied "a quality nursing education through the ABSN program despite the representations made in defendants' marketing of the program and statements made in the handbook," which the *Buescher* court has ruled is a claim for educational malpractice. *See also Adams v. Antonelli Coll.*, 304 F. Supp. 3d 656, 665 (S.D. Ohio 2018) (allegation that plaintiff was not provided quality education as promised in the Handbook was an impermissible educational malpractice claim); *Borden v. Antonelli Coll.*, 304 F. Supp. 3d 678, 688 (S.D. Ohio 2018) ("A claim that educational services provided were inadequate constitutes a claim for educational malpractice.").

---

[17] Notably, the plaintiff in *Buescher* tried unsuccessfully to distinguish *Baker v. Oregon City Schools*, No. L-11-1109, 2012 WL 762482 (Ohio Ct. App. Mar. 9, 2012), on which Xavier also relied.

The same is true of her OCSPA claim, in which she complains about the training of the faculty and the quality of the curriculum. (*See, e.g.*, Am. Comp. ¶ 5 (alleging that that her classes were supposedly taught by practitioners, who were "not trained in pedagogy," rather than Xavier faculty), ¶¶ 13, 29 (complaining about "unoriginal cookie cutter" curriculum not prepared by Xavier), ECF No. 11, at PageID 142, 144, 148.) Indeed, complaints regarding the quality of educators and contents of curriculum are prototypical claims for educational malpractice—a fact Ms. Miranda does not dispute.

## CONCLUSION

For the foregoing reasons, Xavier respectfully requests that this Court grant its Motion to Dismiss Ms. Miranda's Amended Complaint.

Respectfully submitted,

*/s/ Aaron M. Herzig*
Aaron M. Herzig (0079371)
   Trial Attorney
Russell S. Sayre (0047125)
Medora M. Akers (096419)
Courtney Lynch (0098210)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
Phone: (513) 381-2838
Fax: (513) 381-0205
aherzig@taftlaw.com
sayre@taftlaw.com
makers@taftlaw.com
clynch@taftlaw.com

*Attorneys for Defendant Xavier University*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed on January 8, 2021, using the Court's ECF system, which will serve the filing on all counsel of record.

*/s/ Aaron M. Herzig*