**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **XIMENA MIRANDA**, *et al.*, | : | **Case No.: 1:20-CV-00539** |
| | : | |
| **Plaintiff** | : | **Judge Timothy S. Black** |
| | : | |
| **v.** | : | |
| | : | **ANSWER** |
| **XAVIER UNIVERSITY,** | : | |
| | : | |
| **Defendant.** | : | |

For its Answer to Plaintiff Ximena Miranda's ("Plaintiff") First Amended Complaint

(Doc. 11, the "Complaint"), Defendant Xavier University ("Xavier"), states as follows:

**INTRODUCTION**[1]

1.      Plaintiff is a student at Xavier where she is enrolled in Xavier's College of Nursing

Accelerated Bachelor of Science in Nursing ("ABSN") program.

**ANSWER: Deny. Plaintiff enrolled in Xavier's ABSN program in January 2020 and
graduated in May 2021.**

2.      The ABSN program is intended to "follow[] a comprehensive, fast-paced sequence

of online and onsite curriculum over four, full-time semesters."

**ANSWER: Xavier's marketing materials drafted prior to the transition to remote
learning during the COVID-19 pandemic speak for themselves and no response is
required to the allegations regarding their terms. To the extent the characterization
of these materials differs from their actual terms, those allegations are denied.**

3.      The ABSN curriculum contains three key parallel learning components:  online

classes, lab simulation, and actual clinical training.  These parallel components are set up to

---

[1] Headings and allegations throughout this Answer are taken directly from the Complaint and are
included solely for ease of reference.

complement each other as each goes from basic to more advanced. Put another way, a student completing only one or two of the parallel components misses crucial nursing education. In line with this approach, Xavier's handbook states: "If a student withdraws from either a theory or a clinical course, the student must withdraw from the co-requisite course".

> **ANSWER: Xavier's Handbook speaks for itself and no response is required to the allegations regarding its terms. To the extent the characterization of Xavier's Handbook or the terms thereunder differs from its actual terms, those allegations are denied. Xavier denies the remaining allegations in this Paragraph.**

4. For such comprehensive training, Plaintiff and the Class Members paid at least $880 per credit hour, or at least $13,500 per semester, in addition to a variety of fees, including but not limited to student activity fees, professional liability insurance for the onsite curriculum, scrubs, uniforms, stethoscopes, nurse badges, and other supplies. Despite the fact that the students are no longer engaging in clinical training, upon information and belief, Xavier is still requiring Plaintiff and the Class Members to purchase scrubs with Xavier's logo from Xavier-associated stores.

> **ANSWER: Xavier admits that some students are required to pay tuition, costs, and fees as a condition of enrollment in the ABSN program. Xavier denies that students are "no longer engaging in clinical training," and denies the remaining allegations in this Paragraph.**

5. Xavier falsely represented that the online portion of the curriculum would be taught by Xavier faculty members during live lectures or recorded lectures with original content. Instead, the majority of the online curriculum is taught online by non-Xavier faculty who are not trained in pedagogy, but are instead practitioners who moonlight as teachers, and are otherwise generally unavailable for communication, consultation, or discussion with the students. Many of the Class Members have stated in no uncertain terms-including by reference in graduation speeches-that

they rely more on other websites like Khan Academy, rather than online lectures by non-Xavier faculty, to learn the didactic portions of their studies.

> **ANSWER: Xavier is without knowledge or information to form a belief as to the truth of the allegations regarding what "[m]any of the Class Members have stated in no uncertain terms," and therefore denies the same. Xavier denies the remaining allegations in this Paragraph, including because they are vague and ambiguous.**

6.    In March 2020, Xavier stopped providing its onsite curriculum and switched to a fully remote learning experience that involves no hands-on training, either through simulation labs or clinical training. While students enrolled and paid Xavier for a comprehensive academic experience including substantial in-person simulation labs and clinical training, Xavier instead provided Plaintiff and the Class Members a limited online experience presented by Google, YouTube, or Zoom, devoid of face-to-face faculty and peer interaction, separated from program resources, and barred from facilities vital to study. Plaintiff and the Class Members did not bargain for such virtual experience absent the promised in-person and hands on training.

> **ANSWER: Xavier admits that, during the middle of the Spring 2020 semester, it transitioned to remote instruction in response to the COVID-19 pandemic. Xavier denies the remaining allegations in this Paragraph, including because it is without knowledge to affirm or deny why unnamed students enrolled.**

7.    Despite no longer providing the important "onsite curriculum" that students are promised, Xavier did not reduce its tuition. In fact, starting in May 2020, Xavier increased tuition for ABSN students to $900 per credit hour, or on average $14,175 in tuition alone per semester.

> **ANSWER: Xavier admits that it charges tuition to some students who enroll in the ABSN program and that the price of tuition is subject to change. Xavier denies the remaining allegations in this Paragraph.**

8. In addition to tuition, ABSN students have not been refunded for annual "student activity fees" and "professional liability insurance fees" that no longer provide a cognizable benefit to ABSN students.

**ANSWER: Plaintiff's claim for breach of contract based on her payment of student activity fees was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to those referenced allegations of this Paragraph. Xavier admits that it has not refunded ABSN students for professional liability insurance fees for the Spring 2020 semester, as no such refund is warranted or required, including because such fees are nonrefundable. Xavier denies the remaining allegations in this Paragraph.**

9. Furthermore, Xavier represented that its ABSN students would be able to practice nursing in any state across the United States and in many other countries following graduation. However, regardless of the curriculum changes made because of COVID-19, Xavier's ABSN program does not meet the requirements for licensure in several U.S. states.

**ANSWER: Xavier denies the first sentence of this Paragraph. Xavier admits that licensure is not possible in every state in the U.S. and denies the remaining allegations in this Paragraph.**

10. After the filing of this lawsuit, Xavier informed its students that graduates of the ABSN program will be able to practice in only 22 states without additional training or curriculum.

**ANSWER: Deny.**

11. The education provided in Xavier's ABSN program is vastly different from its traditional BSN program because Xavier does not actually provide the programming, curriculum, teaching, advertising, recruiting, marketing, faculty, or even the physical space for the ABSN program.

**ANSWER: Xavier admits that its ABSN program is not precisely the same as its BSN program. Xavier denies the remaining allegations in this Paragraph.**

4

12.     Instead, in 2017, Xavier paired with Orbis Education Services, LLC ("Orbis"), which was bought by the publicly traded corporation Grand Canyon Education in 2019 for $361.2 million.  Grand Canyon Education had over $220 million in revenue for the first quarter of 2020, with a net income of over $94 million that same quarter.

> **ANSWER: Xavier admits that it contracted with Orbis in 2017, which is affiliated with Grand Canyon Education. Xavier is without knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and therefore denies the same.**

13.     Orbis is primarily focused on pre-licensure healthcare programs.  It contracts with educational institutions, such as Xavier, and acts as their agent to provide unoriginal cookie cutter educational services to students in exchange for large fees.

