# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **XIMENA MIRANDA**, *on behalf of herself and those similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> **XAVIER UNIVERSITY,** <br><br> Defendant. | Case No. 1:20-cv-00539 <br><br> Judge Timothy S. Black |

### PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL
### OF CLASS ACTION SETTLEMENT

Pursuant to Fed. R. Civ. P. 23(e), Plaintiff Ximena Miranda ("Plaintiff"), on behalf of herself and the Class, respectfully moves this Court to enter the proposed Order (attached as **Exhibit 1**). Per Local Rule 7.3, Plaintiff consulted with Defendant before filing this Motion and determined that this Motion is unopposed. The grounds for the Court's potential granting of this unopposed Motion are included in the accompanying Memorandum in Support of Unopposed Motion for Final Approval of Class Action Settlement. This Motion is supported by the Declaration of Terence R. Coates in Support of Final Approval of Class Action Settlement ("Coates Final Approval Decl.") attached as **Exhibit 2**, and the Declaration of Robert Hyte Regarding Notice Mailing ("SSI Decl.") attached as **Exhibit 3**.

1

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

I.   PRELIMINARY STATEMENT

Plaintiff respectfully requests that the Court grant final approval of the Settlement that it preliminarily approved on June 20, 2023.[1] Since the granting of preliminary approval, an effective email notice process was utilized to inform the Class Members of the Settlement, and there have been no objections and no-opt outs. This speaks to the strength of the settlement and supports final approval.

II.   FACTUAL BACKGROUND

   A.   Litigation and Settlement

On July 10, 2020, Class Representative Ximena Miranda filed a complaint against Defendant Xavier University ("Xavier") alleging that Plaintiff and Class Members were financially damaged and did not receive the benefits of in-person instruction when Xavier switched to online courses in lieu of onsite courses due to COVID-19. (Doc. 1, Complaint). Plaintiff asserted claims for: (1) breach of contract; (2) unjust enrichment; and (3) promissory estoppel. *Id.* On October 10, 2020, Plaintiff amended her complaint to add a claim for violation of Ohio Consumer Sales Practices Act, R.C. § 1345.01, et seq. (Doc. 11, Amended Complaint).

On September 11, 2020, Xavier filed a Motion to Dismiss Plaintiff's Amended Complaint. And then after the Amended Complaint was filed, Xavier filed a Motion to Dismiss the Amended Complaint on October 30, 2020. (Doc. 13, Motion to Dismiss). Following full briefing on the Motion to Dismiss, the Court issued an order granting in part and denying in part Xavier's Motion to Dismiss on March 28, 2022. The Court dismissed Plaintiff's claim for breach of contract based

---

[1] The detailed procedural background, along with facts and argument supporting certification and settlement, may be found in the preliminary approval filings of this docket. *See* Doc. 27.

2

on her payment of student activity fees and Plaintiff's claim under the Ohio Consumer Sales Practices Act and allowed Plaintiff's claims for breach of contract as to tuition and professional liability insurance, unjust enrichment, and promissory estoppel to proceed. (Doc. 19, Order). Following the Court's ruling on the Motion to Dismiss, the Parties agreed to utilize retired United States Magistrate Judge Morton Denlow for mediation. Coates Preliminary Approval Decl., Doc. 27-3, ¶ 5.

The Settlement was a result of several months of arms'-length negotiations and hard bargaining. Judge Denlow conducted an extensive mediation process, including pre-mediation sessions, detailed mediation statements, class action checklist, and a full day of mediation. *Id.* The mediation session was conducted on December 19, 2022, through Zoom with an agreement in principle finally being reached that day. *Id.* The Parties continued to negotiate the final details over the course of several months before the Settlement Agreement was finalized. *Id.*

Plaintiff filed an unopposed motion for preliminary approval of a proposed settlement on April 28, 2023. (Doc. 27). This Court granted preliminary approval on June 20, 2023, starting the notice and claims process to the Class. (Doc. 28). The notice and settlement program was successful, reaching the entire class and resulting in no opt-outs or objections.

