UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| XIMENA MIRANDA, | : | Case No. 1:20-cv-539 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| XAVIER UNIVERSITY, | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVE SERVICE AWARD**

This civil case is before the Court on Plaintiff's unopposed motion for final approval of the class action settlement (Doc. 32) and Plaintiff's motion for attorneys' fees, expenses, and class representative service award (Doc. 29).

## I. BACKGROUND

On July 10, 2020, Plaintiff Ximena Miranda initiated this class action lawsuit against Defendant Xavier University on behalf of herself and other students participating in the College of Nursing's Accelerated Bachelor of Science in Nursing program. (Doc. 1). The gist of Plaintiff's allegations was that Xavier deprived her and other ABSN students of certain promised benefits, such as simulation labs and clinical experiences, when Xavier stopped in-person curriculum during the COVID-19 pandemic, yet, nevertheless collected and kept fees related to those services. From this, Plaintiff's

operative amended complaint asserted claims for breach-of-contract, unjust enrichment, promissory estoppel, and violation of the Ohio Consumer Sales Practices Act. (Doc. 11).

In response to the complaint, Xavier filed a motion to dismiss, which motion the Court granted in part and denied in part. (Doc. 13, 19). The following claims remained: (1) Plaintiff's breach of contract claim related to tuition and professional liability insurance fees; (2) Plaintiff's unjust enrichment claim; and (3) Plaintiff's promissory estoppel claim. (Doc. 19).

The parties then proceeded to informal discovery, which discovery identified 494 Class Members who participated in 816 spring and summer 2020 semesters as part of Xavier's ABSN program. (Doc. 27-3 at ¶ 5). In December 2020, the parties then mediated the case before retired United States Magistrate Judge Morton Denlow. (*Id.* at ¶ 7.) At the mediation, the parties reached a settlement in principle. (*Id.*) After finalizing settlement terms, Plaintiff filed her unopposed motion for preliminary approval of class action settlement. (Doc. 27; *see also* Doc. 27-2, Settlement Agreement). On June 20, 2023, the Court granted the motion. (Doc. 28). Notice was sent to class members. (Doc. 32-3). And, on October 3, 2023, the Court held a fairness hearing to consider final approval of the settlement.

## II. ANALYSIS

A. **The Settlement Class is appropriate for Rule 23 certification.**

"The benefits of a settlement can be realized only through the final certification of a settlement class." *Rikos v. Proctor & Gamble Co.*, No. 1:11-CV-226, 2018 WL

2

2009681, at *4 (S.D. Ohio Apr. 30, 2018). The Court maintains broad discretion in deciding whether to certify a class.

Here, Plaintiff seeks final certification of the following Settlement Class:

> Individuals identified on the Xavier Settlement Class List who were enrolled as a student in Xavier University's College of Nursing Accelerated Bachelor of Science in Nursing Program in any city in Ohio who paid tuition and fees to Xavier during the Spring 2020 and Summer 2020 semesters. Excluded from the Settlement Class are: (1) the judge and court personnel overseeing this Litigation; (2) the Defendant, its subsidiaries, successors, predecessors, and any entity in which the Defendant has a controlling interest and its current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion on or before the Opt-Out Deadline.

### 1. *Numerosity*

Rule 23(a)(1) requires a plaintiff to demonstrate that "the class is so numerous that joinder of all members is impracticable." While no specific number of class members is required to maintain a class action, "[w]hen class size reaches substantial proportions ... the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citation omitted). Roughly 500 potential class members were identified, satisfying the numerosity requirement.

### 2. *Commonality*

Rule 23(a)(2) requires "questions of law or fact common to the class." Commonality does not require "the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Zehentbauer Fam. Land, LP v. Chesapeake Expl.*,

3

*L.L.C.*, 935 F.3d 496, 503 (6th Cir. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)). Indeed, one common question of law or fact may satisfy this requirement. *Pansiera v. Home City Ice Co.*, 341 F.R.D. 223, 232 (S.D. Ohio 2022).