> **ANSWER: Xavier admits that Orbis is a company that contracts with educational institutions to assist with pre-licensure healthcare programs. Xavier denies the remaining allegations in this Paragraph.**

14.     Orbis has a unique sales pitch:  Orbis provides the upfront capital, the academic platforms, the marketing, the enrollment, the course development, and the "student support," and the universities provide their otherwise good names.  And once that is all established, Orbis and the university "share the revenue".  As of March 31, 2020, Orbis had such relationships with 24 universities.  The "pitch" is shown on these two excerpts from its website.

> **ANSWER: Orbis's website speaks for itself and no response is required to the allegations regarding its terms. Xavier denies the remaining allegations in this Paragraph, including because Xavier is without knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph.**

15.     A review of Orbis's website shows the basics of Xavier and Orbis's relationship. Orbis promises to its partners that it will "provide all of the capital upfront for our partners.  Instead of charging a fee, we share the revenue, *so our partners profit, without paying a dime."* (emphasis

added). Orbis promises that it will help grow partners' enrollments to classes of more than 70 students, with enrollment happening three times a year. As part of that program, "Orbis education recruits and manages the student acquisition process," and then "provide[s] the support needed for students to live up to their potential".

**ANSWER: Orbis's website speaks for itself and no response is required to the allegations regarding its terms.**

16. While Xavier and Orbis collectively make tens of millions of dollars annually from the ABSN program, Plaintiff and the Class Members pay significant sums of money and/or incur substantial debt for hands-on training never received.

**ANSWER: Deny.**

17. The promise of hands-on training to ABSN students was incorporated into the contract between them and Xavier. Plaintiff does not bring this action suggesting that a difference of opinion related to pedagogy is at stake. Rather, Plaintiff bring this action because Xavier failed to provide what was promised, and what it continues to promise on its website. There is no difference of opinion, only a failure to provide a specific type of educational services in a specific format that was promised by Xavier and paid for by the Plaintiff and the Class Members.

**ANSWER: Deny.**

18. Xavier's actions have financially damaged Plaintiff and the Class Members. Plaintiff brings this action because Plaintiff and the Class Members did not receive the full value of services paid for. Moreover, Xavier is being unjustly enriched by students who have paid Xavier money that equity demands should rightfully belong to Plaintiff and the Class Members. Plaintiff and the Class Members have lost the benefit of their bargain and/or suffered out-of-pocket loss.

**ANSWER: Deny.**

19.     In addition, Xavier by its past and continued actions violates the CSPA with regard to Plaintiff and the Class Members.  Accordingly, Plaintiff seeks reimbursement of tuition and fees on behalf of herself and the Class Members, as well as damages permitted under the CSPA, and injunctive relief prohibiting Xavier from continuing to misrepresent the nature of the program and the eligibility to begin the practice of nursing anywhere in the United States without additional coursework or practical hours.

**ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), because at least one member of the Class is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

**ANSWER: This Paragraph contains a legal conclusion to which no response is required.**

21.     This Court has personal jurisdiction over Xavier because Xavier's principal place of business is in the State of Ohio and it is incorporated in the State of Ohio as a non-profit corporation.

**ANSWER: Admit.**

22.     Venue is appropriate because Xavier's principal place of business is in Cincinnati, Hamilton County, Ohio.

**ANSWER: Admit.**

## THE PARTIES

23.     Defendant Xavier University is a private university incorporated as a non-profit corporation in the State of Ohio.  Its headquarters and principal place of business are in Cincinnati, Ohio.  Xavier's ABSN program is offered to students in Cincinnati, Columbus, and Cleveland, Ohio.

**ANSWER: Admit.**

24.     Plaintiff is domiciled in the State of New York.  She currently lives and is enrolled as a student at Xavier University in Cincinnati, Ohio within Xavier's College of Nursing ABSN Program.

> **ANSWER: Xavier denies that Plaintiff is currently enrolled as a student at Xavier University in its College of Nursing ABSN Program. *See* Answer to Paragraph 1 above. Xavier is without knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and therefore denies the same.**

25.     Plaintiff enrolled in Xavier's ABSN program in January of 2020 and her anticipated graduation date is May of 2021.  She incurred substantial federal student loans to pay for this education.

> **ANSWER: Xavier admits that Plaintiff enrolled in its ABSN program in January 2020, graduated in May of 2021, and incurred federal student loans. Xavier denies all remaining allegations in this Paragraph.**

26.     Following graduation, Plaintiff would like to work as an emergency room nurse in the State of Florida.

**ANSWER: Xavier is without knowledge or information to form a belief as to the truth of the allegations in this Paragraph and therefore denies the same.**

27.     When Plaintiff started looking for ABSN programs, Xavier was one of the first schools to reach out.  Plaintiff spoke with Xavier's admissions coach and was advised to review Xavier's website.  Plaintiff noticed that the website emphasized Xavier's hands-on learning approach and included videos of previous nursing students highlighting the clinical and lab experience provided by Xavier.

**ANSWER: Xavier's website speaks for itself and no response is required to the allegations regarding its terms. To the extent the characterization of Xavier's website or the terms thereunder differs from its actual terms, those allegations are denied. Xavier is without knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and therefore denies the same.**

28.     Based on Xavier's representations, Plaintiff understood that the ABSN program would provide the prerequisites for licensing in all 50 states and the District of Columbia, as well as certain other countries.  The mobility afforded by Xavier's ABSN degree was material to Plaintiff's decision to enroll in Xavier's ABSN program.

**ANSWER: Xavier is without knowledge or information to form a belief as to the truth of the allegations in this Paragraph and therefore denies the same.**

29.     When she enrolled as a Xavier ABSN student, Plaintiff did not understand that Xavier's college of nursing had not developed the curriculum and was not providing the didactic instruction or the educational materials.

**ANSWER: Xavier is without knowledge or information to form a belief as to the truth of the allegations in this Paragraph and therefore denies the same.**

30. When Plaintiff enrolled in Xavier's ABSN program, she did not know that she was enrolling in a for-profit program run by Orbis with Xavier's name slapped on the literature and using Xavier as primarily an enrollment portal.

**ANSWER: Xavier is without knowledge or information to form a belief as to the truth of the allegations in this Paragraph and therefore denies the same.**

31. Plaintiff understood that Xavier nursing faculty would teach the ABSN program based on representations on Xavier's website and literature that referred to the ABSN personnel as "Xavier faculty". She relied on such representations in selecting Xavier for her education.

**ANSWER: Xavier's website speaks for itself and no response is required to the allegations regarding its terms. To the extent the characterization of Xavier's website or the terms thereunder differs from its actual terms, those allegations are denied. Xavier is without knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and therefore denies the same.**

32. Plaintiff also chose to enroll in the ABSN program at Xavier, in part, because Xavier's classes are typically smaller than classes at similar institutions, thus allowing professors to teach skills one-on-one with no rush. Furthermore, she relied on Xavier's representations related to Xavier's simulation lab and skilled labs that offered the ability to learn important hands-on practice in state-of-the-art facilities before practicing on real patients. Lastly, Xavier promised clinical placements in prestigious hospitals throughout Cincinnati, which Plaintiff relied in selecting Xavier.