B.    **Notice, Objections, and Opt-Outs**

The Court-approved notice program implemented by settlement administrator, Settlement Services, Inc. ("SSI"), was effective and complied with due process. SSI sent email notice to each all Class Members and notice via Regular U.S. mail to the 5 Class Members who did not open their email notice with 10 days of the email notice being sent. SSI Decl., ¶¶ 6-7. This notice was highly effective reaching all 494 class members and with no objections or requests to opt out. *Id.*, ¶¶ 11-12. In addition to direct notice, SSI established the Settlement Website with additional

information, including frequently asked questions and important case documents; and a toll-free hotline. SSI Decl., ¶ 5; *see also* https://xavierabsnsettlement.com/.

### III. ARGUMENT

**A. Final Class Certification for Settlement Purposes is Appropriate.**

This Court preliminarily approved class certification for Settlement purposes in its June 20, 2023 Order (Doc. 28). At this juncture, final approval is appropriate.

1. The Elements of Rule 23(a) are Satisfied.

For a lawsuit to be maintained as a class action under Rule 23, the plaintiffs must establish each of the four threshold requirements of Subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Here, all four elements are satisfied.

   a. *Numerosity*

Rule 23(a)(l) requires that plaintiffs demonstrate that "the class is so numerous that joinder of all members is impracticable." While no specific number of class members is required to maintain a class action, "[w]hen class size reaches substantial proportions. . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citation omitted). Here, there are 494 Class Members, satisfying the numerosity requirement. Coates Preliminary Approval Decl., ¶ 6; SSI Decl., ¶ 3; *see also Caddell v. Campbell*, No. 1:19-cv-91, 2023 WL 3725101, at *2 (S.D. Ohio May 30, 2023) ("The Court agrees that a class containing 500 potential class members meets numerosity."); *Lozada v. Dale Baker Oldsmobile, Inc.*, 197 F.R.D. 321, 329 (W.D. Mich. 2000) (numerosity is satisfied when is

consists of 400 to 500 individuals.); *Afro Am. Patrolmen's League v. Duck*, 503 F.2d 294 (6th Cir. 1974) (numerosity satisfied for class of for a class as small as 35 employees).

### b. Commonality

Rule 23(a)(2) requires a showing of the existence of questions of law or fact common to the class. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). "Their claims must depend upon a common contention of such a nature that it is capable of class-wide resolution- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350. Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 359.

In this case, Plaintiff and the Class Members are all similarly situated students whose claims all turn on the alleged difference in value of the in-person clinical education they were promised, and the value of the online education they received due to COVID-19. Plaintiff and Class Members' claims all rely on the same advertisements, promotional materials, student handbook, and syllabi to support their claims that in-person clinical education was a material term of their enrollment in Xaiver's ABSN program. Commonality is, therefore, satisfied.

### c. Typicality

In order to satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. "The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members." *Chesher v. Neyer*, 215 F.R.D. 544, 549 (S.D. Ohio 2003). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id*. (citing 1 Herbert B. Newberg &

Alba Conte, Newberg on Class Actions, § 3-13, at 3-76 (3d ed. 1992)); *see also Am. Med. Sys.*, 75 F.3d at 1082 (same).

Typicality seeks to ensure that there are no conflicts between the class representatives' claims and the claims of the class members represented. Here, Plaintiff's and Class Members claims all arise out of the same legal theories and alleged improper conduct by Xavier when it cancelled in-person clinical educational programs without providing any tuition refunds. Typicality is satisfied.

### d. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "There are two criteria for determining this element: 1) the representatives must have common interests with the unnamed class members, and 2) it must appear that the representatives will vigorously prosecute the class action through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976).