Here, Plaintiff's and the Class Members' claims all turn on common questions of law and fact. Namely, Plaintiff's and the Class Members' claims rely on Xavier's advertisements, promotional materials, and syllabi promising or suggesting that in-personal clinical education was material to the students' enrollment in Xavier's ABSN program. Accordingly, commonality is satisfied.

### 3. Typicality

Rule 23(a)(3) provides that "the claims or defenses of the representative parties [shall be] typical of the claims or defenses of the class." The typicality element is designed to assess "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if the named plaintiff's claims are based on the same legal theory. *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082.

Here, Plaintiff's and the Class Members' claims arises from the same conduct and are based on the same legal theory: whether Xavier breached its promises to ABSN students when Xavier cancelled in-person and on-side curriculum without providing any tuition refunds. Accordingly, the typicality element is satisfied.

4

### 4. *Adequacy of Representation*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interest of the class." The Sixth Circuit has counseled that there are two criteria for determining this element: (1) the representatives must have common interests with the unnamed class members, and (2) it must appear that the representatives will vigorously prosecute the class action through qualified counsel. *See Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976) (citation omitted).

Here, adequacy of representation is met. Plaintiff and the Class Members possess the same interest and suffered the same injury: each of them were ABSN students during the spring and summer 2020 semesters who were allegedly injured by Xavier's failure to provide in-person curriculum and hands-on training. Moreover, Plaintiffs are represented by extremely qualified counsel with extensive experience prosecuting class actions. (*See* Doc. 27-3 at ¶¶ 3-4).

### 5. *Rule 23(b)*

Not only must the four prerequisites of Rule 23(a) be met before a class can be certified, but "the party seeking certification must also demonstrate that it falls within at least one of the subcategories of Rule 23(b)." *In re Am. Med. Sys.*, 75 F.3d at 1079. Plaintiff argues that the class falls within Rule 23(b)(3), which states a class action may be maintained if:

> [T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

5

adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interest in individually controlling the prosecuting or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, common questions predominate over questions affecting only individual members. The predominating common issues shared by Plaintiff and each class member are whether Plaintiff and Class Members received the full benefit and value of Xavier's representations when Xavier changed to an online curriculum, and whether Xavier is liable as a result. The resolution of these questions does not rise or fall on the individualized conduct of a class member but on Xavier's conduct of stopping in-person and on-site instruction during the spring and fall 2020 semesters.

Further, the Court finds that, given the difficulties that would be inherent in managing a class as large as the Settlement Class, certification is the most efficient, and the superior, means to adjudicate the claims at issue.

Accordingly, for the foregoing reasons, the Court **GRANTS** Plaintiff's request for final certification of the Settlement Class and certifies the settlement class.

B. **Notice Program**

For a class certified under Rule 23(b)(3), notice must satisfy Rule 23(c)(2). To satisfy Rule 23(c)(2), notice to class members must be "practicable under the circumstances," including providing "individual notice to all members who can be identified through reasonable effort." Indeed, the ultimate objective of notice requirements is to satisfy due process. To comport with the requirements of due process, notice must be "reasonably calculated to reach interested parties." *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008) (citations omitted). "Due process does not, however, require actual notice to each party intended to be bound by the adjudication of a representative action." *Id*.

Here, the Court approved the notice procedures when preliminarily approving the settlement agreement. (Doc. 28; *see also* Doc. 29-4 (Plaintiff's expert opinion submitted in support of proposed notice)). The notices described the terms of the Settlement, including the request for attorneys' fees and class representative award, the date of the final fairness hearing, and how to object. (Doc. 27-2 at 18-28). Direct notice was first sent to 494 class members via email, and 489 Class Members opened the notice email within 10 days of receipt. (Doc. 32-3 at ¶ 6). Of the five who did not open the email within 10 days, direct was notice was sent via regular mail, and no mail was returned undeliverable. (*Id.* at ¶¶ 7-8). Finally, a settlement website was established, providing the Class Members with information on the proposed settlement and class action.