**ANSWER: Xavier is without knowledge or information to form a belief as to the truth of the allegations in this Paragraph and therefore denies the same.**

33. But for the hand-on lab and clinical learning experience promised by Xavier, Plaintiff would not have enrolled in Xavier's ABSN program. In addition, but for the promise of

a Xavier education with Xavier faculty, Plaintiff would not have enrolled in Xavier's ABSN program.

**ANSWER: Xavier is without knowledge or information to form a belief as to the truth of the allegations in this Paragraph and therefore denies the same.**

34. Despite paying full tuition and not receiving a refund, in Plaintiff's first semester alone, she estimates that she missed out on over 300 hours of hands-on learning experience.

**ANSWER: Xavier admits that, during the middle of the Spring 2020 semester, it transitioned to remote instruction in response to the COVID-19 pandemic. Xavier admits that some students are required to pay tuition as a condition of enrollment in the ABSN program. Xavier admits that it has not refunded tuition for the Spring 2020 semester, as no such refund is warranted or required. Xavier denies the remaining allegations in this Paragraph.**

35. Moreover, Plaintiff was required to purchase supplies for clinicals, including but not limited to Xavier scrubs, nurse badge, and stethoscope.

**ANSWER: Xavier admits that some students are required to purchase supplies as a condition of enrollment in the ABSN program.**

36. Plaintiff was also required to pay an annual "student activity fee" to Xavier that has not been refunded even though there are currently no student activities.

**ANSWER: Plaintiff's claim for breach of contract based on her payment of student activity fees was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

37. Finally, Plaintiff was required to pay a professional liability insurance fee to Xavier in January 2020 and May of 2020. The insurance fee is intended to provide her with insurance coverage during her clinical learning experiences. This has not been refunded even though Xavier no longer offers clinical learning experiences.

**ANSWER: Xavier admits that some students are required to pay a professional liability insurance fee and that Xavier provides such insurance coverage. Xavier admits that it has not refunded professional liability insurance fees for the Spring 2020 semester, as no such refund is warranted or required, including because the fee is nonrefundable. Xavier denies that it is no longer offering clinical learning experiences and denies the remaining allegations in this Paragraph.**

## FACTUAL ALLEGATIONS

38.     Xavier's ABSN program is an accelerated program comprised of 63 credit hours over four, full-time semesters.  This means that the entire program is completed in 16 months. Once the program is completed, ABSN students receive a bachelor's degree in nursing (BSN), something that typically takes four years to achieve.

**ANSWER: Admit.**

39.     Each year, Xavier admits roughly 360 new students to the ABSN program in Cincinnati (i.e., 120 new students each January, May and August).  More are admitted in Xavier's Cleveland and Columbus ABSN programs during the same enrollment periods, but Plaintiff will not know the exact amount before discovery.  Upon information and belief, because the ABSN program takes 16 months to complete, there are at least 480 students in the ABSN program at any given time.

**ANSWER: Xavier admits the ABSN program generally takes 16 months to complete and denies all remaining allegations in this Paragraph.**

40.     The accelerated timeline for earning the degree is possible because Xavier's ABSN program is reserved for students who previously earned a non-nursing bachelor's degree.  This allows Xavier to offer ABSN students an accelerated learning experience focused solely on nursing.  The accelerated timeline is what attracts many students to the program.  It is also what

12

keeps many students in the program who might otherwise depart; the rapid pace of the studies and the amount of money committed through just one or two semesters is so substantial that students are not able to simply stop their studies in the ABSN program and transfer to another post-graduate nursing licensure program.

> **ANSWER: Xavier admits that its ABSN program is reserved for students who previously earned a non-nursing bachelor's degree, which thus provides ABSN students with an accelerated learning experience. Xavier is without knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and therefore denies the same.**

41.     Xavier divides its ABSN coursework into three components: online classes, onsite labs, and clinical placements.

> **ANSWER: Xavier admits that, when safe to do so, and not contrary to public policy, applicable laws, executive orders, and regulatory guidance, it typically offers online classes, onsite labs, and clinical placements.**

42.     Xavier leads ABSN students to believe that its curriculum is taught by Xavier faculty. For example, Xavier posts a purported review in a prominent area of its ABSN webpage that states, *"Xavier faculty wants you to be successful, they want you to be where you want to be in life."* However, much or all of the ABSN students' instruction comes from Orbis employees or agents that are not members of Xavier's faculty.

> **ANSWER: Xavier's website speaks for itself and no response is required to the allegations regarding its terms. To the extent the characterization of these terms differs from its actual terms, those allegations are denied. Xavier denies the remaining allegations in this Paragraph.**

43.     The online course work is designed to teach "the fundamentals and theories of the profession" to help "set the foundation for your nursing education."

> **ANSWER: Xavier's marketing materials drafted prior to the transition to remote learning during the COVID-19 pandemic speak for themselves and no response is**

**required to the allegations regarding their terms. To the extent the characterization of these materials differs from their actual terms, those allegations are denied.**

44.     Xavier leads ABSN students to believe that the online portion of its curriculum will be taught through live lectures or recorded lectures with original content. Instead, the majority of the online curriculum is taught through YouTube videos recorded by non-Xavier faculty.

**ANSWER: Deny.**

45.     Xavier is clear to state that "it's important to note that it is impossible to earn a BSN 100% online. As an ABSN student, you'll regularly attend hands-on skills labs at the ABSN Learning Center associated with your program of enrollment. During nursing skills and simulation labs, our clinical instructors will teach you how to put the core concepts your learned online into practice."

**ANSWER: Xavier's marketing materials drafted prior to the transition to remote learning during the COVID-19 pandemic speak for themselves and no response is required to the allegations regarding their terms. To the extent the characterization of these materials differs from their actual terms, those allegations are denied.**

46.     Xavier bills its "onsite curriculum" as vital to the success of its ABSN program. Offered in carefully planned conjunction with academic coursework, the onsite curriculum is promised to provide students experiences that would otherwise be taught only through textbooks and lectures. Without it, regardless of the quality of education actually received, nursing students would be forced to enter real medical practice without any prior real experience or patient interaction. Students without such hands-on practical training are much less competitive in the market for professional employment.

**ANSWER: Xavier's marketing materials drafted prior to the transition to remote learning during the COVID-19 pandemic speak for themselves and no response is required to the allegations regarding their terms. To the extent the characterization**

of these materials differs from their actual terms, those allegations are denied. Xavier denies the remaining allegations in this Paragraph, including because they are ambiguous.

47.     ABSN students take different classes in each of their four semesters.  However, each semester includes in-person, hands-on learning through simulation labs and/or clinical experience.

**ANSWER: Xavier admits that ABSN students often take different classes in each of their four semesters. Xavier denies the remaining allegations in this Paragraph.**

48.     Xavier repeatedly emphasizes the importance of its "onsite curriculum" in its online representations.  This onsite curriculum is two-thirds of the three key components to Xavier's ABSN program.