Here, the Plaintiff is an adequate Class Representative because 1) she paid Xavier tuition and fees as part of her enrollment in Xavier's ABSN program; 2) in reliance on Xavier's promises of in-person curriculum and hands-on training as a component of the ABSN program; 3) she was then subject to Xavier's change of the ABSN curriculum from in-person and hands-on to online only, without receiving any refund for the difference in value in the education; and 4) she has actively participated in the litigation of this Lawsuit. Class Counsel are qualified, possessing a wealth of experience in litigating complex class action lawsuits, which allowed them to negotiate an outstanding settlement for the Class. Coates Preliminary Approval Decl., ¶¶ 3-4. The adequacy requirement is satisfied.

2. <u>The Requirements of Rule 23(b)(3) are Met in the Settlement Context.</u>

Plaintiff seeks to certify a Class under Rule 23(b)(3), which has two components: predominance and superiority. When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and a showing of manageability at trial is not required. *See Amchem Prods. V. Windsor*, 521 U.S. 591, 620 (1997). With respect to predominance, the Sixth Circuit noted that "named plaintiffs must show, and district courts must find, that questions of law or fact common to members of the class predominate over any questions that affect only individual members." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 860 (6th Cir. 2013). With respect to superiority, the Court considers whether a class action is "superior to other methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Here, there are several common questions of law and fact that predominate over any questions that may affect individual Class Members. For example, were this case to proceed, the primary issue would be whether Plaintiff and Class Members still received the full benefit and value of Xavier's representation that the ABSN curriculum would be in in-person and on-site when Xavier changed it to an online curriculum, and whether Xavier is liable as a result. This is an issue subject to "generalized proof," and is a "question that is common to all class members." *See Daffin v. Ford Motor Co.*, No. C-1-00-458, 2004 WL 5705647, at *2 (S.D. Ohio July 15, 2004) (predominance satisfied where significant issues included: 1) whether a defect reduced the value of the car; and 3) whether Ford breached its warranty); *see also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *6 (W.D. Ky. Dec. 22, 2009) ("the proof required [must focus] on Defendant's conduct, not on the conduct of the individual class members"). Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

The second prong of Rule 23(b)(3) - that a class action is superior to other available methods for the fair and efficient adjudication of the controversy - is also readily satisfied. *See* Fed. R. Civ. P. 23(b)(3). The Agreement provides members of the Class with prompt, simple, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of any Class Member who is dissatisfied with the Settlement to object to it or to request exclusion from the Class. The Settlement would also relieve the substantial judicial burdens that would be caused by repeated adjudications in individual trials against Xavier. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." (internal quotations omitted)). Here, individual trials are not feasible for almost five hundred separate students claiming breach of contract and separate associated remedies; the proposed class action with one class remedy is superior.

### B. The Notice Program Preliminary Approved by the Court Was the Best Notice Practicable Under the Circumstances, and Was Successful

In class actions certified under Federal Rule of Civil Procedure 23(b)(3), notice must meet the requirements of Rule 23(c)(2). The latter rule requires that notice to the class be the "best notice that is practicable under the circumstances." Rule 23(c)(2). *See In re Auto. Parts Antitrust Litig.*, No. 12-CV-00103, 2016 WL 8200511, at *10 (E.D. Mich. Aug. 9, 2016) (program satisfied Rule 23 and due process). The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient. *See* Federal Judicial Center, Manual for Complex Litig. § 21.312 (4th Ed. 2004). There is no statutory or due-process requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle*

8

*& Jacqueline,* 417 U.S. 156, 175 (1974). Rule 23€ gives the Court "virtually complete" discretion as to the manner of service of settlement notice. *See Franks v. Kroger Co.,* 649 F.2d 1216, 1223-23 (6th Cir. 1981); *Vassalle v. Midland Funding, LLC*, No. 3:11-CV-00096, 2014 WL 5162380, at *11 (N.D. Ohio Oct. 14, 2014), *aff'd sub nom. Pelzer v. Vassalle*, 655 F. App'x 352 (6th Cir. 2016).