Considering the notice procedures, nearly all, if not all, Class Members received notice, and the Court finds that the notice issued to class members satisfied (if not exceeded) the requirements of the federal rules and due process.

C. **The Settlement Agreement is approved.**

Final approval of the proposed settlement is warranted if the Court finds the terms of the settlement are "fair, reasonable, and adequate." *Granada Inv., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992). When deciding whether a settlement should receive final approval, the Court considers several factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Poplar Creek Dev. Co. v. Chesapeake Appalachia*, L.L.C., 636 F.3d 235, 244 (6th Cir. 2011) (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). *See also* Fed. R. Civ. P. 23(e)(2). The Court "enjoys wide discretion in assessing the weight and applicability of these factors." *Granada*, 962 F.2d at 1205-06. Finally, in considering these factors, the task of the court "is not to decide whether one side is right or even whether one side has the better of these arguments…The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632.

### 1. *Risk of Fraud or Collusion*

Courts generally presume the absence of fraud or collusion unless proven otherwise. *See In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1016 (S.D. Ohio 2001) ("Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement unless evidence to the contrary is offered."); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 501 (E.D. Mich. 2008) ("Without evidence to the contrary, the court may presume that settlement negotiations were conducted in good faith and that the resulting agreements were reached without collusion.").

Here, the settlement was the result of arm's-length negotiations conducted by experienced counsel for both parties and in front of an experienced mediator. Accordingly, the Court concludes that the settlement was reached in good faith and does not present the risk of fraud or collusion.

### 2. *Complexity, Expense, and Duration of the Litigation*

"Generally speaking, most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics*, 137 F. Supp. 2d at 1013 (quotation omitted). Although the specific facts underlying this action may not have been complex—all Class Members were enrolled as ABSN students and received online instruction instead of in-person instruction during the spring and summer 2020 semesters—there would likely be intense dispute over the application of those facts—Xavier's alleged liability, and any damages resulting therefrom. Thus, without settlement, the parties would likely expend significant time and

9

money litigating this case through class certification, dispositive motions, trial, and appeal. This factor weighs in favor of approval.

### 3. Amount of discovery

The parties engaged in pre-suit and informal discovery before mediating the case, including discovering the potential class members and ABSN enrollment information for the spring and summer 2020 semesters. (Doc. 27-3 at ¶ 7). Although it does not appear fact discovery was exceedingly extensive, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006) (collecting cases); *see also Levell v. Monsanto Rsch. Corp.*, 191 F.R.D. 543, 557 (S.D. Ohio 2000) ("Counsel's reliance upon informal discovery does not preclude approval of the proposed Settlement."). Moreover, in addition to fact discovery, the parties researched and considered the legal arguments presented and settlements in similar COVID-19 tuition class action cases to help the parties evaluate their respective positions. (Doc. 27-3 at ¶ 8). Thus, the Court concludes that the discovery conducted in this case was sufficient.

### 4. Likelihood of Success on the Merits

The settlement provides relief to Class Members and eliminates the risks that they would otherwise bear if this litigation were to continue. Although Plaintiff believes that she would ultimately prevail on these issues, there is an inherent risk of litigation and trial. Indeed, some of Plaintiffs claims were dismissed by the Court in the early stages. Thus, by agreeing to the settlement, risks are eliminated, and Class Members are

guaranteed to receive an excellent recovery now, rather than possibly receiving a recovery years from now (or not receiving any recovery ever). This factor weighs in favor of approval.

### 5. Opinion of Counsel & Representatives

The Class Representative approves the Settlement Agreement. (Doc. 29-1). Class Counsel also believes the settlement is fair, reasonable, and adequate. (Doc. 27-3 at ¶ 17). Further, the competency and experience of Class Counsel is not in dispute. This factor weighs in favor of approval.