**ANSWER: Xavier's marketing materials drafted prior to the transition to remote learning during the COVID-19 pandemic speak for themselves and no response is required to the allegations regarding their terms. To the extent the characterization of these materials differs from their actual terms, those allegations are denied. Xavier denies the remaining allegations in this Paragraph, including because they are ambiguous.**

49.     The first of these two key components is the onsite skills and simulation labs. This hands-on coursework "serv[es] as a bridge between online coursework and clinical practice," and is where Xavier's "top-notch clinical instructors teach you how to put nursing theory into practice." Among the skills practiced:  Monitoring blood pressure, giving shots, dressing puncture wounds, caring for tracheotomies, inserting feeding tubes, administering intravenous therapy, and setting up oxygen delivery.

**ANSWER: Xavier's marketing materials drafted prior to the transition to remote learning during the COVID-19 pandemic speak for themselves and no response is required to the allegations regarding their terms. To the extent the characterization of these materials differs from their actual terms, those allegations are denied.**

50.     Videos created by Xavier promote Xavier's skills lab program as using advanced computerized manikin simulations so that students can "actively engage in patient assessment and treatment." The simulations are recorded, and the professors then walk through the students' actions afterwards. "Simulation debriefings are invaluable because they allow you to learn from and correct your mistakes under the guidance of faculty."

**ANSWER: Xavier's marketing materials drafted prior to the transition to remote learning during the COVID-19 pandemic speak for themselves and no response is required to the allegations regarding their terms. To the extent the characterization of these materials differs from their actual terms, those allegations are denied.**

51.     Xavier's skills lab is touted as doing "a great job in preparing your for clinical practice." Moreover, "[t]hese experiences can also expose you to high-pressure critical care situations that are not available through clinicals." Because the labs are only simulations, they allow the students to practice in a "risk-free learning environment."

**ANSWER: Xavier's marketing materials drafted prior to the transition to remote learning during the COVID-19 pandemic speak for themselves and no response is required to the allegations regarding their terms. To the extent the characterization of these materials differs from their actual terms, those allegations are denied.**

52.     The importance of in-person attendance is shown through the grading rubric for these courses. For example, for Nursing 301 – Nursing Concepts in Mental Health I Practicum, Clinical Performance Evaluations count for 35% while Virtual Labs counts for 5% of the grade. As another example, for Nursing 203 – Foundations of Nursing Practice II Practicum, Final Lab Practicum Evaluation is 25%, Clinical Performance Evaluation is 15%, and Lab Guides and Attendance is 10% of the grade.

**ANSWER: Xavier's grading rubrics for its ABSN courses speak for themselves and no response is required to the allegations regarding the terms of those documents. To**

**the extent the characterization of those documents or the terms therein differs from their actual terms, those allegations are denied.**

53.     Such representations, copied in part below, formed the basis for Plaintiff and other Class Members' understanding of what Xavier offered for nursing skills laboratories:

**ANSWER: Xavier's website speaks for itself and no response is required to the allegations regarding its terms. To the extent the characterization of Xavier's website or the terms thereunder differs from its actual terms, those allegations are denied. Xavier is without knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and therefore denies the same.**

54.     The final component-clinical rotations-"play a significant role in your education, and we provide some of the best placements of any nursing school in Ohio." Key to this is the promise that "[e]very accelerated BSN clinical supports a specific learning objective. As the online courses and nursing labs advance, so does the complexity of your clinicals. By and large, clinicals are active learning environments where you get to perform the tasks a nurse would typically do in a given situation."

**ANSWER: Xavier's marketing materials drafted prior to the transition to remote learning during the COVID-19 pandemic speak for themselves and no response is required to the allegations regarding their terms. To the extent the characterization of these materials differs from their actual terms, those allegations are denied.**

55.     These clinicals "begin the first semester" and have the students working in small groups "alongside experienced nurses to gain a real-world understanding of how nursing theory applies to the care of individuals, families, and communities." As part of these clinicals, Xavier "guarantee[s] your placement in a quality clinical environment." (emphasis added).

**ANSWER: Xavier's marketing materials drafted prior to the transition to remote learning during the COVID-19 pandemic speak for themselves and no response is required to the allegations regarding their terms. To the extent the characterization of these materials differs from their actual terms, those allegations are denied.**

17

56. Separately, Xavier states that it "ensure[s] placement in a quality clinical setting…."

**ANSWER: Xavier's marketing materials drafted prior to the transition to remote learning during the COVID-19 pandemic speak for themselves and no response is required to the allegations regarding their terms. To the extent the characterization of these materials differs from their actual terms, those allegations are denied.**

57. Such representations, copied in part below, formed the basis for Plaintiff and other Class Members' understanding of what Xavier offered for clinical skills courses:

**ANSWER: Xavier is without knowledge or information to form a belief as to the truth of the allegations in this Paragraph and therefore denies the same.**

58. YouTube videos posted to Xavier's website also stress the importance of the hands-on learning experience promised to ABSN students. Examples of Xavier's statements include:

a. "The purpose of skills lab is to give you an introduction to nursing procedures that you will do on patients."'

b. "The first clinical you're really working on vitals, head-to-toe assessments. They try to assign you a patient that is specific to what you are learning that week.";

and,

c. "Skills labs are incredibly helpful for the learning process…Graduating as a Xavier nurse I'll feel prepared. I'll feel like hospitals will fight over me."

**ANSWER: Xavier's website speaks for itself and no response is required to the allegations regarding its terms. To the extent the characterization of Xavier's website or the terms thereunder differs from its actual terms, those allegations are denied. Xavier is without knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and therefore denies the same.**

59. Xavier represents that, "After graduating from our ABSN program, you'll be prepared to sit for the NCLEX-RN exam with confidence and enter the profession as a *practice-ready nurse."* Of course, it is not possible to become a "practice-ready nurse" without ever practicing, let alone seeing in-person, the physical procedures nurses are regularly expected to perform.

> **ANSWER: Xavier's marketing materials drafted prior to the transition to remote learning during the COVID-19 pandemic speak for themselves and no response is required to the allegations regarding their terms. To the extent the characterization of these materials differs from their actual terms, those allegations are denied. Xavier denies the remaining allegations in this Paragraph.**

60. Although COVID-19 has impacted the teaching methods and facilities available to nursing programs, Xavier was **not** required to suspend clinical placements for its ABSN students. In fact, the Ohio Board of Nursing has encouraged "academic-practice partnerships between health care facilities and pre-license RN and PN nursing education programs during the COVID-19 emergency in order to meet academic and workforce needs ...."

> **ANSWER: Xavier admits that COVID-19 impacted the teaching methods and facilities available to nursing programs. Xavier denies that it was "not required to suspend clinical placements for its ABSN students" in the Spring 2020 semester. The referenced excerpt from the Ohio Board of Nursing website speaks for itself and no response is required to the allegations regarding its terms. To the extent the characterization of that website or the terms thereunder differs from its actual terms, those allegations are denied. Xavier denies the remaining allegations in this Paragraph.**

61. Because the clinical practice involves learning and practicing vital nursing skills in real life medical settings with real patients, ABSN students are required to pay Xavier a fee for professional liability insurance. Because clinical practice for ABSN students has been discontinued, ABSN students receive no benefit from the professional liability insurance fee paid to Xavier. However, Xavier has not reimbursed any portion of the professional liability insurance

fees paid by ABSN students in January. Xavier also charged ABSN students for professional liability insurance in May of 2020.