Class Counsel worked closely with the Settlement Administrator to develop and implement the notice program preliminarily approved by the Court. Coates Preliminary Approval Decl., ¶ 9-10. The notice process was thorough and effective in that provided direct notice to all Class Members. Using the Class Member data Xavier provided, the Settlement Administrator was able to provide direct notice to 494 Class Members consisting of 489 Class Members receiving and opening the notice issued via email, and 5 Class Members receiving notice via the Short Form Notice that was sent via regular U.S. mail. Notably, all Class Members were sent the email notice and the 5 Class Members who were issued notice via Regular U.S. mail was the result of them not opening the email notice within 10 days of the email notice being issued. SSI Decl., ¶ 6-7. None of the 5 mailed notices were returned as undeliverable.

In addition to the direct notice plan, the Settlement Administrator also implemented an internet campaign that included the establishment of a settlement website (https://xavierabsnsettlement.com/). *Id*., ¶ 5. Accordingly, Class Counsel and the Settlement Administrator are confident the notice reached 100% of the Class. This exceeds the 70-95% notice guideline that is often cited as meeting the requirements of Rule 23(c)(2)(B) and due process. Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, at 3 (2010), https://workplaceclassaction.lexblogplatform.com/wp-content/uploads/sites/214/2013/07/forms.pdf.

The notice program provided Class Members with a clear and concise statement of their rights under Rule 23(c)(2)(B). (Doc. 60). The notices directed Class Members to the Settlement Website or a toll-free number for additional information regarding how they could opt out of or object to the settlement. *Id*. The notice program meets the structures of Rule 23 and due process and should be approved by the Court.

### C. The Settlement Agreement Merits Final Approval

Under Rule 23(e), the Court may approve this Settlement if it determines that it is "fair, reasonable and adequate." The determination of whether to grant final approval for the Settlement is left to the sound discretion of the Court. *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 778 (N.D. Ohio 2010) (citing *Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990)). The Sixth Circuit has identified the following factors when considering whether to finally approve a class action settlement: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013).

The 2018 amendments to Rule 23(e) also contain specific factors for federal courts to consider in determining whether a class action settlement is fair, reasonable and adequate. *See* Fed. R. Civ. P. 23(e)(2). These factors include:

A. Whether the class representatives and class counsel have adequately represented the class;

B. Whether the proposal was negotiated at arm's length;

C. Whether the relief provided for the class is adequate, taking into account: (i) the costs, risk, and delay of trial and appeal: (ii) the effectiveness of any proposed method of distributing relief to the class including the method of processing class members

10

    claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

  D. Whether the proposal treads class members equitably. *Id.*

These amendments are not intended to displace the factors set forth in case law "but rather focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* at *Advisory Committee's Note to 2018 amendment*. Courts in this Circuit consider both sets of factors when assessing the reasonableness of a settlement and enjoy "wide discretion in assessing the weight and applicability of these factors." *Doe v. Ohio*, No. 2:91-cv-464, 2020 WL 728276, at * 3 (S.D. Ohio Feb. 12, 2020). All of the case law and 23(e) factors weigh in favor of granting final approval.

    1. <u>The Settlement resulted from mediated, arm's-length negotiations without any risk or evidence of fraud or collusion.</u>

  Settlements resulting from arm's length negotiations conducted by court-approved counsel are presumptively reasonable. *See* 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 11.41 at 90 (4th Ed. 2002). Courts presume the absence of fraud or collusion in settlement negotiations unless there is evidence to the contrary. *In re Telectronics Pacing Sys.*, 137 F. Supp. 2d 985, 1106 (S.D. Ohio 2001). Here, there is no evidence of collusion.

  This Settlement was the result of extensive, contentious, arm's-length negotiations between counsel with many decades of experience in handling complex, class action litigation. Negotiations were arduous and lengthy, stretching over months with the assistance of retired U.S. Magistrate Judge Denlow. Coates Preliminary Approval Decl., ¶ 5. Judge Denlow's participation

11

in the Parties' negotiations alone establishes the lack of fraud or collusion in this case.[2] This factor strongly supports granting final approval.