### 6. Reaction of Absent Class Members

The class's reaction strongly supports approving the settlement. Out of about 494 Class Members, none rejected, objected, or excluded themselves from the settlement. This factor weighs in favor of approval.

### 7. Public interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (quoting *Granada*, 962 F.2d at 1205); *see also In re Nationwide Fin. Servs. Litig.*, No. 2:08-cv-00249, 2009 WL 8747486, at *8 (S.D. Ohio Aug. 19, 2009) ("[T]here is certainly a public interest in settlement of disputed claims that require substantial federal judicial resources to supervise and resolve."). This case is no exception, and this factor weighs in favor of approval.

Accordingly, considering the foregoing, all factors weigh in favor of approving the settlement. The Court finds that the settlement is fair, reasonable, and adequate. The settlement is approved.

### D. Class Counsel are entitled to their requested fee.

Class Counsel requests an order approving $250,000 in attorneys' fees.

District courts may award reasonable attorneys' fees and expenses from the settlement of a class action under Rules 54(d)(2) and 23(h). When assessing the reasonableness of a fee petition, district courts engage in a two-part analysis. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007). First, the district court determines the method for calculating fees: either the percentage of the fund approach or the lodestar approach. *Id.* (citation omitted). Second, the court must analyze the six *Ramey* factors. *Id.* (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)).

#### *1. The Court Adopts the Percentage Approach.*

In the Sixth Circuit, district courts have the discretion to determine the appropriate method for calculating attorneys' fees considering the unique characteristics of class actions in general, as well as the particular circumstances of the actual cases pending before the Court, using either the percentage or lodestar approach. *Id.* at 761. Here, the Court uses the percentage approach given the common fund nature of the settlement.

Moreover, the Court finds that Class Counsel's request for one-third of the common fund to be reasonable; it is well within the range of fees typically approved by Courts in the Sixth Circuit. *See In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380-

12

81 (S.D. Ohio 2006) ("Attorneys fees awards typically range from 20 to 50 percent of the common fund") (collecting cases); *In re Telectronics*, 137 F. Supp. 2d at 1029 ("the range of reasonableness ... has been designated as between twenty to fifty percent of the common fund"); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 217 (S.D. Ohio 1997), *rev'd on other grounds*, 24 Fed. Appx. 520 (6th Cir. 2001) ("[t]ypically, the percentage awarded ranges from 20 to 50 percent of the common fund").

### 2. Ramey *Factors*

In reviewing the reasonableness of the requested fee award, the Sixth Circuit requires district courts to consider six factors, known as the *Ramey* factors: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey*, 508 F.2d at 1196. After review, the Court concludes that all factors weigh in favor of the reasonableness of the fee award.

#### a. Value of the benefits

Class Counsel's work resulted in a benefit of $750,000 to the class. The benefit provides significant tangible relief to Class Members now and eliminates the risk and uncertainty parties would otherwise incur if this litigation were to continue. Indeed, discovery revealed that there were 494 Class Members who participated in 816 spring and summer 2020 semesters as ABSN students. And, as Class Counsel explained at the fairness hearing, assuming the Court approved all requested distributions (which the

13

Court does, as explained herein), the payout for each semester would be roughly $550. Finally, the fact that there are 494 Class Members, no opt-outs, and no objectors demonstrates that Class Members recognize the substantial benefit of the Settlement.

      b. Society's stake

There is a benefit to society in ensuring that small claimants may pool their claims and resources, and attorneys who take on class action cases enable this. *See Moore v. Aerotek, Inc.*, Case No. 2:15-cv-2701, 2:15-cv-1066, 2017 WL 2838148, at *8 (S.D. Ohio June 30, 2017) (citation omitted). Here, Class Counsel's efforts resulted in a tangible reward for the Class Members. Many of the Class Members would not have been able or willing to pursue their claim individually, and many would likely not even be aware they had a claim against Defendant. *Id.* Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. *Id.* (citation omitted).

      c. Contingent Fee Services

Despite the risks associated with prosecuting this case, Class Counsel litigated this matter on a wholly contingent basis with no guarantee of recovery over a period of more than three years. (Doc. 29-1 at ¶ 4).

      d. Lodestar Cross-Check

Conducting a lodestar cross-check is optional; however, the lodestar method also supports Class Counsel's fee request. Under the lodestar calculation, the Court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (citation

omitted). The Court then has the discretion to enhance the lodestar with a separate multiplier that can serve to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved. *Id.* at 279, 280.