> **ANSWER: Xavier admits that some students are required to pay a professional liability insurance fee and that Xavier provided such insurance coverage. Xavier admits that it has not refunded professional liability insurance fees for the Spring 2020 semester, as no such refund is warranted or required, including because the insurance fee is non-refundable. Xavier denies that "students receive no benefit from the professional liability insurance fee." Xavier denies its clinical practice has been discontinued and denies the remaining allegations in this Paragraph.**

62. Despite no longer providing important hands-on learning experiences, Xavier continues to charge full tuition to ABSN students. In fact, starting in May of 2020, Xavier increased the cost of each credit hour from $880 to $900.

> **ANSWER: Xavier admits that it charges tuition to some students who enroll in the ABSN program, and that the price of tuition is subject to change. Xavier denies the remaining allegations in this Paragraph.**

63. Xavier also has not refunded students for the annual $115 "student activity fee" despite the fact that there are currently no "student activities" that ABSN students are able to take part in.

> **ANSWER: Plaintiff's claim for breach of contract based on her payment of student activity fees was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

64. Moreover, despite no longer providing the promised hands-on learning programs, Xavier charged the full amount for these programs, in effect taking Plaintiff and the Class Members' money without providing any real benefit for that money.

> **ANSWER: Xavier admits that some students are required to pay professional liability insurance fees, student activity fees, and tuition. Plaintiff's claim for breach of contract based on her payment of student activity fees was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the extent the**

**allegations in this Paragraph relate to that claim. Xavier denies all remaining allegations in this Paragraph.**

65.     Without the hands-on learning experience promised through Xavier's ABSN program, the remote learning provided to students loses value because students cannot conceptualize what they have learned through real life practice.  As clearly set out by Xavier, each of the three components to the ABSN education-online theory, onsite practice, and onsite clinicals-are taught from basic to advanced in conjunction with the other two.  Advanced theory provides little education without advanced hands-on experience.  But that incrementally advancing hands-on experience is exactly where Xavier is failing.  As a result, Plaintiff and the Class Members, unable to engage in the hands-on learning at the core of Xavier's ABSN program, have lost at least a semester of their studies, in both time and in the money they paid for tuition and other fees.  Furthermore, the monetary value of a Xavier ABSN degree is diminished in light of the fact that the ABSN graduates are not qualified to sit for state licensing exams in over half of the United States.

**ANSWER: Deny.**

## CLASS ALLEGATIONS

66.     Under Rule 23(a), (b)(2), (b)(1)(A), and (b)(3), Plaintiff brings this action on behalf of herself and the Class, initially defined as follows:

> All individuals enrolled as a student in Xavier University's College of Nursing Accelerated Bachelor of Science in Nursing Program in any city in Ohio who paid tuition and fees to Xavier.

> **ANSWER: Xavier admits that Plaintiff seeks to bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Xavier denies the remaining allegations in this Paragraph and denies that any class should be certified.**

67.     The "Relevant Time Period" is the largest period allowed by law.

**ANSWER: The allegations in this Paragraph are vague and ambiguous making it impossible to admit or deny, so they are denied.**

68.     Plaintiff reserves the right to amend and modify the definition of the Class to create greater specificity, further divide into subclasses, or limit to particular issues as the case progresses.

**ANSWER: This Paragraph contains a legal conclusion to which no response is required.**

69.     Excluded from the Class are Defendant, its employees, officers, directors, legal representatives, heirs, successors, and wholly or partially owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

**ANSWER: Xavier admits that Plaintiff seeks to exclude certain persons and entities from the class she seeks to certify. Xavier denies the remaining allegations in this Paragraph and denies that any class should be certified.**

70.     The definition of the Class is unambiguous, and Plaintiff is a member of the Class she seeks to represent.

**ANSWER: Deny.**

71.     While the exact number of Class Members is unknown to Plaintiff at this time, on information and belief, Defendant Xavier has at least 480 students enrolled in its ABSN program at any given time.

**ANSWER: Deny.**

72.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other Class Members paid full tuition to Xavier after bargaining for an educational

experience that emphasized in-person, hands-on learning. Yet, Plaintiff and the Class Members received only online education. Furthermore, Plaintiff and each of the Class Members paid Xavier a "student activity fee" and fee for professional liability insurance that provides no cognizable benefit as a result of the fact that Plaintiff and the Class Members no longer receive access to clinical education settings or on-campus student activities.

**ANSWER: Xavier admits that some students are required to pay tuition and fees, including professional liability insurance, as a condition of enrollment in the ABSN program. Xavier admits that, during the middle of the Spring 2020 semester, it transitioned to remote instruction in response to the COVID-19 pandemic. Plaintiff's claim for breach of contract based on her payment of student activity fees was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore Xavier denies that the payment of the "student activity fee" is appropriately considered in determining the typicality of Plaintiff's claims. Xavier denies the remaining allegations in this Paragraph and denies that any class should be certified.**

73. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action litigation.

**ANSWER: Xavier admits that Plaintiff has retained competent and experienced counsel. Xavier is without knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and therefore denies the same.**

74. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making it appropriate for the Court to render final injunctive relief regarding the Class as a whole. Specifically, Defendant continued to collect and/or failed to refund tuition and fees from Class Members even though it is aware that the retention of such funds is unlawful and/or inequitable.

**ANSWER: Deny.**

23

75.     Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual members thereof.  Among the common questions of law and fact are the following:

a.      Did Xavier engage in the conduct alleged?

b.      Does Xavier have a policy and/or procedure of denying refunds, in whole or in part, to Plaintiff and the Class Members?

c.      Did Xavier breach identical contracts with Plaintiff and the Class Members?

d.      Did Xavier fail to honor identical promises to Plaintiff and the Class Members?

e.      Did Xavier retain funds that justice and equity demand be returned to Plaintiff and the Class Members?

f.      Did Xavier and is Xavier continuing to publish misstatements and/or misrepresentations on its website and in its marketing and advertising?

g.      Did Xavier and/or Orbis commit unfair, deceptive, and/or unconscionable acts or practices in its transactions with Plaintiff and the Class Members?

h.      What is the nature and extent of damages and other remedies to which the conduct of Xavier entitles Plaintiff and the Class Members?

**ANSWER: Deny.**

76.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class Members is impracticable.  The prosecution of separate actions by individual Class Members would impose heavy burdens upon courts, Class Members, and Defendant, and would create the risk of inconsistent adjudications of questions of law and fact common to the Class.  Defendant has acted on grounds generally applicable to the class such that the final injunctive relief sought is appropriate respecting the Class

24

as a whole. In addition, the allegations contain herein show that common questions of law and fact predominate over any questions affecting individual Class members and a class action is therefore superior to other available methods for fairly and efficiently adjudicating the controversy. A class action would achieve substantial economies of time, effort, and expense, and would assure uniformity as to persons similarly situated without sacrificing procedural fairness. Plaintiff and the proposed Class satisfy the requirements of Rule 23(b)(1)(A), (b)(2), and/or (b)(3).