> 2. The complexity, expense, and likely duration of the litigation warrant final approval of the Settlement.

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Brent v. Midland Funding, LLC*, No. 3:11 CV 1332, 2011 WL 3862363, at \*16 (N.D. Ohio Sept. 1, 2011) (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000)). "Thus, '[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Id.* (quoting 4 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.50 (4th ed. 2002)).[3] This case is no different in that it is a consumer class action and a settlement at this stage of the case will avoid the risk of "costs, delays, and multitude of other problems associated" with class action cases.

In the absence of settlement, Plaintiff's action would remain subject to further time-consuming and costly expert-intensive litigation. Even if Plaintiff's action survived summary judgment, trial and appeal, it could take many years and involve substantial expense for all Parties.

---

[2] *See, e.g., Moran v. Wunderlich*, No. 3:05CV073, 2007 WL 3005235, at \*2 (S.D. Ohio Oct. 12, 2007) (noting that settlement negotiations conducted by a federal magistrate judge were arm's-length and without the risk of fraud or collusion); *In re Regions Morgan Keegan Secs.*, Nos. 2:09-2209SMH V, 2:07-cv-02830-SHM-dkv, 2013 WL 12110279, at \*5 (W.D. Tenn. Aug. 6, 2013) (noting that "[t]he parties protected against the risk of fraud or collusion by using a highly qualified and experienced independent mediator during settlement negotiations.").

[3] *See also Amos v. PPG Indus., Inc.*, No. 2:05-cv-70, 2015 WL 4881459, at \*1 (S.D. Ohio Aug. 13, 2015) ("In general, most class actions are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them.") (internal citations and quotations omitted); *Miracle v. Bullitt Cnty., Ky.*, No. CIV.A. 05-130-C, 2008 WL 3850477, at \*6 (W.D. Ky. Aug. 15, 2008) (The "uncertainty of the outcome of the litigation makes it more reasonable for the plaintiffs to accept the settlement offer from the defendant").

The uncertainty of continued litigation stands in stark contrast to the immediate relief offered by this Settlement. Therefore, the Settlement provides Class Members with real, cash benefits now without having to endure the risks, duration, and expense that would surely follow if this litigation were to continue. *See Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The Court has no doubt that the required trials or hearings would have been time consuming, and that a complete resolution of the case would not be reached for several more years. This factor clearly weighs in favor of the proposed settlement.").

        3.   <u>Sufficient discovery was conducted in this case.</u>

The Parties have already engaged in pre-suit investigation and formal discovery process, and Plaintiff was able to properly evaluate the liability and damages case on a class-wide basis. Coates Preliminary Approval Decl., ¶ 7. Furthermore, Defendant provided access to informal confirmatory discovery related to class size, enrollment per semester at issue in this case, and Defendant's potential insurance coverage for Plaintiff's claims. These factors also landed support for granting final approval of the Settlement.

        4.   <u>The likelihood of success balanced against the amount and form of relief offered by the settlement weigh in favor of approving the settlement.</u>

The Sixth Circuit has identified the likelihood of success on the merits as the most important of all the factors a district court must evaluate in assessing the fairness of a class action settlement. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 245 (6th Cir. 2011). A district court must weigh the likelihood that the class ultimately will prevail "against the amount and form of the relief offered in the settlement." *Carson v Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also In re Gen. Tire & Rubber*, 726 F.2d 1075, 1086 (6th Cir. 1984); *UAW v. Gen. Motors, Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

Although Plaintiff remains confident in her claims against Xavier, she recognizes the substantial risks involved in establishing liability and damages in this case. From the outset of this litigation, Defendant has consistently maintained that the allegations in this action are meritless, and tuition reimbursement class actions arising from COVID-19 have faced high levels of scrutiny with low levels of success in the courts.[4] The proposed settlement provides class-wide relief, while the certification granted prior to the proposed settlement was narrower. Furthermore, there is a risk that a jury might award little or nothing in the way of damages. And even if Plaintiff prevailed through summary judgment and trial, she and the Class would still face the potential for prolonged appeals to the Sixth Circuit.