Here, up to the date of filing their motion for attorneys' fees, Class Counsel expended 686.20 total hours on this case which, at their customary billing rates, provides a cumulative lodestar of $330,353.30, more than the requested fee. (Doc. 29-1 at ¶ 6). Dividing the amount requested ($250,000) by the lodestar results in a negative multiplier of .75, which demonstrates that the fee sought is reasonable.

      e. <u>Complexity of the Litigation</u>

As already discussed, the litigation was complex, and resolving the merits of litigation through dispositive motions, trial, or appeal would have been risky, costly, and time consuming. *See* Sec. C(2), (3), *supra*.

      f. <u>Skill of Counsel</u>

Finally, the Class and Defendant are represented by highly experienced counsel. There is no dispute that all counsel are highly qualified and have substantial experience in federal courts and class action litigation.

Accordingly, considering all the factors, the Court determines the fees requested are reasonable, and **GRANTS** Class Counsel's request for fees in the amount of $250,000.

E. **Class Counsel is entitled to reimbursement of expenses.**

Under the common fund doctrine, Class Counsel are entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement. *See In re Cardizem*, 218 F.R.D. at 535. Expense awards are customary when litigants have created a common settlement fund for the benefit of a class. *Id.* (quotation omitted).

Pursuant to the Settlement Agreement, Class Counsel could seek up to $13,000 in expenses. Here, Class Counsel requests $12,747.75 in litigation expenses that have been incurred prosecuting this case. These related to mediation, filing fees, and copy costs. The largest expense incurred related to the services of the parties' mediator, totaling $10,876.52 of the expenses. Upon review, Class Counsel's expenses were reasonable and necessary in connection with litigating and resolving this case and are therefore reimbursable.

Accordingly, the Court **GRANTS** Class Counsel's request for $12,747.75 in expenses.

F. **The Court approves the administrative and notice expenses.**

The Settlement Agreement contemplates that settlement administrative fees will be disbursed from the common fund. (Doc. 27-2 at 7, ¶ 47). Class Counsel requests that the Court approve a disbursement of $33,300 (minus amounts already paid) to Settlement Services, Inc. ("SSI"). After Class Counsel received multiple bids, SSI was retained to provide settlement administrative services, including managing the notice procedure to Class Members, payments to Class Members, and other administrative services. (Doc.

27-3 at ¶ 9). The Court finds SSI's fees to be reasonable for the administration of the Settlement Agreement and notice. Accordingly, the Court **GRANTS** Class Counsel's request for a disbursement to $33,300 (minus amounts already paid) in administrative and notice expenses.

G. **Plaintiff is entitled to a service award.**

Finally, Plaintiff requests that the Court approve a $5,000 service award. "Courts typically authorize contribution (or 'incentive' awards) to class representatives for their often extensive involvement with a lawsuit." *Rikos*, 2018 WL 2009681, at *10. "Such compensation to named plaintiffs is typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case." *Id*.

Here, Plaintiff stayed informed throughout the litigation. (Doc. 29-1 at ¶¶ 8-9; Doc. 29-2). She was involved in settlement negotiations, approved of the settlement demand sent to Xavier and final settlement amount, and remained engaged throughout the litigation. (*Id.*) Accordingly, the Court **GRANTS** Plaintiff's request for a service award of $5,000.