**ANSWER: Deny.**

## CAUSES OF ACTION
## COUNT I – BREACH OF CONTRACT

77. All other paragraphs are fully re-alleged and incorporated herein.

**ANSWER: Xavier incorporates by reference its responses to the preceding Paragraphs and denies that any of Plaintiff's preceding allegations related to the student activity fee charged by Xavier should be re-alleged or incorporated by reference as the Court previously dismissed Plaintiff's claim for breach of contract based on her payment of the student activity fee (*see* Doc. 19).**

78. Plaintiff and the Class Members entered into identical, binding contracts with Xavier.

**ANSWER: Xavier denies that any class should be certified, but admits that students in the Xavier nursing programs are bound by Xavier's Handbook.**

79. Under their contracts with Xavier, Plaintiff and the Class Members paid Xavier tuition and fees for Xavier to provide onsite, in-person education through simulated and/or clinical settings. The contracts also entitled Plaintiff and the Class Members to access on campus facilities and take part in student activities.

**ANSWER: Xavier admits that some students are required to pay tuition and fees as a condition of enrollment in the ABSN program. To the extent this Paragraph references (implicitly or explicitly) the student activity fee charged by Xavier, no**

**response is required as the Court dismissed Plaintiff's breach of contract claim related to the student activity fee on March 28, 2022 (*see* Doc. 19). Xavier denies the remaining allegations in this Paragraph.**

80.    For example, Xavier explicitly "guarantee[d]" placement in a quality clinical environment.

**ANSWER: Xavier's marketing materials drafted prior to the transition to remote learning during the COVID-19 pandemic speak for themselves and no response is required to the allegations regarding their terms. To the extent the characterization of these materials differs from their actual terms, those allegations are denied. Xavier denies the remaining allegations in this Paragraph.**

81.    Plaintiff and the Class Members have fulfilled all obligations, having paid Xavier tuition and fees for at least one semester of the ABSN program.

**ANSWER: Xavier admits Plaintiff paid Xavier tuition and fees for at least one semester of the ABSN program. Xavier is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in this Paragraph and therefore denies the same.**

82.    However, Xavier has breached such contracts, failed to provide the educational services in the format agreed to by the parties, and/or has not otherwise performed as required by the contract between the Plaintiff and the Class Members and Xavier.   Xavier has moved all classes to online classes and has restricted or eliminated Plaintiff and the Class Members' ability to access university facilities and/or take part in student activities, and fully eliminated simulated lab and clinical studies.  In doing so, Xavier has and continues to deprive Plaintiff and the Class Members from the benefit of their bargains with Xavier.

**ANSWER: Xavier admits that, during the middle of the Spring 2020 semester, it transitioned to remote instruction in response to the COVID-19 pandemic. Xavier denies the remaining allegations in this Paragraph.**

83.     As evidenced by the allegations herein, Xavier's breaches of contract and subsequent failure to remedy such breaches were committed in bad faith.

**ANSWER: Deny.**

84.     Plaintiff and other Class Members have suffered damages as a direct and proximate result of Xavier's breaches of contract, in an amount to be determined at trial.

**ANSWER: Deny.**

## COUNT II – UNJUST ENRICHMENT

85.     All other paragraphs are fully re-alleged and incorporated herein, except for paragraphs 77-84.

**ANSWER: Xavier incorporates by reference its responses to the preceding Paragraphs and denies that any of Plaintiff's preceding allegations related to the student activity fee charged by Xavier should be re-alleged or incorporated by reference as the Court previously dismissed Plaintiff's claim for breach of contract based on her payment of the student activity fee (*see* Doc. 19).**

86.     At all times relevant hereto, Plaintiff and the Class Members directly conferred non-gratuitous benefits on Xavier, *i.e.*, monetary payments for tuition and fees, including in part on a credit-hour-by-credit-hour basis, so that Plaintiff and the Class Members could avail themselves of in-person and hands-on educational training, student activities, and campus facilities.

**ANSWER: Xavier denies the allegations in this Paragraph, including because Xavier is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph.**

87.     Xavier knew of the benefits conferred on it by Plaintiff and the Class Members and accepted or retained the payments premised upon the existence of services it no longer provided

or has refused to provide.  In effect, Xavier charged Plaintiff and the Class Members for certain benefits and then unilaterally provided benefits worth substantially less, but kept the difference in value.

**ANSWER: Deny.**

88.     Xavier knows that it does not have any lawful right to retain such tuition and fees paid by Plaintiff and Class Members.

**ANSWER: Deny.**

89.     Xavier's retention of tuition and fees is unjust under the circumstances of this case because of acceptance of such payments was premised upon the existence of services that Xavier no longer provides, making it wholly inequitable for Xavier to improperly retain the benefits of Plaintiff and the other Class Members' payments and entitling Plaintiff and the other Class Members who made such payment to full restitution, including interest, in an amount to be determined at trial.

**ANSWER: Deny.**

90.     Allowing Xavier to retain the aforementioned payments violates fundamental principles of fairness and equity.

**ANSWER: Deny.**

## COUNT III – PROMISSORY ESTOPPEL

91.     All other paragraphs are fully re-alleged and incorporated herein, except for paragraphs 77-84.

**ANSWER: Xavier incorporates by reference its responses to the preceding Paragraphs and denies that any of Plaintiff's preceding allegations related to the**

**student activity fee charged by Xavier should be re-alleged or incorporated by reference as the Court previously dismissed Plaintiff's claim for breach of contract based on her payment of the student activity fee (*see* Doc. 19).**

92.    As detailed throughout this Complaint, Xavier made clear, unambiguous, and uniform promises to Plaintiff and the Class Members that it would provide onsite, in-person education and learning experiences through simulated and/or clinical settings.

**ANSWER: Deny.**

93.    Xavier also promised that Plaintiff and the Class Members would have the ability to take part in student activities and have access to campus facilities.

**ANSWER: Deny.**

94.    Xavier knew or should have reasonably expected Plaintiff and the Class Members would rely on these promises due to the emphasis Xavier placed on onsite and/or in person experiences in its marketing, recruitment, and informational material (as detailed throughout this Complaint).

**ANSWER: Deny.**

95.    Xavier broke its promises to Plaintiff and the Class Members when it discontinued student activities.

**ANSWER: Deny.**

96.    Xavier broke its promises to Plaintiff and the Class Members when it discontinued or failed to provide in-person, hands-on learning experiences in simulated and/or clinical settings.

**ANSWER: Deny.**

29

97. Plaintiff and the Class Members relied on these promises to their detriment when they paid tuition and fees.

**ANSWER: Xavier denies the allegations in this Paragraph, including because Xavier is without sufficient knowledge or information to form a belief as to the truth of the allegations in this Paragraph.**

98. Injustice can only be avoided by enforcement of Xavier's promises and/or payment in the form of restitution and/or damages in an amount to be determined at trial.

**ANSWER: Deny.**

## COUNT IV – OHIO CONSUMER SALES PRACTICES ACT

99. All other paragraphs are fully re-alleged and incorporated herein.

**ANSWER: Xavier incorporates by referenced its responses to the preceding Paragraphs and denies that any of Plaintiff's preceding allegations related to the student activity fee charged by Xavier should be re-alleged or incorporated by reference as the Court previously dismissed Plaintiff's claim for breach of contract based on her payment of the student activity fee (*see* Doc. 19).**

100. Defendant is a supplier as defined under R.C. 1345.01 because it supplied educational services to Plaintiff and the Class Members.

**ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

101. Plaintiff and the Class Members are consumers defined under R.C. 1345.01 because they received educational services in their personal capacity from Defendant.

**ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

102.    Plaintiff and the Class Members' agreements to receive a specific form of educational services in exchange for monetary remuneration were consumer transactions under R.C. 1345.01.

**ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

103.    Defendant's acts as described throughout the Complaint constitute unfair, deceptive, and/or unconscionable acts in violation of the CSPA, R.C. 1345.02 and R.C. 1345.03.

**ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

104.    For example, Defendant violated R.C. 1345.02(B), which notes that it is deceptive for Defendant to state that the services it provides "ha[ve] sponsorship, approval, performance characteristics, accessories, uses, or benefits that [they] do not have," are "of a particular standard, quality, grade, style prescription, or model, if [they are] not," have "been supplied in accordance with a previous representation, if [they have] not," have "a sponsorship, approval, or affiliation that [they] do[] not have," or that a transaction "involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false." *See* R.C. 1345.02(B)(1), (2), (5), (9), and (10).

**ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

105.    Examples of unconscionable acts by Defendant include, but are not limited to, knowingly making misleading statements of opinion on which Plaintiff and the Class Members were likely to rely on to their detriment, knowingly providing services at a price substantially in excess of the price at which similar services were readily obtainable in similar consumer transactions by Plaintiff and Class Members, supplying services that it knew Plaintiff and Class Members would not receive a substantial benefit from, and/or requiring Plaintiff and Class Members to enter into consumer transactions on terms it knew were substantially one-sided in its favor.  *See* R.C. 1345.03(B)(2), (3), (5), and (6).

**ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

106.    Defendant violated the CSPA when it intentionally breached contracts with Plaintiff and the Class Members.

**ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

107.    Defendant violated the CSPA when it failed to provide Plaintiff and the Class Members with in-person nursing simulation labs, clinical experiences, and/or student activities and then failed to provide a refund.

**ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

108.    To the extent Defendant argues that the agreement did not require it to provide refunds for the failure to provide in-person nursing simulation labs, clinical experiences, and/or

student activities, Defendant knowingly committed CSPA violations by requiring Plaintiff and the Class Members to enter into consumer transactions on terms Defendant knew were substantially one-sided is its favor.

> **ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

109.    To the extent Defendant argues that the agreements did not require it to provide refunds for failure to provide in-person nursing simulation labs, clinical experiences, and/or student activities, Defendant knowingly violated the CSPA by requiring that Plaintiff and Class Members waive their rights under the CSPA.

> **ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

110.    To the extent Defendant argues that the agreements did not require it to provide refunds for failure to provide in-person clinical experiences, Defendant violated the CSPA when it represented that Plaintiff and the Class Members were "guarantee[d]" placement in a quality clinical environment.

> **ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

111.    Defendant violated the CSPA when it gave Plaintiff and the Class Members the reasonable expectation that, following graduation, they would be qualified to sit for a state licensing exam and practice nursing in any state across the United States, as well as certain other

countries. Examples of representations providing these reasonable expectations include, but are not limited to:

    a.     "Practice in any state across the U.S. and in many countries".

    b.     "Graduates practice nursing throughout the tri-state area and throughout the United States".

    c.     "Graduates practice nursing throughout the tri-state area and throughout the United States".

    d.     "They're in hospitals, clinics and offices in greater Cincinnati and places like Indianapolis, Chicago and Boston."

    e.     "With nurses in high demand all over the country and our ABSN program providing a 16-month transition into the profession, there's never been a better time to apply to our School of Nursing."

**ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

112.    Xavier continues to publish thee and other misleading representations concerning licensing on its website to Plaintiff and the Class, in violation of the CSPA.

**ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

113.    Defendant committed violations of the CSPA when it misled Plaintiff and the Class Members as to Orbis's role in the educational services provided.

**ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and**

therefore no response is required to the allegations of this Paragraph. **To the extent a response is required, Xavier denies the allegations of this Paragraph.**

114.    Defendant committed violations of the CSPA when it gave Plaintiff and the Class Members the reasonable expectation through its representations that the online portion of the curriculum would be taught by Xavier faculty members.

> **ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

115.    Defendant violated the CSPA by continually stalling its legal obligations to Plaintiff and the Class Members, including but not limited to the obligation to provide in-person clinicals and simulation labs or provide refunds for failure to provide these services.

> **ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

116.    Defendant committed violations of the CSPA when it represented that ABSN students would receive hands-on training in simulated and clinical environments, despite knowing that no such learning would take place at any point in the near future.  For example, on May 18, 2020, Xavier posted to Facebook a link to a Xavier blog post.  The text of the Facebook post stated: "See what a well-rounded accelerated nursing education looks like."  The blog post that the Facebook post linked to stated ABSN students would receive "HANDS-ON PRACTICE" and "CLINICAL EXPERIENCE".

> **ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

117.    Defendant's acts and practices are immoral, unethical, unjust, oppressive, and unscrupulous.

**ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

118.    Defendant was on notice before the filing of this suit that is conduct violated the CSPA:

a.    *Krueck v. Youngstown State Univ.*, 2019-Ohio-3219, 131 N.E. 3d 1030, ¶¶ 16-21 (9th Dist.) (allegations concerning statements made to student giving her reasonable belief she would be able to sit for licensing exam without additional work following graduation sufficient to state claim under CSPA);

b.    *Ajibola v. Ohio Med. Career College, Ltd.*, 2018-Ohio-4449, 122 N.E. 3d 660, ¶¶ 36-37 (2d Dist.) (allegations of misrepresentations about nursing program to nursing students prior to their enrollment sufficient to state claim under CSPA);

c.    *Hacker v. Natl. College of Bus. & Tech.*, 186 Ohio App.3d 203, 2010-Ohio-380, 927 N.E. 2d 38, ¶¶ 22-24 (2d Dist.) (misrepresentations to students concerning educational program through course materials sufficient for trier of fact to find violation of CSPA);

d.    *Malone v. Acad. of Ct. Reporting*, 64 Ohio App.3d 588, 593-594 N.E. 2d 54 (10th Dist. 1990) (CSPA applies to untrue or misleading statements to students);

e.    *State ex rel. Fisher v. Warren Star Theatre*, 84 Ohio App.3d 435, 438, 616 N.E.2d 1192 (11th Dist. 1992) (nonprofit corporation violated the CSPA by accepting

money for specific services and then failing to make full refunds when those

services were cancelled);

f. *Daniels v. True*, 47 Ohio Misc.2d 8, 547 N.E. 2d 425, 427 (M.C.1988)

(misleading statements about supplier's identity and/or continually stalling and

evading legal obligations to consumers constitute violations of CSPA);

g. *Layne v. McGowen*, 2d Dist. Montgomery No. 14676, 1995 WL 316233, *5 (May

24, 1995) (concealment of supplier's true identity and/or continually stalling legal

obligations to consumers constitute CSPA violations);

h. *Brown v. Spears*, Franklin M.C. No. 8897, 1979 WL 52451, *3 (Aug. 20, 1979)

(knowing breach of contract violates of CSPA);

i. *Teeters Constr. V. Dort*, 2006-Ohio-7254, 869 N.E. 2d 756, ¶ 42 (M.C.) (failure

to include all material statements, representations, and promises in contract is a

violation of the CSPA);

j. *State ex rel. Celebrezze v. Venture Out Resorts, Inc.*, Ohio C.P. No. 43-14146,

1988 WL 877630, *3 (Fed. 24, 1988) (utilization of agreement allowing supplier

to unilaterally alter terms of agreement violates CSPA);

k. *State ex rel. Fisher v. Renters' Assistance Found., Inc.*, 10th Dist. Franklin No.