By contrast, the Settlement offers immediate and significant cash payments to all Class Members. Generally, the roughly 494 Class Members who enrolled in a total of 816 impacted semesters will receive a *pro rata* payment from a Common Fund of $750,000, after deductions for Attorneys' Fees and Expenses, settlement administration expenses, and Service Award, if any. Coates Preliminary Approval Decl., ¶ 6.

The Settlement delivers real, tangible value to Class Members. Class Counsel's efforts resulted in a $750,000.00 non-reversionary Settlement Fund from which pro rata cash payments will be automatically sent to Class Members without having to submit a claim form. This simplified and direct distribution of cash payments to Class Members will result in the distribution of approximately $448,000 to approximately 494 Class Members for 816 semesters due to those Class Members' enrollment in Xavier's ABSN program for the Spring 2020 and Summer 2020 semesters. Coates Preliminary Approval Decl., ¶ 6. This breaks down to roughly $1,518 per the 494 Class Members, although some Class Members will receive payment for being enrolled for

---

[4] https://www.natlawreview.com/article/part-2-slowing-spread-litigation-update-first-circuit-covid-19-tuition-refund-class

14

one semester while others will receive payment for attending both semesters. *Id.*, ¶ 8. The average per Class Member value of $1,518 is a higher per student settlement than the following cases: *Smith v. University of Pennsylvania*, No. 2:20-cv-2086 (E.D. Pa.) ($4.5 million settlement for 26,311 students for a value of $171 per student); *Choi v. Brown University*, No. 1:20-cv-191 (D.R.I.) ($1,500,000 settlement for 9,650 students for a value of $155 per student); *Martin v. Lindenwood University*, No. 4:20-cv-1128 (E.D. Mo.) ($1,650,000 settlement for 6,000 students for a value of $275 per student); *D'Amiro v. University of Tampa*, No. 7:20-cv-03744 (S.D.N.Y.) ($3,400,000 settlement fund for 9,085 students for a value of $374 per student); and, *Wright v. Southern New Hampshire University*, No. 1:20-cv-609 (D.N.H.) ($1,250,000 settlement fund for 3,067 students for a value of $407 per student). *Id*.

Under any analysis, the relief afforded by this Settlement is fair and reasonable, especially when weighed against the anticipated cost, prolonged nature, and uncertain outcome of continued litigation. Thus, this factor too weighs in favor of granting final approval.

> 5. The fact that both Plaintiff's and Defendant's counsel, as well as Plaintiff, recommend approval of the Settlement strongly indicates that the Settlement is fair, reasonable, and adequate.

The Sixth Circuit has observed that, when experienced counsel immersed in the legal and factual issues comprising a class action recommend approval of their class settlement, their recommendations are entitled to deference. *See Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983) (a district court "should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs" and that deference "should correspond to the amount of discovery completed and the character of the evidence uncovered"). Likewise, courts in the Sixth Circuit defer to the recommendations made by class representatives who, like Plaintiff here, were intimately involved in the litigation and support the Settlement. *Gascho v. Global Fitness*

*Holdings, LLC*, No. 2:11-cv-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014) ("Not insignificantly, the Class Representatives have also approved the Settlement Agreement").

Class Counsel and Plaintiff support this Settlement because it provides Class Members with immediate cash payments that directly address the issue of what they believe to be improper conduct by Xavier when it cancelled in-person clinical educational programs without providing any tuition refunds. Coates Preliminary Approval Decl., ¶¶ 16-17; Coates Final Approval Decl., ¶ 2. Defendant is also supportive of the Settlement, which was reached after over two years of litigation and thorough settlement negotiations. As the result of discovery conducted and extensive settlement negotiations, the Parties are in a position to fully analyze the strengths and weaknesses of their respective cases and determine that the Settlement at this stage of the litigation is appropriate. Accordingly, the informed recommendations of the Parties and their experienced counsel weigh in favor of granting final approval.