### III.   CONCLUSION

Based upon the foregoing, Plaintiff's unposed motion for final approval of the class action settlement (Doc. 32) and Plaintiff's motion for attorneys' fees, expenses, and class representative service award (Doc. 29) are **GRANTED**. Accordingly:

17

1. Pursuant to Fed. R. Civ. P. 23(a) and (b)(3), for settlement purposes, the Court certifies the following Settlement Class:

> Individuals identified on the Xavier Settlement Class List who were enrolled as a student in Xavier University's College of Nursing Accelerated Bachelor of Science in Nursing Program in any city in Ohio who paid tuition and fees to Xavier during the Spring 2020 and Summer 2020 semesters. Excluded from the Settlement Class are: (1) the judge and court personnel overseeing this Litigation; (2) the Defendant, its subsidiaries, successors, predecessors, and any entity in which the Defendant has a controlling interest and its current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion on or before the Opt-Out Deadline.

2. Pursuant to Fed. R. Civ. P. 23(c)(3), all such persons who satisfy the Settlement Class definition above are members of the Settlement Class.  Because no member of the Settlement Class opted out of the Settlement, all Settlement Class Members are bound by this Final Approval Order.

3. The Court grants final approval to its appointment of Ximena Miranda as Class Representative.  The Court finds that the Class Representative is similarly situated to absent Class Members, is typical of the Class, and is an adequate Class Representative, and that Class Counsel and the Class Representative have fairly and adequately represented the Class.

4. The Court grants final approval to its appointment of Class Counsel as provided in the Preliminary Approval Order (Doc. 28), appointing Terence R. Coates, W.B. Markovits, Dylan J. Gould, and Justin C. Walker of Markovits, Stock, & DeMarco, LLC, and Joseph M. Lyon of The Lyon Firm as Class Counsel.  Class Counsel have

18

extensive experience handling class action cases and have thoroughly represented the Class's interests in this case.

5. The Court's Preliminary Approval Order approved the Short Form Notice, Long Form Notice, and found the distribution and publishing of the various notices as proposed met the requirements of Fed. R. Civ. P. 23 and due process, and was the best notice practicable under the circumstances, constituting due and sufficient notice to all persons entitled to notice. The Court finds that the distribution of the Notices has been achieved pursuant to the Preliminary Approval Order and the Settlement Agreement, and that the Notice to Class Members complied with Fed. R. Civ. P. 23, due process, and any other applicable law.

6. Pursuant to Fed. R. Civ. P. 23(e)(2), the Court finds that the Settlement Agreement (Doc. 27-2) is fair, reasonable, and adequate, as expressed further herein. The Court also finds the Settlement Agreement was entered into in good faith, at arm's length, and without collusion.

7. The Court **APPROVES** the distribution and allocation of the Settlement Fund pursuant to the Settlement Agreement.

8. The Court **AWARDS** Class Counsel $250,000 in attorneys' fees, which is 1/3 of the $750,000 settlement fund, and reimbursement of expenses of $12,747.75 to be paid according to the terms of the Settlement Agreement. These amounts of fees and expenses are fair and reasonable.

9. The Court **AWARDS** the Class Representative, Ximena Miranda, $5,000 to be paid according to the terms of the Settlement Agreement. The award is justified based on her service to the Class.

10. Nothing in the Settlement Agreement, the Final Approval Order, Judgment, or the fact of the settlement constitutes any admission by any of the parties of any liability, wrongdoing, or violation of law, damages or lack thereof, or of the validity or invalidity of any claim or defense asserted in the action.

11. The Court **DISMISSES WITH PREJUDICE** all claims of the Settlement Class Members against Xavier in this action, without costs and fees except as explicitly provided for in the Settlement Agreement.

12. Without affecting the finality of the Judgment, the Court reserves jurisdiction over the implementation, administration, and enforcement of the Judgment and the Settlement Agreement, and all matters ancillary thereto.

13. The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**

Date: 10/3/2023

*Timothy S. Black*
Timothy S. Black
United States District Judge