92AP-1590, 1993 WL 360277, *5-6 (Sept. 14, 1993) (upholding finding of one-

sided contract in violation of CSPA based in part on contract that contained no

guarantee defendants would perform contractual promises or definite time frame

for performance);

l. *State ex rel. Celebrezze v. Ferraro*, 63 Ohio App.3d 168, 172, 578 N.E.2d 492,

494 (2d Dist. 1989) (representations that have the effect of lulling a consumer into

believing that services offered by the supplier are somehow guaranteed when they are not is a violation of the CSPA); and

m.    *State ex rel. Celebrezze v. Chimento*, Mahoning C.P. No. 80 CV 1520, 1984 WL 264715, *2 (Sept. 21, 1984) (supplier of services violates CSPA by requiring consumers waive rights afforded by the CSPA).

**ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

119.    Defendant was on notice under Ohio Administrative Code § 109:4-3-10(A), which states:

It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to:

(A) Make any representations, claims, or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims, or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims, or assertions of fact;
…

**ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

120.    Defendant was on notice under Ohio Administrative Code § 109:4-3-09(A)(2), which states:

(A) It shall be a deceptive act or practice in connection with a consumer transaction for a supplier;

(2) To accept money from a consumer for goods or services ordered by mail, telephone, the internet, or otherwise and then permit eight weeks to elapse without:

(a) Making shipment or delivery of the goods or services ordered;

(b) Making a full refund;

(c) Advising the consumer of the duration of an extended delay and offering to send the consumer a refund within two weeks if the consumer so requests; or

(d) Furnishing similar goods or services of equal or greater value as a good faith substitute if the consumer agrees.

**ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

121. Defendant was on notice under Ohio Administrative Code § 109:4-3-02(A)(1), which states:

It is a deceptive act or practice in connection with a consumer transaction for a supplier in the sale or offering for sale of goods or services, to make any offer in written or printed advertising or promotional literature without stating clearly and conspicuously in close proximity to the words stating the offer any material exclusions, reservations, limitations, modifications, or conditions. Disclosure shall be easily legible to anyone reading the advertising or promotional literature and shall be sufficiently specific so as to leave no reasonable probability that the terms of the offer might be misunderstood.

**ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

122. Defendant was on notice under Ohio Administrative Code § 109:4-3-02(D), which states:

It is a deceptive act or practice in connection with an offer made through any online or digital medium, to make any offer without stating clearly and conspicuously, in close proximity to the words stating the offer, any material exclusions, reservations, limitations, modifications, or conditions. Disclosures should be as near to, and if possible on the same screen, as the triggering offer. If scrolling or a hyperlink is necessary to view the

disclosure, the advertisement should guide consumers with obvious terms or instructions to scroll down or click on the hyperlink.  Hyperlinked disclosures should lead directly to the disclosed information and not require scrolling or clicking on any additional hyperlinks.

**ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

123.    Plaintiff and the Class Members are entitled to recover damages and other appropriate relief, as alleged herein.

**ANSWER: Plaintiff's claim for alleged violations of the Ohio Consumer Sales Practices Act was dismissed by the Court on March 28, 2022 (*see* Doc. 19), and therefore no response is required to the allegations of this Paragraph. To the extent a response is required, Xavier denies the allegations of this Paragraph.**

## AFFIRMATIVE DEFENSES

1.    The Complaint fails to state a claim upon which relief can be granted.

2.    Xavier acted reasonably and in good faith at all times.

3.    Plaintiff's claims are barred by Xavier's complete performance of the contract.

4.    Plaintiff's claims fail because Xavier did not make any promise to provide in-person classes in all circumstances.

5.    Plaintiff's claims are barred by provisions of Xavier's Handbook to which Plaintiff and members of the proposed class specifically agreed.

6.    Plaintiff's claim is barred because she seeks return of non-refundable fees.

7.    Plaintiff's claims are barred by the doctrines of accord and satisfaction.

8.    Plaintiff's claims are barred by the doctrines of estoppel, waiver, release, acquiescence, ratification, and/or assumption of risk.

9.    Plaintiff's claims are barred by the doctrines of impracticability, impossibility, Act of God, *force majeure*, and/or frustration of purpose.

10.    Plaintiff's claim is moot because she has now graduated from Xavier's ABSN program.

11.    Plaintiff has not suffered any damages (nor has any member of the proposed class).

12.    In the event Plaintiff (or any member of the proposed class) suffered damages, such damages were not caused by Xavier, which Plaintiff (and any member of the proposed class) also failed to mitigate.

13.    Plaintiff's claims do not meet the requirements of Federal Rule of Civil Procedure 23 for class certification.

14.    Plaintiff cannot bring suit in a representative capacity as a class action to the extent that she is not similarly situation to the other members of the proposed class action class.

15.    Plaintiff has not suffered any compensable damage.

16.    Plaintiff's claims for unjust enrichment and promissory estoppel are barred because the parties have a written contract.

17.    Plaintiff's claims for breach of implied contract fail because the parties have a written contract.

18.    To the extent Plaintiff asserts that there was an implied contract for in-person delivery of education and services under all circumstances (including during a global pandemic and despite governmental executive orders and recommendations/guidance from the Centers for Disease Control and the World Health Organization), such a contract would be illegal and/or void as against public policy.

19.     To the extent Plaintiff asserts that there was an implied contract for in-person delivery of education and services under all circumstances (including during a global pandemic and despite governmental executive orders and recommendations/guidance from the Centers for Disease Control and the World Health Organization), Xavier's performance of such terms under the circumstances is excused by the doctrine of either mutual or unilateral mistake, because there was no meeting of the mind as to such terms.

20.     Plaintiff's claims are "educational malpractice" claims, which are not actionable.

21.     Plaintiff's claims are barred because they impermissibly ask this Court to adjudicate the quality of the educational services that she received.

22.     Xavier reserves the right to assert additional affirmative defenses at such time and to such extent as warranted by discovery and the factual developments in this case.

Respectfully submitted,

*/s/ Aaron M. Herzig*
Aaron M. Herzig (0079371)
Medora M. Akers (0096419)
David Dornette (0098903)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
Phone: (513) 381-2838
Fax: (513) 381-0205
aherzig@taftlaw.com
makers@taftlaw.com
ddornette@taftlaw.com

*Attorneys for Defendant Xavier University*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed on April 11, 2022, using the Court's ECF system, which will serve the filing on all counsel of record.

*/s/ Aaron M. Herzig*