      6.   <u>The reaction of Class Members to date supports the Settlement.</u>

The deadline for Class Members to object or opt out of the Settlement was September 4, 2023. There have been no objections and no requests for exclusion. SSI Decl., ¶¶ 11-12. Moreover, Class Representative Ximena Miranda fully supports the Settlement. Declaration of Ximena Miranda in Support of Final Approval of Class Action Settlement, Attorneys' Fees, Expenses, and Class Representative Service Award, ¶¶ 7-8 (Doc. 29-002). This further supports final approval.

      7.   <u>This Settlement serves the public interest.</u>

"[T]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Brent*, 2011 WL 3862363, at *12 (quoting 4 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 11.41 (4th ed. 2002)). *See also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("There is a strong public interest in encouraging settlement of complex litigation and class

16

action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.").[5] This Settlement serves the public's interest by ending already protracted litigation and freeing up judicial resources. *See In re Telectronics*, 137 F. Supp. 2d at 1025; *see also Hainey*, 617 F. Supp. 2d at 679; *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 248 (S.D. Ohio 1991) (noting that the settlement of a class action lawsuit served the public interest because it "avoid[ed] a time-consuming and expensive trial" and "eliminate[d] the possibility of any time-consuming and expensive appeals.").

Particularly in light of the immediate benefits that the Settlement provides to Class Members, and the fact that this Settlement will avoid further discovery and expensive motion practice, this "overriding public interest" would be well served by approval of this Settlement.

### 8. The Other Rule 23(e) Factors Support the Settlement.

To the extent not addressed above, the Rule 23(e) factors support the Settlement. The method of distributing relief was chosen to make the claims process as easy as possible. Rule 23(e)(2)(C)(ii). The attorneys' fees of one third of the common fund are, as more fully set forth in Plaintiff's Motion for Attorneys' Fees, Expenses, and Class Representative Service Award (Doc. 29), well within the range of fees for a case of this nature and will not be paid until after the Effective Date. Coates Preliminary Approval Decl., ¶ 15; Rule 23(e)(2)(C)(iii).

There is no undisclosed agreement made in connection with the Settlement. Coates Final Approval Decl., ¶ 3; Rule 23(e)(2)(C)(iv). Furthermore, all class members are treated equitably relative to each other—they all will receive a pro rata payment of money. Coates Preliminary

---

[5] *See also In re Nationwide Fin. Servs. Litig.*, No. 2:08–cv–00249, 2009 WL 8747486, at *8 (S.D. Ohio Aug. 18, 2009) ("[T]here is certainly a public interest in settlement of disputed claims that require substantial federal judicial resources to supervise and resolve."); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) ("noting that "[p]ublic policy generally favors settlement of class action lawsuits.").

17

Approval Decl., ¶ 6; Rule 23(e)(2)(D). In total, all of the factors to be considered when determining whether to grant final approval weigh in favor of a finding that the Settlement is fair, reasonable, and adequate.

## IV. CONCLUSION

Because the proposed Settlement is fair, adequate, and reasonable, Plaintiff respectfully requests that the Court grant final approval and enter the Proposed Order.

Respectfully submitted,

*/s/ Terence R. Coates*
W.B. Markovits (0018514)
Justin C. Walker (0080001)
Terence R. Coates (0085579)
Dylan J. Gould (0097954)
MARKOVITS, STOCK & DEMARCO, LLC
119 East Court Street, Suite 530
Cincinnati, OH 45209
Phone: (513) 651-3700
Fax: (513) 665-0219
*bmarkovits@msdlegal.com*
*jwalker@msdlegal.com*
*tcoates@msdlegal.com*
*dgould@msdlegal.com*

Joseph M. Lyon (0076050)
THE LYON FIRM
2754 Erie Avenue
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 766-9011
*jlyon@thelyonfirm.com*

*Class Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                                         /s/ *Terence R. Coates*
                                                                         Terence R. Coates